**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bard Peripheral Vascular, Inc.; David Goldfarb, M.D., | No. CV 03-0597–PHX-MHM |
| Plaintiffs, | **ORDER** |
| vs. | |
| W.L. Gore & Associates, Inc., | |
| Defendant. | |
| W.L. Gore & Associates, Inc., | |
| Counterclaimant, | |
| vs. | |
| Bard Peripheral Vascular, Inc., David Goldfarb, M.D., and C.R. Bard, Inc., | |
| Counterdefendants. | |

At the October 10, 2007 Final Pretrial Conference and Motion Hearing, the Court Ordered to bifurcate the trial so the jury would not hear evidence relevant only to Gore's inequitable conduct defense. The Court issues this written Order in support of its decision to bifurcate the trial.

I. THE COURT'S DECISION TO BIFURCATE

This issue of bifurcation arose through Bard's Motion to Strike the Expert Reports and Exclude the Testimony of Gore's expert Gerald H. Bjorge, Esq. In Bard's Motion, it claimed that Mr. Bjorge is a patent lawyer and is not skilled in the art of the Goldfarb patent and that his testimony should be excluded from trial. In the alternative, Bard argued that the trial should be bifurcated so that evidence pertaining to Gore's inequitable conduct defense (about which, much of Mr. Bjorge's testimony is focused) is heard only by the Court and not the jury. Gore opposes bifurcation and encourages the Court to allow all evidence to be presented in front of the jury and then have the appropriate entity make their respective determinations (the jury will decide infringement and patent invalidity; the Court will decide inequitable conduct).

Although the Court must decide the issue of inequitable conduct, the Court has considerable discretion in determining whether evidence or argument related to Gore's inequitable conduct defense may be presented to the jury and whether the jury is asked to render an advisory verdict. Life Techs., Inc. v. Clontech Lab., Inc., 224 F.3d 1320, 1324 (Fed. Cir. 2000) ("the determination of inequitable conduct is ultimately committed to the discretion of the district court [and reviewed on appeal] for abuse of discretion"). The defense of inequitable conduct is equitable in nature and does not give rise to the right of trial by jury. Gardco Manufacturing, Inc. v. Herst Lighting Co., 820 F.2d 1209 (Fed.Cir. 1987). The party seeking bifurcation has the burden of demonstrating that judicial economy would be served and that no party would be prejudiced by separate trials, based on the circumstances of the individual case. Novopharm Ltd. v. Torpharm, Inc., 181 F.R.D. 308, 310 (E.D.N.C. 1998).

"The court, in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy, may order a separate trial of any claims, cross-claim, counterclaim . . ." Fed.R.Civ.P. 42(b). When weighing the competing equities under Rule 42(b), prejudice is the Court's most important consideration. Laitram Corp. v. Hewlett-Packard Co., 791 F.Supp. 113, 114 (E.D.La. 1992) (holding that the court would not

1 order separate trials but would order that the trial proceed at three distinct phases with respect
2 to liability, damages, and willfullness). Thus, "even if bifurcation might somehow promote
3 judicial economy, courts should not order separate trials when bifurcation would result in
4 unnecessary delay, additional expense, or some other form of prejudice. Essentially, . . .
5 courts must balance the equities in ruling on a motion to bifurcate." Laitram, 791 F.Supp.
6 at 115. The court must balance two types of competing prejudice: first, prejudice that may
7 arise because of potential confusion of a jury on complicated issues if bifurcation is denied;
8 second, prejudice caused by the considerable delay that will result if separate trials and
9 discovery is ordered. Id. at 115-16. On appeal, the district court's decision to bifurcate will
10 be reviewed for clear error, while the ruling on the ultimate question is reviewed on the
11 standard of abuse of discretion. Fiskars Inc. v. Hunt Mfg. Co., 221 F.3d 1318, 1326 (Fed.
12 Cir. 2000) (holding that bifurcation is within the trial court's discretion and the trial court did
13 not abuse discretion by trying inequitable conduct to the court alone).

14 Regarding prejudice to the parties, if the instant trial is not bifurcated and Gore's
15 evidence relevant solely to inequitable conduct is presented in the jury's presence there would
16 be extreme prejudice to Bard because of the serious allegations of, *inter alia*, withholding
17 evidence from the PTO and destruction of evidence. If this evidence is presented to the jury,
18 it may be so prejudicial that a jury would have a difficult time finding in Bard's favor on
19 infringement, despite the fact that such evidence is not for the jury's consideration.
20 Furthermore, the '135 patent record before the PTO is one of the most extensive in patent
21 history (28 years in length with a voluminous record) which may be difficult for the jury to
22 understand and distinguish as far as what evidence is for their consideration versus what
23 evidence they should disregard because it is for the Court's consideration and may be
24 extremely prejudicial.

