FENNEMORE CRAIG P.C.
3003 North Central Avenue, Suite 2600
Phoenix, Arizona 85012-2913
Phone (602) 916-5000
Andrew M. Federhar (#006567)

**LATHAM & WATKINS LLP**
885 Third Avenue
New York, New York 10022
Steven C. Cherny

555 Eleventh Street, N.W.
Washington, DC 20004
Maximilian A. Grant

Attorneys for Plaintiffs/Counterdefendants Bard Peripheral Vascular, Inc. and David Goldfarb, M.D. and Counterdefendant C.R. Bard, Inc.

### UNITED STATES DISTRICT COURT
### DISTRICT OF ARIZONA

| | |
|---|---|
| Bard Peripheral Vascular, Inc., and David Goldfarb, M.D., <br><br>Plaintiffs, <br><br>v. <br><br>W.L. Gore & Associates, Inc., <br><br>Defendant. <br><hr> W.L. Gore & Associates, Inc., <br><br>Counterclaimant, <br><br>v. <br><br>Bard Peripheral Vascular, Inc., David Goldfarb, M.D., and C.R. Bard, Inc., <br><br>Counterdefendants. | No. CV-03-0597-PHX-MHM <br><br><br>**PLAINTIFFS' OPPOSITION TO GORE'S MOTION FOR JMOL REGARDING PLAINTIFFS' CLAIM OF WILLFUL INFRINGEMENT** <br><br>*(Assigned to the Hon. Mary H. Murguia)* |

No. CV-03-0597-PHX-MHM

## I. INTRODUCTION

Defendant W.L. Gore & Associates, Inc. ("Gore") seeks to preclude the jury from evaluating Gore's reckless infringement of the Goldfarb patent. Gore's motion is premised on a misunderstanding of the high standard required for a motion for JMOL and a sweeping mischaracterization of the Federal Circuit's *en banc* decision in *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007). Gore's motion is further premised on a misunderstanding of the operative burdens of proof. As summarized below, the trial record includes evidence establishing Dr. Goldfarb's threshold showing of Gore's willful infringement, *i.e.*, evidence from which a jury could conclude that Gore was objectively reckless. Having done so, the burden of production has shifted to Gore. Of course, as of yet, there is *no record evidence* supporting Gore's *arguments* of invalidity. At this stage in the proceedings, Gore's assertions remain mere lawyer argument unsupported by the trial record. If Gore presents *evidence* to support its *arguments*, Bard is entitled to present its rebuttal case and be "fully heard" before JMOL can be considered. (*See* Section III.D, *infra*.)

Regardless, Gore's own admissions provide sufficient evidence for the jury to find not only that Gore has willfully infringed U.S. Patent No. 6,436,135 ("the Goldfarb patent"), but that Gore's non-infringement "defense" has been asserted in bad faith:

- ➢ Gore failed to obtain an opinion of counsel supporting a claim of non-infringement.
- ➢ Gore's non-infringement defense is refuted by countless admissions in 16-boxes of Gore submissions to the FDA subject to a statutory "Truthful and Accuracy" statement establishing that Gore's accused products, **as commercially sold to the public**, (1) have an *average* internodal distance within the claimed range, and (2) based on scientific proof (histology slides and pathology reports), demonstrate *actual* tissue ingrowth.
- ➢ Gore's corporate representatives confirmed that *actual* "tissue ingrowth" is established by the presence of fibroblasts and collagen within the pores of a graft.
- ➢ Dr. Anderson explained the scientific support Gore provided to the FDA demonstrates that Gore's use of the term "tissue ingrowth" is consistent with the Court's claim construction and the sworn testimony of Gore's corporate designees.

Gore's motion for JMOL on its willful infringement of Dr. Goldfarb's patent should be rejected.

