**OSBORN MALEDON**
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone  602.640.9000
Facsimile  602.640.9050

William J. Maledon, No. 003670
Brett L. Dunkelman, No. 006740
Osborn Maledon, P.A.
2929 North Central Avenue
Suite 2100
Phoenix, Arizona 85012-2794
(602) 640-9000
wmaledon@omlaw.com
bdunkelman@omlaw.com

David H. Pfeffer
Arnold I. Rady
James W. Gould
Morgan & Finnegan, LLP
3 World Financial Center
New York, NY 10281-2101
(212) 415-8700
(212) 415-8701

John S. Campbell
W. L. Gore & Associates, Inc.
551 Paper Mill Road
Newark, Delaware 19714

Attorneys for W. L. Gore & Associates, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bard Peripheral Vascular, Inc., and David Goldfarb, M.D., <br> Plaintiffs, <br> v. <br> W. L. Gore & Associates, Inc., <br> Defendant. <br><br> W. L. Gore & Associates, Inc., <br> Counterclaimant, <br> v. <br> Bard Peripheral Vascular, Inc., David Goldfarb, M.D., and C. R. Bard, Inc., <br> Counterdefendants. | No.: CV-03-0597-PHX-MHM <br><br> **GORE'S REPLY MEMORANDUM IN SUPPORT OF ITS MOTION FOR JMOL REGARDING PLAINTIFFS' CLAIM OF WILLFUL INFRINGEMENT** |



**OSBORN MALEDON**

A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone   602.640.9000
Facsimile   602.640.9050

Plaintiffs' opposing memorandum demonstrates why judgment as a matter of law must be granted in favor of Gore on the issue of willful infringement. While Plaintiffs' memorandum is full of shrill and bombastic language, it is lacking in any substance relevant to the issue at hand. Notwithstanding Plaintiffs' bluster, they have not presented sufficient evidence during their case in chief to meet their burden to prove by clear and convincing evidence that Gore's conduct was objectively reckless and that Gore knew or should have known it. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007).

## I.   Plaintiffs' Arguments Disregard Controlling Case Law.

As an initial matter, Plaintiffs are simply wrong under controlling Federal Circuit precedent when they claim (a) that they need not make a *prima facie* case of willfulness during their case in chief but instead may wait to respond to any evidence the accused infringer may present during the defendant's case in chief, (b) that the burden has somehow shifted to Gore to prove non-willfulness, and (c) that they can make out a *prima facie* case of willfulness simply by presenting evidence that they believe proves that Gore's accused products infringe the '135 patent. The Federal Circuit squarely rejected all three of Plaintiffs' legal propositions in *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1332 (Fed. Cir. 2004). Plaintiffs cannot escape the clear holdings of this recent Federal Circuit case simply by arguing in a footnote that the facts in that case are different than this one.

Not content with asking this Court to disregard *Norian*, Plaintiffs also believe that an inference of willfulness or reckless conduct is created from the fact that Gore's opinion of patent counsel discusses only the issue of invalidity, but not infringement or inequitable conduct. The Federal Circuit, however, squarely rejected such an argument in its en banc decision in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345-46 (Fed. Cir. 2004). The absence of an opinion of counsel does not create an inference of willful infringement. *Id.*

Plaintiffs also believe that willful infringement can be found from the mere fact that Gore submitted to the FDA 510(k) notifications stating that the Gore product for

-1-



OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone   602.640.9000
Facsimile   602.640.9050

which approval was sought is substantially equivalent to a Bard or Atrium product. A 510(k) notification is merely a submission of engineering and clinical information to permit the FDA to assess the safety and effectiveness of a new product with regard to a predicate product which is already on the market. *E.g., Cardiovention, Inc. v. Medtronic, Inc.*, 483 F.Supp.2d 830, 840 (D. Minn. 2007). Courts have repeatedly refused to allow 510(k) notification of substantial equivalence to be used as evidence of infringement. *Id.* (citing cases). There are two reasons for this rule. First, by so using a 510(k) submission, the trier of fact would be asked to compare the accused product to a commercial product than to the claims of the patent. Second, the FDA filing is controlled by a regulatory scheme entirely separate from the patent laws. As a result, 510(k) notifications have little relevance and will serve only to confuse or mislead the jury. *Id.* If such statements cannot be used to prove infringement, then they are hardly relevant to whether any infringement would be willful. Indeed, the court in *VNUS Med. Tech., Inc. v. Diomed Holdings, Inc.*, 2007 WL 3165548 (N.D. Cal. 2007), a case upon which Plaintiffs heavily rely in trying to keep their willful infringement claim alive, held that 510(k) notifications which do not refer to the patent in suit cannot sustain a claim of willful infringement.

To avoid JMOL, Plaintiffs were required during their case in chief to make out a *prima facie* case of willfulness under the clear and convincing evidence standard. They were required to show that, after the '135 patent issued,[1] Gore "acted despite an objectively high likelihood that its actions constituted infringement of a **valid patent**." *Seagate*, 497 F.3d at 1371 (emphasis added). Stated another way, proof of willfulness requires at least a showing of "objective recklessness." *Id.* If this objective standard is satisfied, the plaintiff must then establish the existence of a separate, subjective element – the risk that the defendant's conduct was objectively

---

[1] Notably, almost all of the conduct that Plaintiffs rely upon as supposedly demonstrating culpable behavior occurred years, even decades, before the '135 patent issued. This evidence is therefore irrelevant under the *Seagate* standard, which assesses the defendant's conduct and state of mind after the patent issues.

