1  FENNEMORE CRAIG P.C.
   3003 NORTH CENTRAL AVENUE, SUITE 2600
2  PHOENIX, ARIZONA  85012-2913
   PHONE (602) 916-5000
3  ANDREW M. FEDERHAR (#006567)

4
   LATHAM & WATKINS LLP
5  885 THIRD AVENUE
   NEW YORK, NEW YORK 10022
6  STEVEN C. CHERNY

7  555 ELEVENTH STREET, N.W.
   WASHINGTON, DC 20004
8  MAXIMILIAN A. GRANT

9
10 Attorneys for Plaintiffs/Counterdefendants Bard Peripheral Vascular,
   Inc. and David Goldfarb, M.D. and Counterdefendant C.R. Bard, Inc.
11

12
13                    UNITED STATES DISTRICT COURT
                          DISTRICT OF ARIZONA
14
   Bard Peripheral Vascular, Inc., and       )
15 David Goldfarb, M.D.,                     )   No. CV-03-0597-PHX-MHM
                                             )
16        Plaintiffs,                        )
                                             )
17        v.                                 )   **PLAINTIFFS' MOTION FOR**
                                             )   **JUDGMENT AS A MATTER OF**
18 W.L. Gore & Associates, Inc.,            )   **LAW REGARDING**
                                             )   **INFRINGEMENT**
19        Defendant.                        )
                                             )   *(Assigned to the Hon. Mary H. Murguia)*
20 _____       )
                                             )
   W.L. Gore & Associates, Inc.,            )
21                                           )
          Counterclaimant,                  )
22                                           )
          v.                                 )
23                                           )
   Bard Peripheral Vascular, Inc.,          )
24 David Goldfarb, M.D., and                )
   C.R. Bard, Inc.                           )
25                                           )
          Counterdefendants.                )
26                                           )
                                             )
27 _____       )

28

No. CV-03-0597-PHX-MHM

I. INTRODUCTION

Plaintiffs assert that Gore's ePTFE grafts, stent grafts and patch grafts infringe one or more of claims 20-27 of U.S. Patent No. 6,436,135 (the "Goldfarb patent"). These claims all require an artificial vascular prosthesis made from ePTFE having a node and fibril microstructure. The presence of these elements in the accused products is undisputed. Thus, the primary area of disagreement between the parties lies in whether the accused products comprise of an ePTFE microstructure that "permits tissue ingrowth," and which has an average internodal distance within the claimed ranges of the Goldfarb patent.

On each of these questions the evidence of Gore's infringement is overwhelming. First, as was expressly conceded by Gore's trial counsel before the jury, Gore's accused products have a structure that permits tissue ingrowth:

> "Let me just clarify because maybe there is some confusion here. *Are you aware, Dr. Anderson, that Gore does not dispute that its grafts and its stent grafts get some tissue ingrowth? Are you aware of that?*"

(11/14/07 Trial Tr. at 1100:12-15.)[1]  The evidence of Gore's infringement includes Gore's repeated representations to the FDA and in its product advertising – advertising in which it had a legal duty to make truthful and accurate statements – that its products have a structure that permits tissue ingrowth. These representations were expressly supported by the scientific data submitted by Gore to the FDA. Testimony by expert witnesses at trial confirmed what Gore had been telling the public and the federal government: Gore's accused products have a microstructure that permits tissue ingrowth. In light of Gore's FDA submissions, its product advertisements, the testimony by expert witnesses at trial, and representations by Gore's own counsel, no reasonable jury could find that Gore's products do not have a structure that permits tissue ingrowth.

---

[1] All emphasis added unless otherwise noted.

Gore's FDA filings and internal testing data also conclusively establish that the accused products all have an average internodal distance within the claimed range. This average internodal distance was confirmed by the independent measurements of Plaintiffs' expert. Gore's response to this hard data is to assert that Plaintiffs' measurements – and thus by extension its own measurements and the measurements it provides to the FDA – are wrong because they did not measure the outer wrap on the tested products. Gore thus argues that the patent claims should be interpreted *differently* than one of ordinary skill in the art would understand them and a *different* testing protocol from the industry standard should be used. That is not the law and Gore's litigation-inspired arguments cannot save it from the evidence.

