1

**FENNEMORE CRAIG P.C.**
3003 NORTH CENTRAL AVENUE, SUITE 2600

2

PHOENIX, ARIZONA  85012-2913
PHONE (602) 916-5000

3

ANDREW M. FEDERHAR (#006567)

4

**LATHAM & WATKINS LLP**

5

885 THIRD AVENUE
NEW YORK, NEW YORK 10022

6

STEVEN C. CHERNY

7

555 ELEVENTH STREET, N.W.
WASHINGTON, DC 20004

8

MAXIMILIAN A. GRANT

9

10

Attorneys for Plaintiffs/Counterdefendants Bard Peripheral Vascular,
Inc. and David Goldfarb, M.D. and Counterdefendant C.R. Bard, Inc.

11

12

**UNITED STATES DISTRICT COURT**

13

**DISTRICT OF ARIZONA**

14

Bard Peripheral Vascular, Inc., and
David Goldfarb, M.D.,

15

No. CV-03-0597-PHX-MHM

16

Plaintiffs,

17

v.

**PLAINTIFFS' MOTION FOR
JUDGMENT AS A MATTER OF
LAW REGARDING WILLFUL
INFRINGEMENT**

18

W.L. Gore & Associates, Inc.,

19

Defendant.

*(Assigned to the Hon. Mary H. Murguia)*

20

21

W.L. Gore & Associates, Inc.,

Counterclaimant,

22

23

v.

24

Bard Peripheral Vascular, Inc.,
David Goldfarb, M.D., and

25

C.R. Bard, Inc.

26

Counterdefendants.

27

28

No. CV-03-0597-PHX-MHM

1    I.      INTRODUCTION

2               The Goldfarb patent was filed on October 24, 1974 and issued on August

3    20, 2002.  For 18 of the 28 years that the Goldfarb patent was considered by the Patent

4    Office, Gore urged in an interference (1) that Gore – not Dr. Goldfarb – was the sole

5    owner of the subject matter of the Goldfarb patent, (2) that Gore's employee, Peter

6    Cooper – not Dr. Goldfarb – invented the subject matter of the patent, and (3) that its

7    subject matter was patentable over the prior art of record.  Gore lost the interference.  The

8    Patent Office and the Federal Circuit each held, not once but *twice*, that Dr. Goldfarb was

9    the first to invent and that Dr. Goldfarb was entitled to the patent.

10              Only after Gore decisively lost the interference did it change its tune.

11   Having spent 18 years claiming that it, and not Dr. Goldfarb, was the owner of the

12   claimed invention, Gore now asserts that it does not practice the invention at all.  Gore's

13   new litigation-inspired song is belied by its own admissions, including:

14
15          ➤ Gore's repeated representations to the FDA that the accused products have a
             structure that permits tissue ingrowth (supported by voluminous scientific
             evidence) and an "average fibril length" squarely within the claimed ranges;
16
17          ➤ The testimony of Gore's corporate representatives confirming that the
             statements in Gore's advertisements and FDA submissions regarding "tissue
             ingrowth" were identifying tissue ingrowth that establishes infringement;
18

19   Gore's continued manufacture and sale of the accused products in view of the

20   overwhelming evidence of Gore's infringement, and Gore's admissions thereof, means a

21   reasonable jury could reach only one verdict: that Gore's infringement was objectively

22   reckless and thus willful.

23              Gore nevertheless asserts that its conduct should be excused because it

24   obtained and allegedly relied on an opinion of counsel.  But no reasonable jury could find

25   that Gore's infringement was not reckless.  Gore's opinion of counsel – from the same

26   firm as Gore's long-standing trial counsel – does not even address Gore's infringement,

27   and contends only that the Goldfarb patent is invalid.  Most sophisticated parties, such as

28   Gore, obtain opinions of counsel from independent and objective opinion counsel – not a

1  lawyer from the same firm as an inherently biased litigation counsel with which the party

2  has a deep history.