25 Regarding the consideration of delay caused by bifurcation, it seems that any delay
26 would be minimal because the inequitable conduct trial would take place immediately
27 following the jury trial and both trials would be completed within the time set aside for the
28 trial if it was all tried together. Furthermore, the parties have already conducted discovery

1  as to all issues for both trials, thus, there is no possibility of discovery on bifurcated issues
2  delaying the case.

3  At oral argument, Gore asserted that bifurcation would be prejudicial to Gore because
4  it will be forced to distinguish between and separate out the evidence relevant only to
5  inequitable conduct so that such evidence is not presented to the jury. Despite Gore's
6  insistence that such a task is nearly impossible and will be incredibly time consuming, it
7  seems that Gore will have to make such a distinction regardless of the bifurcation decision
8  in an effort to break down the information and its arguments for the jury and the Court. In
9  fact, as the Pretrial Order depicts, Gore already has made efforts to separate the evidence.
10 Thus, because such a breaking down of the evidence will be necessary for Gore to best
11 present its case to the jury and the Court, Gore's claims of prejudice is not compelling.

12 Gore also asserts that Plaintiff's suggestion to bifurcate the trial should be rejected
13 because bifurcation is the exception, rather than the rule in patent cases. In support of its
14 position, Gore cites Real v. Bunn-O-Matic Corp., 195 F.R.D. 618, 620 (N.D. Ill., 2000),
15 which states that bifurcation should only be ordered where it is "clearly necessary" and no
16 party would be prejudiced by the separation of the trials.

17 It is true that Bunn-O-Matic finds that trial bifurcation to determine damages should
18 be the exception, rather than the rule. However, it is important to note that in Bunn-O-Matic
19 the damages determinations at issue (the reason for the proposed bifurcation) were lost
20 profits and reasonable royalties – both of which are damages determinations for the jury to
21 decide. Additionally, Bunn-O-Matic was a fairly simple patent case (to the extent that any
22 patent case can be described as simple) involving one patent, one claim, and one allegedly
23 infringing product. In the instant case, despite Bard recently relinquishing 16 infringement
24 claims, eight claims still remain and Bard asserts that numerous Gore products infringe. The
25 instant case is much more complex than the patent litigation in Bunn-O-Matic without even
26 mentioning the complex litigation regarding the '135 patent that has previously taken place
27 before the PTO. Thus, Bunn-O-Matic is distinguishable from the case at bar and even though
28

1    bifurcation was inappropriate in <u>Bunn-O-Matic</u>, <u>Bun-O-Matic</u> is not a good indication of
2    whether bifurcation is appropriate in the instant case.
3        In its Opposition to Bard's Motion to Strike the Expert Reports and Exclude the
4    Testimony of Gerald H. Bjorge, Gore cites additional cases in which the district court did not
5    bifurcate. In <u>Medtronic Xomed, Inc. v. Gyrus ENT LLC</u>, 440 F.Supp.2d 1333, 1334-35
6    (M.D. Fla. 2006), cited by Gore, the court denied bifurcation of the inequitable conduct issue
7    because it would not promote judicial economy in that the evidence relating to materiality
8    and intent "is the same or entwined with evidence relevant to both infringement claims . . .
9    which must be presented to the jury" and may otherwise "require re-calling witnesses who
10   will or had testified at the jury trial." This case is similar to the instant case in that Gore
11   argues that the issues of patent invalidity are very intertwined with their inequitable conduct
12   defense that it will be hard to separate the evidence. However, the instant case is
13   distinguishable because there is no mention of the evidence presented in front of the jury in
14   <u>Medtronic Xomed</u> being overly prejudicial to the other side.
15       In <u>AEA Tech. y, PLC v. Thomas & Betts Corp.</u>, 2002 WL 172443 at * 4 (N.D. Ill.
16   Feb. 4, 2002), the district court denied bifurcation of inequitable conduct where testimony
17   of the same experts might be needed both for a determination of materiality of prior art and
18   for the infringement portion of the trial. The court in <u>Thomas & Betts</u> found that there were
19   compelling reasons to bifurcate but "the facts and evidence that would be presented at the
20   inequitable conduct stage are not as separate from the infringement stage as [the party
21   seeking bifurcation] argues." <u>Id.</u> As was true with <u>Bun-O-Matic</u>, <u>Thomas & Betts</u> includes
22   no discussion of prejudice – the greatest factor for consideration. Whether to bifurcate is
23   within the Court's discretion. <u>Life Techs</u>., 224 F.3d at 1324. Therefore, as long as there are
24   compelling reasons to bifurcate and an absence of clear error in so doing, the decision will
25   not be reversed. <u>Fiskars Inc.</u>, 221 F.3d at 1326. The instant case contains compelling
26   reasons to bifurcate in that the evidence relevant solely to inequitable conduct, despite
27   claimed difficulty in separating it from the evidence of invalidity, may be very prejudicial
28   to Bard. In fact, it seems that the prejudice in allowing such evidence to be presented to the