## II. THE STANDARD FOR JMOL IN THE NINTH CIRCUIT IS "VERY HIGH"

The standard Gore must meet on its motion for JMOL is "very high." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002).[1] Under Rule 50, a court can only render JMOL when "a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue." FED. R. CIV. P. 50(a); *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 149 (2000) (reversing JMOL). In "entertaining a motion for judgment as a matter of law, the court should review all of the evidence in the record" and "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence." *Reeves*, 530 U.S. at 150. Thus, the Court "must disregard all evidence favorable to the moving party that the jury is not required to believe" and "give credence to the evidence favoring the nonmovant." *Id.* at 151.

As a result, the Ninth Circuit recognizes that the standard for judgment as a matter of law is a "high hurdle," because "credibility, inferences, and factfinding are the province of the jury, not this court." *Costa*, 299 F.3d at 859 (reversing vacation of jury verdict in favor of plaintiff because the standard is "very high"). To grant JMOL, there must be "***no scenario*** by which a jury could have concluded" in the nonmoving party's favor.[2] *City Solutions, Inc. v. Clear Channel Commc'ns*, 365 F.3d 835, 841 (9th Cir. 2004) (reversing grant of JMOL).

---

[1] The grant or denial of a motion for JMOL is a procedural issue not unique to patent law and is reviewed "under the law of the regional circuit in which the appeal from the district court would usually lie." *CollegeNet, Inc. v. ApplyYourself, Inc.*, 418 F.3d 1225, 1230 (Fed. Cir. 2005) (reversing grant of motion for JMOL of non-infringement and reinstating jury verdict of infringement).

[2] All emphasis is added unless otherwise noted.

III. **GORE'S MOTION IMPROPERLY ASKS THIS COURT TO WEIGH THE EVIDENCE – GORE IS NOT ENTITLED TO JMOL ON ITS WILLFUL INFRINGEMENT OF DR. GOLDFARB'S PATENT**

    A. *Post-Seagate*, Willful Infringement May be Found When An Infringer Acts Recklessly – There is Sufficient Evidence For the Jury to Determine Not Only That Gore Acted Recklessly, But That Its Non-Infringement Defense Has Been Asserted in Bad Faith

Gore asserts that it is entitled to judgment as a matter of law based on *In re Seagate Tech., LLC*, 497 F.3d 1360 (Fed. Cir. 2007). In *Seagate*, the Federal Circuit overruled the due care standard for evaluating willful infringement adopted in *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1389-90 (Fed. Cir. 1983). *Seagate* held that willful infringement occurs when "the infringer acted despite an objectively high likelihood that its actions constituted infringement of a valid patent." *Seagate*, 497 F.3d at 1371. The patentee must establish facts from which a jury could conclude "that this objectively-defined risk ... was either known or so obvious that it should have been known to the accused infringer." *Id.* Consequently, following *Seagate*, "proof of willful infringement permitting enhanced damages requires at least a showing of objective recklessness." *Id.*

Although *Seagate* altered the legal standard, the interdependence of willfulness and infringement has not. "Objectively defined risk" is "determined by the record developed in the infringement proceeding." *Id.* Where there is evidence that an accused infringer had actual knowledge of the patent claims yet continued to use the same methods or copy the same product – as has been established at trial – the jury can find willful infringement. *See, e.g. VNUS Medical Tech., Inc. v. Diomed Holdings, Inc.*, 2007 WL 3165548, *1 (N.D. Cal. Oct. 24, 2007) (denying in part motion for summary judgment to strike claim of willful infringement, noting that there was evidence that patented method was copied and that the infringer had actual notice of the patent).[3] *Post-Seagate*, the Federal Circuit has affirmed the denial of motions for JMOL as to

---

[3] In *VNUS*, the court distinguished situations where the patentee had offered *no* evidence to support a finding that the accused infringer copied the patented articles. *Compare VNUS*, 2007 WL 3165548 *1-2 (granting motion for judgment for summary judgment as to two defendants where the basis for

infringement and thus affirmed substantial findings by the jury of willfulness infringement. *See, e.g., Z4 Tech. v. Microsoft Corp.*, -- F.3d --, 2007 WL 3407175, *2-*6 (Fed. Cir. Nov. 16, 2007) (affirming (i) denial of motion for JMOL, (ii) jury verdict of willful infringement, and (iii) award of enhanced damages and attorneys fees).