-2-



OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone    602.640.9000
Facsimile    602.640.9050

reckless "was either known or so obvious that it should have been known to the accused infringer." *Id.*

Plaintiffs have not presented any evidence sufficient to meet their clear and convincing burden of proof on either element of the *Seagate* test. Instead, Plaintiffs' effort is devoted to citing a plethora of pre-*Seagate* cases decided upon the now repudiated affirmative duty to avoid infringement standard. In *Seagate*, the Federal Circuit rejected that standard and created a new, more demanding standard under which the issue of willful infringement is to be determined. 497 F.3d at 1371. Plaintiffs' argument that they allegedly could establish willful infringement under the standards which existed before *Seagate* is nothing more than an idle academic exercise.

## II.     The Outcome of the Interference Proceedings Cannot Support a Finding of Objective Recklessness.

Plaintiffs appear to argue that Gore has engaged in objectively reckless conduct simply because, instead of exiting the market, Gore has elected instead to have its day in court to challenge the validity and enforceability of the '135 patent. Plaintiffs continually assert that the PTO and the Federal Circuit have repeatedly decided against Gore on all of these issues and have always found in favor of Dr. Goldfarb. Plaintiffs, however, take a much too expansive view of what the parties did litigate and could have litigated during the interference proceedings. Contrary to Plaintiffs' mischaracterization, the ruling in the interference proceedings was a very narrow one -- i.e., that as between Peter Cooper alone and Dr. Goldfarb alone, Dr. Goldfarb proved that he had priority with regard to an invention defined by the count of the interference, a count which, though similar, was not identical to Claims 20-27 asserted in this litigation. The interference proceedings did not decide that Dr. Goldfarb was entitled to a patent, let alone that the '135 patent is valid and enforceable.

As this Court has recognized, priority is all the interference decided. (Order entered 9/30/05 (Docket No. 311), at 12-13). Yet, in many of the papers, including its

-3-



OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone    602.640.9000
Facsimile    602.640.9050

opposition to the present motion, Plaintiffs assert that the interference decided much more than just priority.  Indeed, they boldly and incorrectly contend that these proceedings decided issues relating to the patentability of the currently asserted claims.  Not only were these issues not decided during the interference proceedings, but under the rules then in effect, the Patent Act precluded the PTO and the Federal Circuit from deciding validity and other patentability issues.  *Case v. CPC Int'l, Inc.*, 730 F.2d 745, 748 (Fed. Cir. 1984).  Plaintiffs would have this Court ignore or overrule controlling Federal Circuit case law.

Nevertheless, the PTO and the Federal Circuit did make and affirm certain factual findings that are highly relevant in assessing whether Gore's conduct, after the patent issued, was objectively reckless and that Gore knew or should have known it. The Federal Circuit in essence found that Peter Cooper had made an ePTFE tube that had a structure falling within least Claim 20 and, on April 19, 1973, sent it to Dr. Goldfarb with a letter (Exhibit DX 3019) predicting that would be patent -- i.e., would remain open -- when implanted in a dog.  *Cooper v. Goldfarb,* 240 F.3d 1378, 1384-85 (Fed. Cir. 2001).  The Federal Circuit held that Cooper's sending of this letter and the sample was a request for Dr. Goldfarb to test the sample for patency.  *Id.* This activity all occurred prior to any alleged invention by Dr. Goldfarb.  Gore, therefore, made a vascular graft meeting the limitations of at least Claim 20 **before** Dr. Goldfarb made his invention and without any **input** from Dr. Goldfarb.  In other words, Gore made the very graft that Dr. Goldfarb implanted, explanted, and then analyzed in order to make his alleged invention.

While Gore agrees that the issue of whether Dr. Goldfarb did anything patentable by measuring certain properties of a graft that was made and supplied to him by Gore must await the invalidity portion of the trial, it would be a truly bizarre result if Gore could be found to have engaged in objectively reckless conduct simply by continuing to make and sell the very grafts it had been making before Dr. Goldfarb made his alleged invention.

-4-



### III. Plaintiffs' Expert Testimony on Infringement is Woefully Insufficient to Establish Objectively Reckless Conduct.

Plaintiffs try to make much of the testimony of their expert witnesses. They argue that Dr. Becker demonstrated that Gore, in its FDA 510(k) notifications and in its advertising, said that all its products that have the same microstructure as the product it had on the market prior to the effective date of the 1976 FDA Amendments -- i.e., it had an internodal distance of about 17 microns. According to Dr. Anderson, such a structure would "permit tissue ingrowth" and therefore meet the "tissue ingrowth" element of each of Claims 20-27.