Gore has failed to adduce sufficient evidence to establish, as a matter of law, a legally sufficient basis on which a jury could find that the accused products do not infringe the Goldfarb patent. Rather, the weight of evidence is such that the only conclusion available to a reasonable jury is that the accused products infringe the asserted claims of the Goldfarb patent. Plaintiffs are entitled to judgment as a matter of law on infringement pursuant to Federal Rule of Evidence 50(a).

## II.   ARGUMENT

### A.   The Legal Standard for Judgment as a Matter of Law

Judgment as a matter of law is appropriate if, "during a trial by jury a party has been fully heard on an issue and there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue ... ." FED. R. CIV. P. 50(a). The Court should enter judgment as a matter of law "if the evidence and its inferences considered as a whole and viewed in the light most favorable to the nonmoving party, can support only one reasonable conclusion – that the moving party is entitled to judgment ... ." *Mathis v. Pacific Gas & Elec. Co.*, 75 F.3d 498, 501-02 (9th Cir. 1996) (reversing partial denial of motion for judgment as a matter of law and affirming partial grant of motion for judgment as a matter of law). "If reasonable jurors could reach only one verdict, the grant of JMOL is appropriate and must be affirmed." *Viskase Corp. v. Am. Nat'l Can*

*Co.*, 261 F.3d 1316, 1325-26 (Fed. Cir. 2001) (affirming grant of judgment under Rule 50(a)(1) that the six patents in suit were valid).

### B. Legal Standard for Patent Infringement

"A patent is infringed if any claim is infringed ... for each claim is a separate statement of the patented invention." *Pall Corp. v. Micron Separations Inc.*, 66 F.3d 1211, 1220 (Fed. Cir. 1995). "To show infringement of a patent, a patentee must supply sufficient evidence to prove that the accused product or process contains, either literally or under the doctrine of equivalents, every limitation of the properly construed claim." *Seal-Flex Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999). Moreover, "[a]n accused device cannot escape infringement by merely adding features, if it otherwise has adopted the basic features of the patent." *Amstar Corp. v. Envirotech Corp.*, 730 F.2d 1476, 1482 (Fed. Cir. 1984) (citation omitted); *see Genentech Inc. v. Chiron Corp.*, 112 F.3d 495, 501 (Fed. Cir. 1997).

Further, "[w]hoever actively induces infringement of a patent shall be liable as an infringer." 35 U.S.C. § 271(b). If a company knowingly induces the direct infringement of its customers, it is liable for that infringement. *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1318 (Fed. Cir. 2003). Proof of induced infringement requires evidence of an intent to cause the infringing acts. *See id.* Evidence of infringing acts and of intent may be circumstantial. *See Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1362-64 (Fed. Cir. 2006) (affirming infringement liability based on packaging of instruction manual with product).

### C. No Reasonable Jury Could Find That Gore's Standard Vascular Grafts Do Not Infringe Claims 20-24 and Claim 27 of the Goldfarb Patent

All of asserted claims 20-24 and 27 require (i) an artificial vascular prosthesis; (ii) comprising expanded polytetrafluoroethylene (ePTFE); (iii) having a microstructure consisting of nodes interconnected by fibrils. There is no dispute that

Gore's Standard Vascular Grafts meet these claim elements.[2] Nor could any reasonable jury find otherwise. (*See, e.g.*, PX 412.10-11 (design criteria for Gore vascular grafts).) Thus, the only issue for the Court to address is whether the accused infringing products meet the remaining claim limitations, namely the "permits tissue ingrowth" and internodal distance limitations.

### 1. Gore's Standard Vascular Grafts Have A Structure That Permits Tissue Ingrowth

Claims 20-24 and 27 of the Goldfarb patent require that the ePTFE microstructure "permit[] tissue ingrowth." The Court has construed the claim term "permits tissue ingrowth" to mean "must allow organized host tissue to grow into the pores of the node and fibril microstructure." (Doc. No. 342 at 2.) The Court has further held that this claim limitation is *permissive* and that "in order to prove infringement, Bard is not required to show that tissue ingrowth is more likely than not to occur, merely that the structure *allows* for tissue ingrowth to occur." (Doc. No. 559 at 14.) (emphasis original).