3             Gore's opinion of counsel further relies on prior art that was already

4  considered by the Patent Office (over and over), and on arguments that are contradicted

5  by Gore's own course of conduct before the Patent Office.  Gore cannot show its conduct

6  was not objectively reckless when its only evidence of good faith is reliance on its own

7  advocates' arguments which are directly contradicted by the interference record and the

8  prosecution history of Gore's Cooper application.  Given Gore's intimate familiarity with

9  the interference record and the Cooper application, there is no justification for its

10  opinion/trial counsel's "head in the sand" failure to consider such facts.  No reasonable

11  jury could find that Gore's reliance on such an opinion of counsel is sufficient to insulate

12  it from the consequences of its objectively reckless conduct.

13             Plaintiffs are thus entitled to judgment as a matter of law with respect to

14  their claim of willful infringement.

15  **II.      ARGUMENT**

16        **A.      The Legal Standard For Judgment As A Matter of Law**

17             Judgment as a matter of law is appropriate if, "during a trial by jury a party

18  has been fully heard on an issue and there is no legally sufficient evidentiary basis for a

19  reasonable jury to find for that party on that issue ... ."  FED. R. CIV. P. 50(a).  The Court

20  should enter judgment as a matter of law "if the evidence and its inferences considered as

21  a whole and viewed in the light most favorable to the nonmoving party, can support only

22  one reasonable conclusion – that the moving party is entitled to judgment ... ."  *Mathis v.*

23  *Pacific Gas & Elec. Co.*, 75 F.3d 498, 501-02 (9th Cir. 1996) (reversing partial denial of

24  motion for judgment as a matter of law and affirming partial grant of motion for

25  judgment as a matter of law).  "If reasonable jurors could reach only one verdict, the

26  grant of JMOL is appropriate and must be affirmed."  *Viskase Corp. v. Am. Nat'l Can*

27  *Co.*, 261 F.3d 1316, 1325-26 (Fed. Cir. 2001) (affirming grant of judgment under Rule

28  50(a)(1) as a matter of law that the six patents in suit were valid).  Willfulness must be

1   established by clear and convincing evidence. *In re Seagate Tech., LLC*, 497 F.3d 1360,

2   1371 (Fed. Cir. 2007).

3       **B.      Plaintiffs Are Entitled To Judgment As A Matter Of Law On Willfulness**

4

5       Willful infringement occurs when "the infringer acted despite an

6   objectively high likelihood that its actions constituted infringement of a valid patent."

7   *Seagate*, 497 F.3d at 1371. "The state of mind of the accused infringer is not relevant to

8   this objective inquiry." *Id.* The patent holder also must show "that this objectively-

9   defined risk ... was either known or so obvious that it should have been known to the

10  accused infringer." *Id.* "The extent to which the infringer disregarded the property rights

11  of the patentee, the deliberateness of the tortious acts, or other manifestations of unethical

12  or injurious commercial conduct, may provide grounds for a finding of willful

13  infringement." *Golden Blount v. Robert H. Peterson Co.*, 438 F.3d 1354, 1368 (Fed. Cir.

14  2006) (affirming finding of willful infringement).

15      *Seagate* is not a bar to willful infringement; far from it. Since *Seagate* was

16  issued, courts have upheld findings by a jury or entered judgment as a matter of law of

17  willful infringement. *See, e.g., Z4 Tech. v. Microsoft Corp.*, -- F.3d --, 2007 WL

18  3407175, *2-*6 (Fed. Cir. Nov. 16, 2007) (affirming jury's verdict of willful

19  infringement and award of $115 million plus additional enhanced damages and attorneys

20  fees); *Martek Biosciences Corp. v. Nutrinova Inc.*, -- F. Supp. 2d --, 2007 WL 3181307,

21  *8, *16 (D. Del. Oct. 30, 2007) (Sleet, J.) (affirming jury determination of willful

22  infringement, granting patentee's motion for judgment as a matter of law of infringement,

23  and entering permanent injunction); *Ball Aerosol & Specialty Container, Inc. v. Ltd.*

24  *Brands, Inc.*, -- F. Supp. 2d --, 2007 WL 2570351, *10 (N.D. Ill. Sept. 4, 2007) (granting

25  summary judgment of willful infringement and holding that "no reasonable jury could

26  find other than that clear and convincing evidence exists that Limited Defendants were

27  willfully infringing ... .").