1 jury is more prejudicial than any difficulty Gore will experience in separating out the
2 evidence relevant only to inequitable conduct and only for the Court's consideration.

3 Gore also asserts that the Court has discretion to decide how the unenforceability
4 (inequitable conduct) defense may proceed and points out that the Federal Circuit has
5 recently affirmed cases involving three different procedures. In Dippin' Dots, Inc. v Mosey,
6 476 F.3d 1337 (Fed. Cir. 2007), the district court conducted a jury trial on invalidity and
7 unenforceability. After the jury found intent to deceive and material representations and
8 omissions, the district court weighed intent and materiality to determine unenforceability.
9 In eSpeed, Inc. v. Brokertec USA, L.L.C., 480 F.3d 1129 (Fed. Cir. 2007), the district court
10 simultaneously conducted a jury trial on validity and infringement, and a bench trial on
11 inequitable conduct. In Agfa Corp. v. Creo Products, Inc., 451 F.3d 1366 (Fed. Cir. 2006),
12 the district court held a separate bench trial on inequitable conduct first with the plan to hold
13 a jury trial on validity and infringement following the bench trial.

14 After explaining the various ways to hold a patent trial in which a defendant is
15 asserting an inequitable conduct defense, Gore suggests that, because of the interrelationship
16 between the issues involved in the instant case, the Court should follow the Dippin' Dots
17 procedure of having the jury hear all of the evidence and provide an advisory finding on
18 intent and materiality (the two elements required to show inequitable conduct).

19 Gore claims that the issues Mr. Bjorge addresses are not limited to inequitable
20 conduct, but also cover the prosecution history, the examiner's actions, Mr. Goldfarb's actions
21 as well as those of his attorneys, the prior art cited and not cited, the requirements and effects
22 of declarations submitted to the PTO, and the inventorship investigation and determination.
23 Gore argues that these are issues for the jury and, therefore, it is wholly inappropriate to
24 bifurcate the trial so Mr. Bjorge's testimony is presented outside the jury's presence.
25 However, in ruling to bifurcate the trial, the Court also stated that Mr. Bjorge would be
26 allowed to testify during the jury trial as to prosecution history, and other aspects of the case
27 while it was before the PTO. Thus, the other areas in which Gore intends Mr. Bjorge to
28

1  testify that are not solely relevant to inequitable conduct will be allowed to be presented
2  during the jury trial.

3  The manner in which to proceed is within the Court's discretion. In the instant case,
4  there is support for proceeding either way. In support of bifurcation is the prejudice to Bard
5  if the case is not bifurcated. In support of not bifurcating is the prejudice to Gore in trying
6  to separate the evidence of invalidity that is presented to the jury from the evidence that is
7  solely relevant to inequitable conduct and only for the Court's consideration. There does not
8  seem to be much risk of time delay in bifurcating because both parts of the trial will take
9  place during the time the entire trial would take place if the trial were not bifurcated.
10 Furthermore, the case that Gore cites to support its position not to bifurcate, Bunn-O-Matic,
11 is distinguishable in that the case and patent in Bunn-O-Matic were not very complicated and
12 there was little chance of jury confusion by presenting all the evidence to the jury. The
13 instant case is much more complicated and involves valid concerns of the possibility of jury
14 confusion and misleading the jury if the evidence solely relevant to inequitable conduct is
15 presented in their presence. Thus, the facts relevant to the instant case support bifurcating
16 the trial so the jury does not hear the evidence solely relevant to inequitable conduct.