The *Seagate* ruling does not alter the substantial authority explaining that the presence of an opinion of counsel does not preclude a finding of willfulness. Such authority is unusually pertinent here, where Gore was intimately involved with the largely *inter partes* examination (18 of 28 years) of the Goldfarb patent. An "attorney's advice, based solely on the file history prior art, *does not by itself*, raise an inference of good faith substantial enough" to defeat a determination of willful infringement. *Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983). That is particularly the case where – as here – the only basis for the accused infringer's opinion of counsel defense arises from *invalidity*, not non-infringement. Indeed, because Gore's validity defense is primarily premised on arguments and prior art considered by the PTO, Gore faces not only the statutory presumption of validity, 35 U.S.C. §282, but also the "added burden ... of overcoming the deference that is due to a qualified government agency presumed to have properly done its job, which includes one or more examiners who are assumed to have some expertise in interpreting the references and to be familiar from their work with the level of skill in the art and **whose duty it is to issue only valid patents**." *Am. Hoist & Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984); *accord McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353 (Fed. Cir. 2001) (reversing JMOL that asserted patent was invalid as obvious when allegedly invalidating references were before the PTO).

---

patentee's "copying claim" was "less than completely clear" and where there was no evidence that the defendants had referred to or had knowledge of patentee's products or patents before making their infringing sales). Unlike in *VNUS*, Gore's statements to the FDA are unequivocal concessions that its products contain the same structure as that claimed by the Goldfarb patent. Gore expressly relied on both Dr. Goldfarb's publications and BPV's products to obtain its FDA approvals: "The applicant graft is substantially equivalent to predicate GORE-TEX Vascular Grafts, and vascular grafts manufactured by Bard/IMPRA and by Atrium Medical Corporation." (*See, e.g.*, PX414, PX419, PX475-76, PX519-20, PX1570-71.)

The mere presence of Gore's opinion of counsel (premised solely on invalidity arguments) cannot preclude the jury's consideration of willfulness – particularly at this stage in the trial – because ***there is no evidence in the record that the presumption of validity accorded Dr. Goldfarb's patent (by statute) and the deference due to the PTO (by Am. Hoist) are overcome***. *See, e.g. Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 810 (Fed. Cir. 2007) (affirming judgment of willful infringement despite presence of opinion letter); *VNUS Med. Tech.*, 2007 3165548 at *3 (rejecting contention that trier of fact could not find willfulness given defendant's "asserted reliance on the opinions of its counsel that such activities would not infringe"). The jury is "free to disbelieve or weigh lightly evidence tending to show [defendant's] reliance on the opinion letter and to place that evidence within the overall factual context of the case." *Acumed, LLC*, 483 F.3d at 811. Given the 28-year record in the PTO – including Gore's participation in the 18-year interference and two (losing) Federal Circuit appeals – the jury may "weigh lightly" any evidence Gore may present regarding its "reliance on the opinion letter" it obtained that rehashed the very arguments the PTO rejected. *See Golden Blount v. Robert H. Peterson Co.*, 438 F.3d 1354, 1368 (Fed. Cir. 2006) ("assertions that [accused infringer] subjectively did not believe it was infringing are insufficient to rebut the inference of reckless conduct" when that inference is adequately supported by facts).

The fact that Gore did not obtain an opinion of counsel asserting that it does not *infringe* the Goldfarb patent speaks volumes – ***particularly in light of the repeated representations Gore made in its 16-boxes of submissions to the FDA confirming that its products have an "average internodal distance" within the claimed ranges***, (*see, e.g.*, PX412.10-11; PX1547.3847; PX1548.8082; PX1546.2079; PX1363.1820; *see also* PX137; PX418; PX419; PX519; PX520; PX112; PX413-14; PX422; PX521; PX428-30; PX475-76; PX1570-71; PX1397; PX495-98; PX500-01; PX1393; PX1545; PX1549; PX1374; PX1378; PX1386; PX1399; PX1400; PX1559-63; PX1541; PX1550; PX1371; PX1398), ***and the accompanying science Gore submitted establishing actual tissue ingrowth***. (*See, e.g.,*