The same analysis, however, is equally applicable to the very grafts that Dr. Goldfarb said he used to make his invention -- i.e., the grafts Gore made and then supplied to Dr. Goldfarb which he then used to make his alleged invention. As a result, Plaintiffs are essentially relying upon statements made about a product that was made prior to Dr. Goldfarb's invention to support a finding of objectively reckless conduct with respect to a later filed patent. Plaintiffs' argument is absurd on its face. [2]

In any event, the most one can say about this expert testimony is that, if believed, it is relevant only to whether or not Gore's products meet the "tissue ingrowth" element of the claims at issue. That evidence alone is woefully insufficient to make out a *prima facie* case of willful infringement. *Norian*, 363 F.3d at 1332 ("Willful infringement is not established by the simple fact of infringement, even though [the defendant] stipulated that it had knowledge of the [plaintiff's] patents.")

### IV. Gore's Decision to Defer Exercising the Option is Not Evidence of Reckless Conduct.

Plaintiffs contend that Gore somehow engaged in objectively reckless conduct when it deferred exercising the Option in response to Bard's refusal to engage in

---

[2] Similarly, Plaintiffs make the strange argument that Gore somehow engaged in objectively reckless conduct by referring in 510(k) notifications to Dr. Goldfarb's article published in 1976. In the publication, Dr. Goldfarb reported on his successful use of vascular grafts provided to him by Gore. Gore is hardly engaging in "copying" by pointing to the successful use of its own products.



OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone   602.640.9000
Facsimile    602.640.9050

meaningful discussions with Gore about the Option and the products which may be included within any licensing arrangement. The very exhibits Plaintiffs submitted on this issue demonstrate that Gore's behavior was not objectively reckless, but instead was entirely consistent with what one would expect from a reasonable and prudent business under the circumstances.

As this Court is aware, Gore makes a large number of implantable medical devices containing ePTFE. Many, but not all, are accused of infringement in this case. During the parties' discussions in late 2002 and early 2003 regarding the Option, Gore's John Sininger asked Bard to identify which of Gore's products allegedly infringe which claims of the '135 patent. He received no answer; instead, he was told that such a question was premature. DX 773-74; Tr. at 1698-1710. Despite repeated requests, Bard refused to tell Gore which products it believed needed to be included in any licensing arrangement. No claim chart was ever submitted to Gore. Bard even rejected Gore's arbitration proposal, which would have provided a quick and cost-effective means to resolve such questions. Instead of responding to Gore's questions or engaging in good faith negotiations, Plaintiffs filed suit.

### V.     The File History Defeats Plaintiffs' Willful Infringement Claims.

The last paper filed on behalf of Dr. Goldfarb in the PTO is a request by Lawrence Green to withdraw the Goldfarb patent application from issuance (Exhibit PX 115.4407-4411). Mr. Green, who had just attended a deposition of Dan Detton in another lawsuit, informed the PTO that he heard testimony that raised questions about the patentability and enforceability of the '135 patent, including whether a violation of the duty of candor had occurred. Mr. Green requested the PTO's permission to withdraw the Goldfarb application so that he could conduct an investigation. It is a very unusual situation where an attorney who represents the inventor and patent owner tries to defer the issuance of a patent so that the issues of patentability and enforceability can be investigated. The PTO denied Mr. Green's request, but only because it had come too late – the PTO had already issued its notice of allowance. *Id.*

-6-



Even though Mr. Green had represented to the PTO that an investigation needed to be conducted, there is no evidence that Mr. Green or anyone else affiliated with Plaintiffs ever conducted any such investigation prior to filing this lawsuit. As a result, the investigation that Mr. Green told the PTO needed to be conducted now can only be performed as part of this litigation. Given Mr. Green's own statements to the PTO, it can hardly be objectively reckless for Gore to decide to litigate the bona fides of the '135 patent to ensure that the investigation Mr. Green told the PTO needed to be conducted is actually conducted. Given Mr. Green's assertions that an investigation needed to be conducted, it was hardly objectively reckless for Gore to elect not to exit the vascular graft business when the '135 patent issued in August 2002, as Plaintiffs claim Gore was obligated to do.

## Conclusion

Plaintiffs have failed to present evidence sufficient to meet their burden to establish by clear and convincing evidence (a) that Gore engaged in objectively reckless conduct by deciding not to exit the market but instead to litigate the validity and enforceability of the '135 patent and (b) that Gore knew or should have known that its conduct was objectively reckless. JMOL should be granted on Plaintiffs' willful infringement claim.

DATED this 27th day of November, 2007

        OSBORN MALEDON, P.A.

        s/William J. Maledon
        Brett L. Dunkelman
        William J. Maledon
        2929 North Central Avenue
        Phoenix, Arizona  85012-2794

        David H. Pfeffer
        Arnold I. Rady
        James W. Gould
        Morgan & Finnegan, L.L.P.
        3 World Financial Center
        New York, New York  10281-2101

John S. Campbell
W. L. Gore & Associates, Inc.
551 Paper Mill Road
Newark, Delaware  19714

Attorneys for W. L. Gore & Associates, Inc.

**CERTIFICATE OF SERVICE**

    I hereby certify that on November 27, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

                                                         s/Susanne Wedemeyer

1815344v2