Gore's counsel expressly conceded that its products have a structure that permits tissue ingrowth: "***Gore does not dispute that its grafts and stent grafts get some tissue ingrowth***." (11/14/07 Trial Tr. at 1100:12-15.); *see also* PX 18 (letter from David Pfeffer asserting that statements that Gore's vascular grafts do not have a structure that permits tissue ingrowth would be "contrary to fact"). Even putting these admissions aside, the overwhelming evidence in this case demonstrates that Gore's vascular grafts have an ePTFE microstructure that permits tissue ingrowth. This evidence includes:

> ➤ The testimony of Gore's corporate representatives that Gore had explanted grafts showing tissue ingrowth in the form of collagen and fibroblasts and

---

[2] Gore's Standard Vascular Grafts consist of those products that incorporate a standard ePTFE vascular graft. This includes the Standard Walled, Standard Walled Ringed, Standard Walled Removable Ringed, Thin Walled, Thin Walled Ringed, Thin Walled Removable Ringed, and Diatstat Vascular Grafts.

admitting that Gore's advertising states that the internodal distance is large enough to admit such tissue ingrowth. (11/29/07 Tr. at 981:21-984:19, 993:12-25, 995:1-5.) Dr. Anderson, Plaintiffs' expert pathologist, agreed with Gore's description of tissue ingrowth and testified that it was consistent with the Court's claim construction. (11/14/07 Tr. at 1060:19-1062:5.)

- The repeated statements in Gore's product advertisements that its vascular grafts have a structure that permits tissue ingrowth. (PX 22, PX 139, PX 345.) As Dr. Becker explained during her testimony, because Gore's products are regulated by the FDA, Gore was required to be truthful and accurate in its advertising regarding tissue ingrowth. (11/09/07 Tr. at 958:14-960:2.)

- The repeated statements by Gore to the FDA that its products contain a node and fibril microstructure that permits tissue ingrowth *and* the accompanying science submitted by Gore in support of those statements establishing actual tissue ingrowth. (PX 112, PX 137.8-15, PX 412.22, 412.45, PX 413-414, PX 418.9-.16, PX 419, PX 435-436, PX 475-476, PX 519-520.) Because this evidence was being submitted to the FDA, Gore was similarly required to be truthful and accurate in its statements regarding tissue ingrowth. (11/09/07 Tr. at 964:18-965:5.)

- The testimony by Dr. Anderson explaining the scientific support Gore provided to the FDA demonstrating how Gore's use of the term "tissue ingrowth" is consistent with the Court's claim construction of "organized host tissue" which includes collagen and fibroblasts. (11/14/07 Tr. at 1062:6-1069:3, 1082:4-1099:18, 1159:6-1160:15, PX 102, PX 319, PX 320.)

The only evidence that Gore offered in rebuttal was the testimony of Dr. Aretz, who interpreted the Court's claim construction to require a "wave-like progression" of organized host tissue. Dr. Aretz admitted, however, that in his 30 years of practice he *had never* seen a tissue response in an ePTFE vascular graft that met with his interpretation. (11/29/07 Trial Tr. at 2413:9-2414:7.) Furthermore, Dr. Aretz's interpretation of the Court's claim construction was directly at odds with that of all of the other witnesses, including Gore's corporate representative scientists (Ms. Susan Boothe and Mr. Jansen Emmanuel), and Gore's expert witness (Dr. Wheeler) who expressly agreed that the Court's claim construction was satisfied by the presence of fibroblasts and collagen. (11/28/07 Trial Tr. at 2216:19-2218:9.) Plaintiffs' evidence regarding the ability of the microstructure of the Standard Vascular Grafts to permit tissue ingrowth thus stands unchallenged and no reasonable jury could conclude otherwise.

No. CV-03-0597-PHX-MHM   5

2. **Gore's Standard Vascular Grafts Meet The Claimed Internodal Distances**

Claims 20-24 and 27 of the Goldfarb Patent require that the ePTFE microstructure have an average internodal distance of between 6 and 200 microns. Plaintiffs have presented substantial evidence that the Gore Standard Vascular Grafts have an average indernodal distance well within this range, including:

- The testimony and measurements of Mr. Calcote. (PX 1600, 11/08/07 Trial Tr. at 744:24-822:17.) Mr. Calcote confirmed during testimony that his measurements of the average internodal distances used techniques that were consistent with the methodology used in Gore's FDA submissions, Gore's own internal testing and industry standards. (11/08/07 Tr. at 739:14-745:12, 822:18-823:6.)

- The voluminous submissions to the FDA in which Gore repeatedly represented that the Standard Vascular Grafts have an "average" internodal distance well within the claimed ranges of the Goldfarb patent. (PX 137.22, PX 112.25, PX 195.43, PX 412.10-11, PX 413, PX 418-419, PX 475-76, PX 480.31, PX 519-520.)