28      Instead, after *Seagate*, courts have found that:

1

2
3
4
5

> In determining willfulness, the primary consideration is whether the infringer, acting in good faith and upon due inquiry, had sound reason to believe that it had the right to act in the manner that was found to be infringing. Furthermore, the law requires not merely minimally tolerable behavior, but prudent, and ethical, legal and commercial actions.

6  *Martek Biosciences Corp.*, 2007 WL 3181307 at *8. Here, the only conclusion available

7  to a reasonable jury is that Gore infringed the Goldfarb patent and knew that its actions

8  were objectively reckless. Tempted by the size and profitability of the market for Dr.

9  Goldfarb's invention, and frustrated by its failed litigation strategy before the Patent

10  Office and the Federal Circuit, Gore consciously chose to ignore the risk, and recklessly

11  continued to sell its infringing products.

12
13

**1.      Gore's Continued Sale Of The Accused Products After The Goldfarb Patent Issued Was Objectively Reckless**

14  No reasonable jury could find that Gore was not objectively reckless with

15  respect to its continued sales of infringing products following the issuance of the

16  Goldfarb patent. *First*, it is undisputed that Gore was provided with notice of the

17  Goldfarb patent just prior to issuance and, notwithstanding that notice, Gore continued to

18  sell its ePTFE grafts, stent grafts and patches. (*See* Doc. No. 4 at ¶ 57 ("Just prior to

19  issuance of the Goldfarb patent, Bard called Gore's attention to the imminent issuance of

20  the patent.").) Moreover, the subject matter of the Goldfarb patent, and the scope of its

21  claims, was absolutely familiar to Gore. As the evidence demonstrated, Gore was

22  intimately familiar with the subject matter of the Goldfarb patent because Gore litigated

23  the ownership of that invention over an 18-year interference in which the Patent Office

24  and Federal Circuit determined, on *five* separate occasions, that Dr. Goldfarb, not Gore's

25  champion Peter Cooper, was the inventor of the claimed subject matter. (PX1, PX116-D;

26  11/7/07 Tr. at 481:13-482:3, 492:6-17, 495:15-19, 497:1-5; 11/8/07 Tr. at 708:5-23.)

27  Thus, even before the Goldfarb patent issued, Gore had complete knowledge of its

28

1  disclosure and its claims, and knew that they covered the precise structure that Gore

2  admitted is embodied in its infringing products.[1]

3         *Second*, the evidence of Gore's infringement is substantially constituted of

4  Gore's own admissions.  As Plaintiffs' Motion for Judgment as a Matter of Law on

5  Infringement (which Plaintiffs incorporate in full herein by reference), demonstrates, the

6  evidence in this case conclusively establishes that the accused products infringe the

7  asserted claims of Dr. Goldfarb's patent.  This evidence includes the testimony of Gore's

8  corporate representatives, Gore's voluminous and scientifically supported filings with the

9  FDA, and Gore's advertisements to doctors promoting the benefits of the infringing

10  products.  For example:

11

12    ➤ Gore has repeatedly told the FDA that its infringing products have the same structure as the "predicate GORE-TEX Vascular Grafts, and vascular grafts manufactured by Bard/IMPRA and by Atrium Medical Corporation" and even cited Dr. Goldfarb's work to the FDA as support for the healing response that could be expected from the accused products. (*See, e.g.,* PX412.38 (Goldfarb publication), PX414, PX419, PX475-76, PX519-20, PX1570-71; 11/9/07 Tr. at 931:1-12.)

13

14

15

16    ➤ Gore's corporate representatives have expressly conceded that explanted Gore grafts exhibit tissue ingrowth in the form of collagen and fibroblasts and Gore's advertising materials expressly promote the accused products as having an appropriate internodal distance for such tissue ingrowth. (PX22, PX139, PX345, PX1487; 11/9/07 Tr. at 981:21-984:18, 993:12-25, 995:1-5.)