17 II.    ORDER IN WHICH BIFURCATED TRIAL SHOULD PROCEED

18 At oral argument, Gore urged the Court that if it decides to bifurcate the trial, it should
19 hold the inequitable conduct portion of the trial first, before the jury trial. Gore argues that
20 holding the inequitable conduct trial first will promote judicial economy because if Gore
21 wins its inequitable conduct defense, the case would be over and the Court will not need to
22 hold the jury trial portion of the case. In support of its position, Gore cites Gardco
23 Manufacturing, Inc. v. Herst Lighting Co., 820 F.2d 1209 (Fed. Cir. 1987), and Agfa Corp.
24 v. Creo Products Inc., 451 F.3d 1366 (Fed. Cir. 2006).

25 The bases of the bifurcation decision in both Gardco and Agfa is based on the Seventh
26 Amendment right to have claims tried by a jury and the Supreme Court case of Beacon
27 Theatres, Inc. v. Westover, 359 U.S. 500 (1959). In Beacon Theatres, the Supreme Court
28 addressed the importance of the order in which legal and equitable claims are to be tried in

1  one suit. While recognizing that "the same court may try both legal and equitable causes in
2  the same action," the Supreme Court held that "only under the most imperative circumstances
3  . . . can the right to a jury trial of legal issues be lost through prior determination of equitable
4  claims." Id. at 508, 510-11. The Court concluded that the trial court erred by conducting a
5  bench trial on the equitable claim at issue, thereby precluding a jury trial on the legal claims,
6  when the equitable claim resolved factual issues that were "common" to the legal claims.
7  Thus, under Supreme Court precedent, when legal claims involve factual issues that are
8  "common with those upon which [the] claim to equitable relief is based, the legal claims
9  involved in the action must be determined prior to any final court determination of [the]
10 equitable claims." Dairy Queen, Inc. v. Wood, 369 U.S. 469, 479 (1962).

11      Contrary to Gore's assertion that Gardco and Agfa stand for holding the inequitable
12 conduct portion of the trial first, Gardco and Agfa appear to stand for whether it is
13 appropriate to bifurcate inequitable conduct out of the jury portion of the trial. In both cases,
14 the Federal Circuit found that bifurcating the trial, so the jury did not hear the inequitable
15 conduct evidence, did not violate the Seventh Amendment or the Supreme Court case of
16 Beacon Theatres.

17      More specifically, in Gardco, the Federal Circuit held that the district court did not
18 abuse its discretion in trying an inequitable conduct claim prior to a jury trial on the validity
19 and infringement causes of action. In sustaining the court's decision, the Federal Circuit held
20 that "the conduct-of-the-applicant-in-the-PTO issue raised in the nonjury trial and the
21 separate infringement/validity issues are distinct and without commonality either as claims
22 or in relation to the underlying fact issues." Gardco, 820 F.2d at 1213. The Federal Circuit
23 found that the district court "explicitly refused to make any findings relating to the
24 patentability of the claimed invention, in view of the undisclosed art or otherwise, and made
25 no finding on infringement." Id. The court found that even though some of the same
26 evidence was presented to the court that later would be presented to the jury for it to
27 determine patentability and infringement, there is a fundamental difference between evidence
28

1 and issues. Id. (citations omitted). As such, the court held that the rule set forth in Beacon
2 Theatres did not apply.

3 Similarly, in Agfa, the Federal Circuit upheld the district court's decision to hold a
4 bench trial on inequitable conduct prior to a jury trial on infringement and validity. The
5 Federal Circuit concluded that while inequitable conduct and validity questions "overlap in
6 the consideration of some aspects of the same relevant evidence, they do not involve a
7 common issue." Agfa, 451 F.3d at 1372.

8 In Agfa and Gardco, the issue was whether it was appropriate to bifurcate the trial.
9 In both cases, the Federal Circuit upheld the district court's decision to bifurcate. Though in
10 both Agfa and Gardco, the district court held the inequitable conduct portion of the trial first,
11 neither case stands for the proposition that inequitable conduct should be tried first. In fact,
12 Gardco includes a significant discussion about whether it was error to hold the inequitable
13 conduct portion first. Based on that discussion, it appears that if a court does proceed with
14 the inequitable conduct portion of the trial first, the court must be very careful not to make
15 any findings about patent validity or infringement. Though this Court could refrain from
16 making such determinations, the Court finds it will be safer in this case to hold the jury
17 portion of the trial first and then conduct the inequitable conduct portion of the trial at the
18 conclusion of the jury trial. Thus, the Court confirms its decision to bifurcate the trial by
19 holding the jury trial first and then the inequitable conduct portion of the trial to the Court
20 thereafter.

21 DATED this 29th day of October, 2007.

_____
Mary H. Murguia
United States District Judge

- 9 -