PX412.22; PX422.35, 45; PX195.34, 82; PX1548.7547, 3994; PX1546.1544; PX1363.889; *see also* PX137; PX418; PX419; PX519; PX520; PX112; PX413-14; PX422; PX521; PX428-30; PX475-76; PX1570-71; PX1397; PX495-98; PX500-01; PX1393; PX1545; PX1549; PX1374; PX1378; PX1386; PX1399; PX1400; PX1559-63; PX1541; PX1550; PX1371; PX1398.) Dr. Becker's highly credible testimony concerning the import of Gore's FDA filings provides the jury with strong evidence not only of willful infringement, but evidence that Gore has asserted its "non-infringement defense" in bad faith.

In *Jurgens v. CBK, Ltd.*, the jury made findings on willfulness and bad faith infringement. 80 F.3d 1566 (Fed. Cir. 1996). Despite this finding, the trial court declined to enhance damages or award attorneys fees. On appeal, the Federal Circuit held that in deciding whether to award increased damages or fees, the district court was bound by the jury's finding on willfulness:

> [W]here one continues his infringing activity, and fails to investigate and determine, in good faith, that he possesses reasonable defenses to an accusation of patent infringement, the infringement is in bad faith. Such conduct occurs when an infringer merely copies a patented invention, or where he obtains incompetent, conclusory opinions of counsel only to use as a shield against a later charge of willful infringement, rather than in a good faith attempt to avoid infringing another's patent. Thus, "bad faith" is more correctly called "bad faith infringement," and it is merely a type of willful infringement.

80 F.3d at 1571. The Court specifically rejected the infringer's argument that they did not act willfully because they relied on an opinion of counsel, noting that the patentee "presented evidence that [the infringer] continued to infringe the [asserted] patent even after the Patent and Trademark Office reexamined the patent, considered [the infringer's] arguments, and still upheld its patentability." *Id.* at 1571-72 (holding that trial court abused discretion by failing to enhance damages or award attorneys fees and remanding). Here, Gore similarly "continued to infringe" Dr. Goldfarb's patent "even after the Patent and Trademark Office … considered [Gore's

invalidity] arguments, and still upheld its patentability." On this trial record, the jury may find Gore liable for "bad faith infringement."[4]

Plaintiffs bear the burden of proving infringement by a preponderance of evidence, yet Gore was so uncertain of its ability to credibly contend that its products do not infringe that it chose to obtain an opinion of counsel based solely on validity, a defense that it must prove by clear and convincing evidence. The fact is that Gore's pre-litigation activities evidence an acknowledgment that its products practice the Goldfarb patent; its invalidity opinion is makeweight in light of the 28-years it told the PTO that the *very same* invention was valid. *See Therma-Tru Corp. v. Peachtree Doors, Inc.*, 44 F.3d 988, 996-97 (Fed. Cir. 1995) (affirming jury verdict of willful infringement despite the accused infringer's reliance on opinions of counsel that the asserted patent was invalid or unenforceable: "A reasonable jury could have believed that the attorney's letters were written in anticipation of litigation ... and that the president's decision to proceed with and continue the accused activity met the requirements of willfulness."). And there is no evidence – none – that indicates that Gore's current inequitable conduct assertions ever played a part in its pre-litigation decision to continue making grafts of the type David Goldfarb invented and that Gore wrongly tried to patent in Peter Cooper's name.