- Gore's internal batch lot test data and its product packaging for the Standard Vascular Grafts which report the fibril length, or internodal distance, as being within the claimed range. (PX 16, PX 23.)

The sole evidence that Gore put in rebuttal was the testimony and measurements of Dr. McMillan. In contrast to Mr. Calcote, however, Dr. McMillan did not use the same measurement techniques that Gore uses to provide data to the FDA. (11/30/07 Trial Tr. at 2722:25-2723:5, 2723:15-2724:23.) Nor did Dr. McMillan use the measurement techniques that Gore itself uses to test its own products, or which are recognized in the industry as being appropriate. (*Id.* at 2727:22-2729:6, 2733:21-2733:24.) Dr. McMillan thus failed to apply the same standards that one of ordinary skill in the art would use when examining this claim, rendering his testimony irrelevant. *See Pfizer, Inc. v. Teva Pharms. USA, Inc.*, 429 F.3d 1364, 1372-73 (Fed. Cir. 2005) ("When interpreting claims, we inquire into how a person of ordinary skill in the art would have understood claim terms at the time of the invention.").

Given Dr. McMillan's failure to use the appropriate test methodology to measure the average internodal distance of the accused products, the only conclusion available to a reasonable jury is that the accused Standard Vascular Graft products fall within the average internodal distance of the asserted claims. Accordingly, Plaintiffs are entitled to judgment as a matter of law that Gore's Standard Vascular Grafts meet all of the limitations of, and thus infringe, claims 20-24 and 27.

D.  **No Reasonable Jury Could Find That Gore's Stretch Vascular Grafts Do not Infringe Claims 20-24 and Claim 27 of the Goldfarb Patent**

As with the Standard Vascular Grafts, there is no dispute that Gore's Stretch Vascular Grafts are an artificial vascular prosthesis comprised of ePTFE having a microstructure of nodes interconnected by fibrils.[3] (*See* Section C, *supra*.) Nor can there be any dispute that the Stretch Vascular Grafts have a node and fibril microstructure that "permits tissue ingrowth" and that is within the claimed average internodal distances. Indeed, the unrebutted evidence shows that:

➢ Gore has repeatedly told the FDA that its Stretch Vascular Grafts have the same microstructure and tissue response as the Standard Vascular Grafts. (PX 422, 9/11/07 Tr. at 935:22-936:11.) As set forth previously, the microstructure of the Standard Vascular Graft is one that permits tissue ingrowth. (*See* Section C.1, *supra*.)

➢ Gore has submitted clinical data to the FDA demonstrating tissue ingrowth into the node and fibril microstructure of the Stretch Vascular Grafts. (*See, e.g.,* PX 422.35 ("Gross and histological analyses indicate that the flow surface, degree of tissue attachment and degree of tissue ingrowth were essentially the same for both grafts in each animal.").)

➢ Gore's advertising for the Stretch Vascular Graft promotes it as having "enhanced tissue ingrowth." (PX 22.)

---

[3] Gore's Stretch Vascular Grafts are those products that incorporate a stretch vascular graft. This includes the Standard Walled Stretch, Standard Walled Large Diameter Stretch, Standard Walled Removable Ringed Stretch, Standard Walled Bifurcated Stretch, Standard Walled Ringed Stretch, Standard Walled Ringed Stretch Dialysis, Standard Walled Removable Ringed Stretch, Thin Walled Stretch, Thin Walled Bifurcated Stretch, Thin Walled Removable Ringed Stretch, Thin Walled Ringed Stretch, and PROPATEN Vascular Grafts.

- Dr. Anderson confirmed that the microstructure of the Stretch Vascular Grafts is one that permits tissue ingrowth. (11/14/07 Tr. at 1096:1-1096:11 and 1164:12-1164:19.)

- The average internodal distances reported by Gore to the FDA, on its product packaging and in its batch lot test data fall well within the 6 to 200 micron range of the asserted claims. (*See, e.g.*, PX 430.68 (average internodal distance of 24 microns), PX 428.93 (same), PX 480.31 (average fibril length of 22 microns); PX 40 (Stretch Vascular Graft product packaging noting an internodal distance of 25 microns); *see also* PX 16.)