17

18

19    ➤ Gore has repeatedly advised the FDA that the accused products, as commercially sold to the public, have an average fibril length or internodal distance in the 17 micron range, and that such structure permits tissue ingrowth and tissue attachment. (11/9/07 Tr. at 968:15-969:14.)

20

21

22

23  _____

24 [1] Gore's assertion that claim 20 of the Goldfarb patent was "added" in 2001 and thus Gore was not aware of its scope is false. (*See, e.g.,* 12/4/07 Tr. at 29994:21-2995:4.)

25  Contrary to Gore's arguments, claim 20 – which corresponds to the count of the interference – was not added in 2001 but was simply *amended* at that time.  That

26  amendment merely changed the upper and lower limits of the claimed average fibril length, or internodal distance and, in fact, narrowed the scope of the original count

27  which had no upper limit.  Claim 20 was thus nothing "new" to Gore, as it had known of the subject matter claimed in the original count since 1983

28

1    ➤ Gore has repeatedly advised the FDA, and submitted scientific evidence in
     support, that its products permit tissue ingrowth. (PX102, PX319, PX320;
2    11/14/07 Tr. at 1062:6-1069:3, 1082:4-1099:18, 1159:6-1160:15.)

3
            Nonetheless, Gore continued to sell its infringing vascular grafts.   No
4
reasonable jury could conclude that such sales were not made with the requisite
5
"objectively high likelihood that [Gore's] actions constituted infringement of a valid
6
patent." *Seagate*, 497 F.3d at 1371.
7
                    2.      **Gore's Reliance On The Opinion Of Counsel Is Objectively
8                           Unreasonable**

9           In response to the clear evidence of its willful infringement, Gore asserts

10   that its conduct is somehow absolved because it obtained an opinion of counsel.

11   (DX3841.)   But Gore's opinion of counsel does not reduce the "objectively high

12   likelihood" that Gore's actions infringed a valid patent and that Gore knew or should

13   have known of that risk.

14          The opinion of counsel was drafted by a partner at the same law firm as

15   Gore's current trial counsel (as well as for the last 20 years), three of whom are also,

16   unusually, direct recipients of the opinion. (*Id.*)   The opinion thus fails to pass the

17   threshold requirements of objectiveness and impartiality, coming from the same firm as

18   an inherently biased litigation counsel.   The opinion is itself also seriously flawed and

19   Gore's reliance on it under these circumstances was objectively reckless.   Limited solely

20   to the question of the alleged invalidity of the Goldfarb patent, the opinion rests on prior

21   art already considered and rejected by the Patent Office, and ignores Gore's own

22   arguments and contentions during the interference and prosecution of its own Cooper

23   application that are directly contrary.  For example:

24   ➤ It relies, among other things, on two pieces of prior art – Matsumoto et al. "A
     New Vascular Prosthesis for a Small Caliber Artery," Surgery 74(4): 519-523
25   (1973) and Soyer et al., "A New Venous Prosthesis," Surgery 72(6): 864-872
     (1972) – that are cited on the front of the Goldfarb patent.  The Patent Office
26   thus had a thorough opportunity to review the prior art cited in the opinion of
     counsel and issued the Goldfarb patent over that same prior art. (PX1, 11/7/07
27   Tr. at 498:14-500:19, 502:8-503:2; 11/8/07 Tr. at 654:20-655:7, 693:15-
     6989:9.)
28

1

2

3

4

➤ It ignores arguments that Gore made to the Patent Office that contradict the analysis and conclusions of the opinion. Thus, for example, in asserting that the Goldfarb patent is invalid in view of the Matsumoto article, the opinion of counsel ignores the very opposite arguments that Gore made to the Patent Office in its own Cooper application. (PX117.3798 ("Matsumoto et al. does not even mention fibril length, let alone teach the criticality of this parameter in connection with the promotion of tissue ingrowth.").)