In short, *Seagate* does not diminish the fundamental premise that "[w]illfulness of behavior is a classical jury question of intent." *Richardson v. Suzuki Motor Co., Ltd.*, 868 F.2d 1226, 1250 (Fed. Cir. 1989). In *Richardson*, the Federal Circuit reversed the trial court's refusal to submit the question of willful infringement to the jury. *Id.* Noting that there was evidence "tending to show bad faith," the *Richardson* court found: "When trial is had to a jury, the issue

---

[4] There is significant additional evidence related to bad faith. For example, Dr. Goldfarb testified that Gore not only knew of his research and "structure," but that other doctors working for Gore sought to review Goldfarb's findings and learn from them. (11/7/07 Tr. at 402:15-404:3.) Gore secretly submitted a patent application based on an internal summary of Dr. Goldfarb's research, naming plant manager Peter Cooper as inventor. (11/7/07 Tr. at 408:3-409:4.) Mr. Cooper's (and Gore's) purported application was copied "verbatim" from a written description of Dr. Goldfarb's work. (11/7/07 Tr. at 430:15-25.) Dr. Goldfarb also testified that Mr. Cooper later *stole* Goldfarb's histology slides of his research on the patented invention from his lab, using "a *deceptive* way of getting into the lab" to obtain Dr. Goldfarb's data. (11/7/07 Tr. at 424:2-425:18; 11/8/07 Tr. at 643:17-23, 691:8-692:2.)

[of willfulness] should be decided by the jury." *Id.* Where, as here, there is sufficient evidence that would permit a jury to find for Dr. Goldfarb, the question must be reserved for the jury. For this reason alone, Gore's motion should be denied.

### B. The Trial Record to Date Is Not Merely "Legally Sufficient" – It Constitutes Overwhelming Evidence of Reckless Conduct On Which a Jury Could Find Gore's Infringement "Willful"

#### 1. Gore's Post-Litigation, *Ad Hoc* Defenses, Are Irrelevant to Willfulness

Gore asserts that Dr. Goldfarb and the Plaintiffs have set forth no evidence that would permit a jury to find in his favor on the question of willfulness. Gore is wrong and misrepresents the timing of when willfulness is examined.[5] Gore argues that there is insufficient evidence in the record for the jury to find "that it was objectively reckless for Gore to assert its infringement, invalidity, and unenforceability defenses" and that "Gore knew or should have known that its defenses were objectively reckless." (Doc. No. 651 at 2.) But, ***willfulness will depend on an infringer's prelitigation conduct.*** *Seagate*, 497 F.3d at 1374; *see also Golden Blount*, 438 F.3d at 1368 (affirming finding of willful infringement). It is Gore's alleged pre-suit actions which are reviewed for objective recklessness – not the *post hoc* explanations Gore generated during litigation. *Seagate*, 497 F.3d at 1374 ("[A] willfulness claim asserted in the original complaint must necessarily be grounded *exclusively* in the accused infringer's pre-filing conduct.")

#### 2. There is Substantial Evidence On Which a Jury Could Find Gore's Infringement Objectively Reckless

Gore asserts that "Plaintiffs presented no evidence during their case in chief of any culpable behavior on the part of Gore," asserting that Bard "presented no evidence of willfulness beyond its evidence of alleged infringement." (Doc. No. 651 at 2.) Not so. Bard presented

---

[5] This is the second time Gore has misrepresented *Seagate's* holding as to the timing of the objective recklessness inquiry. (*See* Doc. No. 561, Bard's Response to Gore's Motion to Strike Plaintiffs' Statement Regarding Gore's "Outline" of Matters Expected to be Covered in the Expert Testimony of Gerald H. Bjorge and Request For Leave to File Reply, at 2-5.)

substantial evidence that Gore acted recklessly, ignoring Bard's offers to exercise the 1984 Option while knowing full well the complete scope of the patent, including Claims 20 and 27 – which are each substantially identical to the "count" litigated for 18 years during the interference.

The PTO rejected Gore's claims in the interference (including motions for reconsideration and remands appeals) and determined that Dr. Goldfarb was the true inventor. (11/7/07 Tr. at 481:13-482:3, 492:6-17, 495:15-19;497:1-5; Ex. 1, 116-D, 191.) The PTO and Federal Circuit reached this conclusion not once, not twice, … but *five separate times*. (11/8/07 Tr. at 708:5-23.) After the patent issued, even Dr. Goldfarb (by his own admission not a lawyer) understood that "Gore was infringing." (11/7/07 Tr. at 503:2.)[6]