As with the Standard Vascular Graft, therefore, no reasonable jury could find that Gore's Stretch Vascular Grafts do not contain each and every element of claims 20-24 and 27. Plaintiffs are thus entitled to judgment as a matter of law with respect to the infringement of those claims by Gore's Stretch Vascular Grafts.

E.  **No Reasonable Jury Could Find That Gore's INTERING Grafts Do Not Infringe Claims 20-24 And Claim 27 Of The Goldfarb Patent**

As with Gore's other ePTFE grafts, there is no dispute that Gore's INTERING Vascular Grafts are an artificial vascular prosthesis comprised of ePTFE having a microstructure of nodes interconnected by fibrils.[4] (*See* Section C, *supra*.) As with the Stretch Vascular Graft, Gore's own documents expressly admit that the INTERING Vascular Grafts consist of the same microstructure as the Standard Vascular Grafts. For the same reasons submitted previously, therefore, there can be no dispute that the INTERING Vascular Grafts have a node and fibril microstructure that "permits tissue ingrowth" and is within the claimed average internodal distances. Confirming this fact, Gore directly advertises its INTERING Vascular Grafts as having a microstructure that permits tissue ingrowth. (PX 21.6 ("We have data showing that tissue ingrowth still occurs through the radial support").) In addition, Gore's product packing, Gore's own internal measurements, and Plaintiffs' independent measurements indisputably show that

---

[4] Gore's INTERING Vascular Grafts consists of those vascular grafts that contain internally supported rings. This includes the INTERING Standard Walled, INTERING Standard Walled Stretch and INTERING Thin Walled Stretch Vascular Grafts.

the average indernodal distance for INTERING Vascular Grafts are well within the 6 to 200 micron range of the asserted claims. (*See, e.g.,* PX 55 (INTERING product packaging denoting fibril length of 25 microns); PX 16, PX 1600; 11/08/07 Tr. at 787:10-790:8).) Plaintiffs are thus entitled to judgment as a matter of law regarding the infringement of claims 20-24 and 27 by Gore's INTERING Vascular Grafts.

F. **No Reasonable Jury Could Find That Gore's Patch Grafts Do Not Infringe Claims 20-24 And Claim 27 Of The Goldfarb Patent**

Gore's Patch Grafts are used to repair or augment blood vessels.[5] There can be no genuine dispute that the Patch Grafts are an artificial vascular prosthesis comprised of ePTFE which consists of a microstructure of nodes interconnected by fibrils. (*See* Section C, *supra.*) It is undisputed that the Patch Grafts consist of the same underlying ePTFE microstructure as the Standard Vascular Grafts and thus permit tissue ingrowth and have an internodal distance within the claimed range of 6 to 200 microns. (*See, e.g.,* PX 195.34 (FDA submission for ACUSEAL patch claiming: "The ePTFE component of the applicant device has a microstructure with fibril lengths averaging 16 microns or greater, which allows ample space for native issue ingrowth"); PX 195.82 ("luminal and adventitial ePTFE interstices were deeply infiltrated by fibrous connective tissue"); PX 16, PX 1600; 11/08/07 Tr. at 790:9-795:11).) Accordingly, no reasonable juror could find that the Patch Grafts do not have a node and fibril microstructure that "permits tissue ingrowth" and is within the claimed average internodal distances.

G. **No Reasonable Jury Could Find that Gore's Stent Grafts Do Not Infringe Claims 20-24, 27 of the Goldfarb Patent**

Plaintiffs assert claims 20-24 and 27 of the Goldfarb patent against Gore's EXCLUDER, TAG, VIABAHN and VIATORR stent grafts (the "Accused Stent Grafts"). The Accused Stent Grafts are used to repair, bypass or augment the flow of blood through a diseased portion of the vascular system. (PX 1363.1805; PX 1547.1062; PX 1548.7053; PX 1550.111.) Accordingly, there can be no dispute that each is an

---

[5] Gore's Patch Grafts include the ACUSEAL and Cardiavascular Patch Grafts.

"artificial vascular prosthesis" as construed by the Court. Nor is there any dispute that the Accused Stent Grafts are all comprised of ePTFE having a microstructure consisting of nodes interconnected by fibrils. As with the ePTFE graft and patch products, therefore, the only area of dispute between the parties concerns the tissue ingrowth and internodal distance claim elements.