5

6

7

8

➤ It ignores the evidence in the Cooper application, the interference record and in Gore's own possession demonstrating that the Matsumoto article – which used a graft supplied by Gore – was not enabled because Gore itself could not even determine the structure that was disclosed. (PX116.13174, PX116.13192, PX116.17736, PX117b, PX1183, DX3586, DX3588; 11/27/07 Tr. at 1957:1-1961:3.)

9

10

11

12

13

➤ Asserts, for the first time after an 18 year interference in which Gore sought sole ownership of the claimed invention, that Dr. Goldfarb and Peter Cooper are *joint inventors*. This claim is directly contrary to the repeated representations by Gore in the Cooper application and in the interference that Cooper was the *sole inventor* and "the various evaluators who implanted and harvested expanded PTFE grafts provided [by Gore] made no inventive contribution to the counts." (PX116.6971; *see also* PX117.2120, PX117.2130-.2132; 11/27/07 Tr. at 1942:12-20 and 1938:14-1941:4.)

14    The opinion's exclusive reliance on art that was previously considered by

15  the Patent Office, and on arguments that are refuted by the evidence and arguments Gore

16  presented in the interference and Cooper application renders it objectively unreliable.[2]

17  *See, e.g. Central Soya Co., Inc. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir.

18  1983) (observing that an "attorney's advice, based solely on the file history prior art, *does*

19  *not by itself*, raise an inference of good faith substantial enough" to defeat a

20  determination of willful infringement). In sum, Gore has presented no evidence from

21  which a reasonable jury could believe that it had a "sound reason" to make and sell the

22  accused products.[3] *See Martek Biosciences Corp.*, 2007 WL 3181307 at *8; *cf. Seagate*,

23

24
_____

25  [2]  Gore cannot rely on any defenses it created in response to this litigation. *Seagate*, 497

26  F.3d at 1374 ("[W]illfullness will depend on an infringer's prelitigation conduct.")

[3]  Gore's failure to exercise the 1984 option some 5 years after the Goldfarb patent

27  issued, and its baseless assertion that the option is in force until the last day of the Goldfarb patent, are further evidence of Gore's objectively reckless conduct.

28

1 | 497 F.3d at 1374 (observing that the opinions of Seagate's opinion counsel "appear to be

2 | of similarly marginal value.").

3 |        Plaintiffs are thus entitled to judgment as a matter of law that Gore's

4 | conduct was willful.

5 | **III.    CONCLUSION**

6 |        WHEREFORE Bard respectfully requests that the Court (i) grant its motion

7 | for judgment as a matter of law that Gore's infringement of the '135 patent was willful

8 | because it was both objectively reckless and in bad faith, and (ii) grant any other relief

9 | the Court deems just.

10 | December 5, 2007

                                   Bard Peripheral Vascular, Inc.,
                                   David Goldfarb, M.D.
                                   & C. R. Bard, Inc.
                                   By their attorneys,

                            By: s/ Andrew Federhar

                                 **FENNEMORE CRAIG P.C.**
                                 ANDREW M. FEDERHAR
                                 3003 North Central Avenue, Suite 2600
                                 Phoenix, Arizona  85012-2913
                                 Phone (602) 916-5000

                                 **LATHAM & WATKINS, LLP**
                                 STEVEN C. CHERNY
                                 885 Third Avenue
                                 New York, NY 10022
                                 Phone (212) 906-1200

                                 MAXIMILIAN A. GRANT
                                 555 Eleventh Street, N.W.
                                 Washington, DC 20004
                                 Phone (202) 637-2200

1

CERTIFICATE OF SERVICE

2

The undersigned hereby certifies that he caused a true and correct copy of

3

the foregoing  PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW

4

REGARDING WILLFUL INFRINGEMENT to be served by **hand** on the following:

5

6

Brett L. Dunkelman
Osborn Maledon, P.A.
2929 North Central Avenue, Suite 2100
Phoenix, Arizona 85012-2791

7

8

on this 5th day of December, 2007.

9

Plaintiffs

10

By: s/ Andrew Federhar
One of its attorneys

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28