Based on the testimony of Gore's corporate representatives, as well as Gore's own voluminous and scientifically supported FDA filings, there is significant evidence that Gore's non-infringement defense is no only reckless, but that Gore is asserting the defense in *bad faith*:

> ➢ Gore told the FDA that "[t]he applicant graft is substantially equivalent to predicate GORE-TEX Vascular Grafts, and vascular grafts manufactured by Bard/IMPRA and by Atrium Medical Corporation" and expressly cited Dr. Goldfarb's publication to the FDA as support for its products. (*See, e.g.*, PX412.38 (Goldfarb publication); PX414, PX419, PX475-76, PX519-20, PX1570-71; 11/9/07 Tr. at 931:1-12.)

> ➢ Gore's corporate representatives conceded that Gore had explanted grafts showing tissue ingrowth in the form of collagen and fibroblasts and admitted that Gore's advertising states that the internodal distance is large enough to admit tissue ingrowth. (11/9/07 Tr. at 981:21-984:18, 993:12-25, 995:1-5.) Dr. Anderson agreed with Gore's description of tissue ingrowth and testified that it was consistent with the Court's claim construction. (11/14/07 Tr. at 1060:19-1062:5.)

> ➢ Dr. Becker's testimony established that Gore repeatedly advised the FDA that the Gore surgical vascular grafts, the ringed vascular grafts, the stretch grafts, the Interring vascular grafts and the stent grafts, **as commercially sold to the public**, all have an *average* fibril length or internodal distance in the 17 micron range, and that this is a structure that permits tissue ingrowth and tissue attachment. (11/9/07 Tr. at 968:15-969:14.)

---

[6] Moreover, Gore refused to exercise its decades-old option to sub-license the Goldfarb patent. (11/7/07 Tr. at 503:3-10.) Despite an industry norm that that options for patent licenses only remain open for a reasonable period of 60-90 days, more than five years have passed and Gore has done *nothing* to avail itself of the now void option. (11/16/07 Tr. at 1728:2-1729:24.)

No. CV-03-0597-PHX-MHM         9

- Mr. Calcote testified that his measurements of the average internodal distances of the accused products was consistent with Gore's FDA submissions, and that his testing methodology was consistent with the way that Gore tested its own products for the FDA. (11/8/07 Tr. at 739:14-745:12, 0822:18-823:6; PX1600.) Dr. Calcote also testified regarding his own measurements, which establish infringement. (11/8/07 Tr. at 744:24-822:17.)

- Dr. Anderson explained the scientific support Gore provided to the FDA demonstrates that Gore's use of the term "tissue ingrowth" is consistent with the Court's claim construction of "organized host tissue." (11/14/07 Tr. at 1062:6-1069:3, 1082:4-1099:18, 1159:6-1160:15; PX102, PX319, PX320.)

- Dr. Dolmatch testified that Gore's submissions to the FDA and in its marketing materials to doctors claim a structure that, at a minimum, permits tissue ingrowth. (11/16/07 Tr. at 1590:20-1595:16, 1598:3-1600:9; 1601:16-1602:21, 1603:13-25, 1609:23-1610:21, 1611:23-1613:10.)

There is sufficient evidence for the jury to find that Gore's actions in selling the accused products were objectively reckless and that Gore knew of this recklessness. Accordingly, there is sufficient evidence for the jury to find Gore's infringement willful.

    **C.**    **Bard Has Presented Sufficient Evidence To Shift the Burden on Willfulness**

Gore contends that Bard has failed to present sufficient evidence that it was objectively reckless for Gore to rely on its "invalidity defenses." (Doc. No. 651 at 2.) First, as set forth in section III.D below, Gore's argument misstates the burden of proof issue. Second, Gore ignores the substantial evidence from which a jury could reject Gore's (yet to be presented) defenses.