Each of the Accused Stent Grafts consists of an ePTFE graft that includes various components, such as a metal stent and bonding tape.[6] (See, e.g., PX 1363.1816-.1817; PX 1550.111-.112.) Gore has repeatedly represented to the FDA that that ePTFE graft used in the Accused Stent Grafts has the same materials, microstructure and characteristics of the Standard Vascular Graft. (PX 1363.1820, PX 1547.2144; PX1547.2152; PX1548.7064.) As discussed previously, the node and fibril microstructure of the Standard Vascular Graft is one that permits tissue ingrowth. (See Section C.1. *supra*.) Indeed, Gore has expressly represented this fact to the FDA:

> *[T]he GORE-TEX® Vascular Grafts consist of a microstructure that is more open and facilitates tissue ingrowth and tissue attachment.* This type of microstructure has proven performance, as is demonstrated in millions of cardiovascular implants. Likewise, the original EXCLUDER endoprosthesis consists of the same microstructure that is used in the GORE-TEX® Vascular Grafts.

PX 1547.2144. Based on the microstructure of the ePTFE graft, therefore, Plaintiffs are entitled to judgment as a matter of law for the same reasons previously discussed. See Sections C-F, *supra*.

Plaintiffs have also put forward substantial evidence of *actual* tissue ingrowth into the Accused Stent Graft Products as reported to the FDA by Gore. (See, e.g., PX 1363.3128 (describing "endothelial cell migration through the ultrathin ePTFE graft"), PX 1548.7742 (describing a "fibroproliferative response" which appeared to

---

[6] All of the asserted claims are "comprising" claims. The Court, in adopting the Special Master's Report has construed this term to mean "including, but not limited to." Thus, Bard need only show that the ePTFE graft portion of the Accused Stent Grafts satisfies the claim limitations in order to establish infringement.

"progressively grow into the ePTFE component of the stent graft."); PX 1548.4805 (reporting "extensive tissue ingrowth into the interstices of the ePTFE material.").) This evidence definitively establishes that Gore's Accused Stent Grafts have a structure that permits tissue ingrowth. As Plaintiffs' experts, Drs. Anderson and Dolmatch testified, the scientific evidence of tissue ingrowth submitted by Gore to the FDA consists of fibroblasts and collagen and thus is "organized host tissue" in accordance with the Courts claim construction. (11/14/07 Trial Tr. at 1060:23-1061:21, 1066:8-1069:4; 11/16/07 Tr. at 1592:1-1594:11, 1596:19-25, 1602:6-21). This evidence remains unrebutted. There is accordingly no basis on which a reasonable jury could find that the Accused Stent Grafts lack a structure that permits tissue ingrowth.

The undisputed evidence further establishes that the indernodal distance of the ePTFE grafts used in the Accused Stent Grafts falls well within the claimed ranges. Again, Gore has submitted numerous studies to the FDA characterizing the average internodal distance of the Accused Stent Grafts as being well within the claimed ranges of the Goldfarb patent. (See PX 1363.2064-.2067 (average fibril length of approximately 37 microns for VIABAHN), PX 1382.170.-.172 (average fibril length of approximately 25 microns for VIATORR), PX 1547.4877-.4880 (minimum fibril length requirement of 15 microns for EXCLUDER) PX 1550.395-.415 (average fibril length of between 19 and 28 microns for TAG).) Gore's employee/expert witness on the Accused Stent Grafts, Dr. Vonesh, confirmed that the measurements submitted by Gore to FDA were accurate and that the ePTFE grafts used in the Accused Stent Grafts had an "average" internodal distance within the claimed ranges. (11/29/07 Tr. at 2348:14-2348:24 and 2355:17-2355:23.) The measurements submitted by Gore to the FDA were further confirmed by Mr. Calcote's independent measurements. (PX 1600; 11/08/07 Tr. at 804:18-808:4, 809:18-812:05, 813:18-816:10, 820:9-821:10.) The undisputed evidence thus shows that all elements of claims 20-24 and 27 are literally present in the Accused Stent Grafts and judgment as a matter of law on infringement should be granted accordingly.