        **1.**    **As Noted, There Is No Record Evidence That the Presumption of Validity Accorded Dr. Goldfarb's Patent (By Statute) and the Deference Due to the PTO's Rejection of the Prior Art Relied on By Gore to Allege Invalidity (by *Am. Hoist*), Are Overcome**

As is plain from the face of the patent, all three of the prior art references Gore is relying on (the Soyer, Volder and Matsumoto articles) were expressly considered – and rejected – by the PTO during the prosecution of the Goldfarb patent. (PX1; 11/7/07 Tr. at 498:14-500:19, 502:8-503:2; 11/8/07 Tr. at 693:15-6989:9; 11/8/07 Tr. at 654:20-655:7 ("[The] patent office had [a] thorough opportunity to review the article.").) The only evidence of record in the case, so far,

is that the three articles which Gore contends are invalidating "did not teach the invention." (11/8/07 Tr. at 628:2-629:8.) On this record, a jury could find that it was objectively reckless for Gore to rely on these same references to support its invalidity defense because the same prior art had previously considered by the PTO and been found not to invalidate Dr. Goldfarb's invention. *See Jurgens*, 80 F.3d at 1571-72; *Central Soya Co., Inc.*, 723 F.2d at 1577. If that were not the case, any willful infringer could avoid the consequences of their actions merely by plucking a couple prior art references from the face of the patent and arguing that such art (though explicitly rejected by the PTO) renders a presumptively patent invalid. That is not the law.

Gore asserts that "during their case in chief, Plaintiffs did not even mention the opinion of patent counsel Gore obtained after the '135 patent issued and before Plaintiffs initiated this lawsuit, let alone that it was objectively reckless for Gore to rely upon that opinion or upon any of Gore's non-infringement, invalidity, or unenforceability defenses." (Doc. 651 at 2.) Gore's argument misapprehends, or ignores, the operative burden of proof: it is *Gore's* burden to demonstrate invalidity or its reliance on an opinion of counsel once Bard has presented its threshold showing of culpable behavior. *See, e.g. Nystrom v. TREX Co., Inc.*, 424 F.3d 1136, 1149 (Fed. Cir. 2005) (a party seeking to establish invalidity must overcome the presumption of validity by clear and convincing evidence).

> In an infringement action, it is not part of a patent owner's initial burden of going forward with proof of its case to submit evidence supporting validity. Rather, the burden is first on a challenger to introduce evidence which raises the issue of invalidity.

*Avia Group Int'l*, 853 F.2d at 1562. All Bard is required to do, as it has done here, is set forth "threshold evidence" of culpable behavior, and then "the burden of production shifts to the accused" to put on its evidence that its actions were appropriate. *Golden Blount*, 438 F.3d at 1368. The ball is in Gore's court.

> 2. **Given the Court's Bifurcation Order, Gore's Arguments Concerning Its Alleged Inequitable Conduct Defense (On Which It Faces a Heavy Burden) Are – At Best – Premature**

Gore asserts that "Plaintiffs have presented no evidence to meet their burden under *Seagate* (a) that it was objectively reckless for Gore to assert its ... unenforceability defenses." (Doc. No. 651 at 2.) Because this Court has bifurcated the inequitable conduct issue, no party has yet had the opportunity to present *any* evidence on unenforceability, let alone be "fully heard" as would be required to consider a motion for JMOL. Gore's opinion of counsel does not even discuss inequitable conduct, other than to reference an opinion that never was written on that issue. *Seagate* makes clear that Gore's pre-litigation actions are the focus of the willfulness inquiry and there is no evidence that any of Gore's pre-litigation decision-making was based on its *ad hoc* unenforceability defense.