H. **No Reasonable Jury Could Conclude That Gore's ePTFE Grafts Do Not Infringe Claims 25 and 26 Of The Goldfarb Patent**

Claims 25 and 26 of the Goldfarb patent both claim a prosthetic vascular graft made from ePTFE with certain internodal distance, wall thickness and density limitations. In particular, claim 25 of the Goldfarb patent requires a wall thickness greater than about 0.2 millimeters and less than about 0.8 millimeters, while claim 26 contains the additional requirement of an average density in the range of between about 0.2 and 0.5 grams per milliliter. Mr. Calcote's measurements – which were made using the same testing methodology as that used by Gore when the accused products are measured in the "final" commercial form for approval by the FDA – along with Gore's batch lot test data, conclusively establish that these wall thickness and density limitations are met in a number of Gore's Standard, Stretch, PROPATEN and INTERING Vascular Grafts as well as its Patch Grafts. (PX 16; PX 1600; 11/08/07 Tr. at 772:6-776:2.) For the same reasons noted previously, therefore, Plaintiffs are entitled to judgment as a matter of law with respect to those products that fall within the claimed ranges.

I. **No Reasonable Jury Could Find That Gore Does Not Induce Infringement Of Its Stretch Vascular Grafts**

Gore's Stretch, PROPATEN and INTERING Vascular Grafts are packaged in compressed form. None of these products, however, are designed or intended to be implanted into a patient in this compressed form. Rather, Gore expressly instructs the physicians who use its stretch products to ensure that the entire length of graft is stretched *before* implantation to ensure proper functionality of the device. (*See, e.g,* PX 374 at 3, 5 (instructing physicians to "pull the graft taut" and to "apply moderate tension to the entire length of the GORE-TEX Stretch Vascular Graft in order to remove the extensibility").) This is to ensure that the graft is stretched to the appropriate length to have a structure that permits tissue ingrowth prior to implantation in a patient. (*See, e.g.,* 11/08/07 Trial Tr. at 777:14-21, 779:19-781:13.) Once properly tensioned, all of the Stretch, PROPATEN and INTERING Vascular Grafts have an average internodal distance falling within the claimed ranges of the Goldfarb patent. (PX 16; PX 1600) This is the average

internodal distance that Gore reports to the FDA and marks on its product packaging. (*See, e.g.*, PX 55; PX 430.68; PX 428.93; PX 480.31.) As noted previously, all of these products literally infringe the asserted claims of the Goldfarb patent when tensioned. Accordingly, as these products are only intended to be used after being tensioned, and Gore expressly instructions physicians to tension its stretch grafts before use, no reasonable jury could find that Gore did not knowingly induce the direct infringement of its customers. *See Moba, B.V. v. Diamond Automation, Inc.*, 325 F.3d 1306, 1318 (Fed. Cir. 2003).

### III.   CONCLUSION

WHEREFORE Bard respectfully requests that the Court (i) grant its motion for judgment as a matter of law that the Accused Products infringe the '135 patent,[7] and (ii) grant any other relief the Court deems just.

December 5, 2007

> Bard Peripheral Vascular, Inc.,
> David Goldfarb, M.D.
> & C. R. Bard, Inc.
> By their attorneys,
>
> By: s/ Andrew Federhar
>
> **FENNEMORE CRAIG P.C.**
> ANDREW M. FEDERHAR
> 3003 North Central Avenue, Suite 2600
> Phoenix, Arizona  85012-2913
> Phone (602) 916-5000
>
> **LATHAM & WATKINS, LLP**
> STEVEN C. CHERNY
> 885 Third Avenue
> New York, NY 10022
> Phone (212) 906-1200

---

[7] The accused products literally infringe the asserted claims of the Goldfarb Patent. In addition, because they are all vascular prostheses comprising of ePTFE they also perform "substantially the same function, in substantially the same way, to achieve substantially the same result" as the invention disclosed in the Goldfarb patent and thus infringe under the doctrine of equivalents. *Warner-Jenkinson Co. v. Hilton Davis Chem. Co.*, 520 U.S. 17, 35 (1997).

```
 1                                              MAXIMILIAN A. GRANT
                                                555 Eleventh Street, N.W.
 2                                              Washington, DC 20004
                                                Phone (202) 637-2200
 3
 4
 5
 6
 7
 8
 9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28
```

# CERTIFICATE OF SERVICE

The undersigned hereby certifies that he caused a true and correct copy of the foregoing PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING INFRINGEMENT to be served by **hand** on the following:

> Brett L. Dunkelman
> Osborn Maledon, P.A.
> 2929 North Central Avenue, Suite 2100
> Phoenix, Arizona 85012-2791

on this 5th day of December, 2007.

Plaintiffs

By: s/ Andrew Federhar
One of its attorneys