Regardless, when the time comes, Gore faces a heavy burden to prove inequitable conduct. *See, e.g., Mentor H/S, Inc. v. Medical Device Alliance, Inc.*, 244 F.3d 1365, 1377-78 (Fed. Cir. 2001) (noting that defendant must demonstrate inequitable conduct "by clear and convincing evidence" and rejecting argument of inequitable conduct when allegedly withheld prior art was cumulative or already before the PTO). It is not Plaintiff's burden to anticipatorily respond to each of Gore's affirmative defenses that must be proved by clear and convincing evidence. All Plaintiff need do is make out a *prima facie* case upon which a jury could conclude that Gore's infringement was reckless. The current evidentiary record shows that Gore infringed the Goldfarb patent with no real non-infringement defenses – certainly none that Gore could convince a lawyer to adopt as part of an opinion of counsel. Unsurprisingly, Gore makes grafts of the type covered by the patent it sought but lost to Dr. Goldfarb, a patent it spent 28-years proclaiming as valid. Once the patent issued to Dr. Goldfarb, Gore had a duty to stop infringing or risk a finding of willfulness. The fact that Gore made patented grafts before the patent issued is irrelevant. *See Avia Group Int'l., Inc. v. L.A. Gear California, Inc.*, 853 F.2d 1557, 1566 (Fed. Cir. 1988) (affirming finding of willful infringement and observing: "The fact that an infringer

may have started its infringement before the patents issued (or before it was aware of the patents) does not bar an award of increased damages or attorney fees.").

### D. Bard Is Entitled to Present Its Rebuttal Case – To Be "Fully Heard" – Before JMOL Can Be Considered

As summarized above, Dr. Goldfarb and Plaintiffs have set forth their threshold showing of Gore's willful infringement, *i.e.*, evidence from which a jury could conclude that Gore was objectively reckless. Having done so, the burden of production has shifted to Gore. But, as of yet, there is **no record evidence** supporting Gore's **arguments** of invalidity. For the moment, Gore's assertions remain lawyer argument unsupported by the trial record. Regardless, if Gore presents such evidence, Bard is entitled to the opportunity to rebut it during Bard's rebuttal case. Consequently, Bard has not been "fully heard" on Gore's defense to Bard's showing of Gore's objective recklessness.[7] FED. R. CIV. P. 50(a) (JMOL may only be granted *after* "a party has been fully heard on an issue during a jury trial"); *McSherry v. City of Long Beach*, 423 F.3d 1015, 1020 (9th Cir. 2005) (court may not enter judgment against a party who has not "been afforded an opportunity to present any available evidence bearing on that fact").

## IV.  CONCLUSION

WHEREFORE Bard respectfully requests that the Court (i) deny Gore's motion for judgment as a matter of law on Plaintiffs' Claim of Willful Infringement, and (ii) grant any other relief the Court deems just.

November 21, 2007

Bard Peripheral Vascular, Inc.,
David Goldfarb, M.D.
& C. R. Bard, Inc.
By their attorneys,

---

[7] Gore's reliance on *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1332 (Fed. Cir. 2004), is inapposite. In *Norian*, the district court held that the patentee had failed to meet its burden of presenting "threshold evidence of culpable behavior." Unlike here, the patentee in *Norian* failed to set forth evidence "as to whether or not Stryker had acted reasonably once it acquired knowledge of the patent." *Id.* at 1332-33. Here, because there is ample evidence that Bard has met its burden to show Gore's culpable, willful, conduct, the burden now shifts to Gore. If Gore sets forth evidence sufficient to meet its responsive burden, Bard is entitled to (and will) reply.

By: s/ Andrew Federhar

**FENNEMORE CRAIG P.C.**
ANDREW M. FEDERHAR
3003 North Central Avenue, Suite 2600
Phoenix, Arizona 85012-2913
Phone (602) 916-5000

**LATHAM & WATKINS, LLP**
STEVEN C. CHERNY
885 Third Avenue
New York, NY 10022
Phone (212) 906-1200

MAXIMILIAN A. GRANT
555 Eleventh Street, N.W.
Washington, DC 20004
Phone (202) 637-2200

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that he caused a true and correct copy of the foregoing PLAINTIFFS' OPPOSITION TO GORE'S MOTION FOR JMOL REGARDING PLAINTIFFS' CLAIM OF WILLFUL INFRINGEMENT to be served by **hand** on the following:

> Brett L. Dunkelman
> Osborn Maledon, P.A.
> 2929 North Central Avenue, Suite 2100
> Phoenix, Arizona 85012-2791

on this 21st day of November, 2007.

> Plaintiffs
>
> By: s/ Andrew Federhar
> One of its attorneys