William J. Maledon, No. 003670
Brett L. Dunkelman, No. 006740
Osborn Maledon, P.A.
2929 North Central Avenue
Suite 2100
Phoenix, Arizona 85012-2794
(602) 640-9000
wmaledon@omlaw.com
bdunkelman@omlaw.com

David H. Pfeffer
Arnold I. Rady
James W. Gould
Morgan & Finnegan, LLP
3 World Financial Center
New York, NY 10281-2101
(212) 415-8700
(212) 415-8701

John S. Campbell
W. L. Gore & Associates, Inc.
551 Paper Mill Road
Newark, Delaware 19714

Attorneys for W. L. Gore & Associates, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bard Peripheral Vascular, Inc., and David Goldfarb, M.D.,<br>Plaintiffs,<br>v.<br>W. L. Gore & Associates, Inc.,<br>Defendant.<br><br>W. L. Gore & Associates, Inc.,<br>Counterclaimant,<br>v.<br>Bard Peripheral Vascular, Inc., David Goldfarb, M.D., and C. R. Bard, Inc.,<br>Counterdefendants. | No.: CV-03-0597-PHX-MHM<br><br>**GORE'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING WILLFUL INFRINGEMENT** |

Plaintiffs must overcome an extremely high burden to receive a judgment as a matter of law ("JMOL") regarding willful infringement. Plaintiffs must show that there is no legally sufficient evidentiary basis for a reasonably jury to find for Gore on that issue. Gore submits such a showing has not, and indeed cannot, be made.

There is an unchallenged November 2002 opinion of counsel that the '135 Patent is invalid and the related trial testimony of Mr. Sininger expressing reliance on that opinion. There also is a vast evidentiary record supporting Gore's many non-infringement, invalidity, and unenforceability defenses,[1] including the testimony of Drs. Aretz, McMillin, and Wheeler. Gore clearly did not act with reckless disregard of any valid claim of the '135 Patent, and it is impossible for Plaintiffs meet their high burden for a JMOL on an issue which they must prove by clear and convincing evidence.

Plaintiffs' JMOL regarding willful infringement should be denied, and Gore's earlier JMOL of the same issue should be granted.

## I. The Extremely High Standard For A JMOL Of Willful Infringement.

Willful infringement is a question of fact and is often accompanied by questions of intent, belief, and credibility. *Amer. Med. Sys. v. Medical Eng'g Corp.*, 6 F.3d 1523, 1530-31 (Fed. Cir. 1993). As set forth in the Court's Jury Instruction No. 34, Plaintiffs have the burden to prove willful infringement by clear and convincing evidence, and must show, *inter alia*, that prior to the filing date of the Complaint (1) a reasonable person in the position of Gore, after learning of the '135 Patent, could not have reasonably believed that it did not infringe or reasonably believed the '135 Patent was invalid or unenforceable, and (2) if so, that Gore subjectively knew, or it was so obvious that Gore should have known, that its actions constituted

[1] The Court bifurcated the issue of unenforceability, which currently is being tried to the Court and was not presented to the Jury. During the bench trial, Gore will establish numerous acts of inequitable conduct, any one of which will render the '135 Patent unenforceable.

infringement of a valid and enforceable patent. *In re Seagate Tech., LLC*, 497 F.3d 1360, 1371 (Fed. Cir. 2007). Thus, the accused infringer's actions must be both objectively and subjectively reckless in considering the non-infringement, invalidity and unenforceability of the asserted patent.

The burden of proof on willful infringement lies with Plaintiffs. For such issues, the Court may grant Plaintiffs a JMOL "only in extreme cases." *Mentor H/S, Inc. v. Med. Device Alliance, Inc.*, 244 F.3d 1365, 1375 (Fed. Cir. 2001); see also 9A Charles Alan Wright & Arthur R. Miller, FEDERAL PRACTICE AND PROCEDURE § 2535, at 325 (2d ed. 1994) ("Courts often caution that granting a [JMOL] for the party bearing the burden of proof is reserved for extreme cases."). Moreover, "the court must draw all reasonable inferences in favor of [Gore], and it may not make credibility determinations or weigh the evidence." *Merch. Transaction Sys. v. Nelcela*, 2007 U.S. Dist. LEXIS 62364, *23-24 (D. Ariz. Aug. 22, 2007) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)).

## II. Gore Appropriately Relied On A Competent Legal Opinion That The '135 Patent Was Invalid.

Gore obtained a legal opinion of counsel[2] to assess the validity of the '135 Patent prior to the filing of the Complaint. [DX3841; 12/4/07 Tr. 3003:19-25]. The head of Gore's medical products division requested that assessment of the '135 Patent, including the validity of its claims, shortly after the patent issued in August 2002.[3] [12/4/07 Tr. 3004:15-22, 3021:11-23].

The resulting opinion is dated November 20, 2002 (before the Complaint was filed), and spans well over 200 pages with its attachments. [DX3841]. After studying

2 Plaintiffs have not challenged the opinion as inaccurate or incomplete. The qualifications of, and the investigation conducted by, the opinion's author also were not questioned at trial.

3 This assessment could only be done after the '135 Patent issued. Prior to issuance, it was held in secret by the Patent Office. [11/16/07 Trial 1702:1-5; 11/30/07 Tr. 2762:3-2763:20). Given that, even Plaintiffs' witness conceded that it was reasonable for Gore to ask questions about claims 20 to 27 of the '135 Patent only after the patent issued. [11/16/07 Tr. 1702:13-1703:1].

the '135 Patent, its prosecution history, and the prior art, the author (an experienced patent attorney) concluded that all claims of the '135 Patent are invalid for not just one, but for ***several grounds***.[4] [DX3841].

As Plaintiffs' attorney, Mr. Federhar, admitted at sidebar, this opinion evidences Gore's good faith belief that the '135 Patent is invalid. [12/4/07 Tr. 3005-06]. Indeed, possession of a favorable opinion of counsel is an "important" factor when considering willful infringement. *Electro Med. Sys., S.A. v. Cooper Life Scis.*, Inc., 34 F.3d 1048, 1056 (Fed. Cir. 1994); *Ortho Pharm. Corp. v. Smith*, 959 F.2d 936, 944 (Fed. Cir. 1992) (same). "Those cases where willful infringement is found despite the presence of an opinion of counsel generally involve situations where the opinion of counsel was either ignored or found to be incompetent." See *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 826 (Fed. Cir. 1992) (overturning a finding of willful infringement where defendant relied on two opinions of counsel, engaged in numerous conversations with counsel, and the defenses asserted in the litigation tracked those discussed in the opinions).

Mr. Sininger "absolutely" relied on that legal opinion in deciding to continue to manufacture Gore's products, notwithstanding the issuance of the '135 Patent. [12/4/07 Tr. 3007]. In Mr. Sininger's view, the opinion established that Gore could continue to manufacture and sell its life saving medical products as it had been doing since 1975, some 27 years before the '135 patent issued:[5]

> Q. And just so the record is clear, Mr. Sininger, based on the opinion from Gore's counsel that you have in front you, which is Exhibit 3841, did you believe that Gore had a good faith basis for continuing to manufacture and sell

---

4 The November 2002 opinion set forth three bases for concluding the claims of the '135 patent are invalid under 35 U.S.C. § 102 as anticipated, invalid under 35 U.S.C. § 103 as obvious, invalid under 35 U.S.C. § 112 for failure to comply with the written description requirement, and invalid under 35 U.S.C. § 112 for indefiniteness of the claims. Many of these defenses have been presented at trial, including anticipation of the claims by the Matsumoto SURGERY publication.

5 Prior to issuance, the '135 Patent application did not provide any enforceable patent rights. A patent cannot be infringed before it issues.

> Gore's vascular graft products pending the outcome of this litigation?
>
> A. Yes, absolutely. [12/4/07 Tr. 3008].

Nothing that Mr. Sininger heard during the trial contradicted his understanding of the November 2002 opinion of counsel. [12/4/07 Tr. 3056-57]. Throughout trial, Mr. Sininger has remained resolute in his view that the '135 Patent claims are invalid.

Plaintiffs' citation of *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573 (Fed. Cir. 1983), is inapt. First, it was decided long before the 2007 *Seagate* decision and relates to the now-defunct standard for willful infringement articulated by *Underwater Devices Inc. v. Morrison-Knudsen Co.*, 717 F.2d 1380, 1390 (Fed. Cir. 1983), which was expressly overruled in *Seagate*.

Second, it is readily distinguished on its facts. Unlike *Central Soya*, the November 2002 opinion relied upon by Gore was ***not*** based solely on art in the file history, see e.g., Dr. Goldfarb's ASU Seminar. Moreover, as the Federal Circuit noted, there was other evidence in *Central Soya* that supported the Court's determination, including for example: (1) the hiring away one of patentee's key employees, who may have disclosed important technical information to the accused infringer, (2) the ignoring of opinion counsel's advice regarding non-infringement, (3) the accused infringer's statement that it could proceed with patentee's former employee and patentee's manufacturing method because the accused infringer was "too good a customer" for the patentee to bring suit, (4) the accused infringer's creation of a slavish copy of the patented product, and (5) the accused infringer's failure to seek an updated legal opinion at about the time it began its infringing activities. *Central Soya*, 723 F.2d at 1575-76. There is no evidence of any such conduct by Gore in the present case.

Third and most importantly, the Federal Circuit did not hold in *Central Soya* that an opinion of counsel based on art before the PTO can never rebut a charge of willful infringement. Such a proposition is contrary to recent rulings where that is precisely what happened. For example, in *Innogenetics, N.V. v. Abbott Labs.*, 2007

U.S. Dist. LEXIS 193, *2 (W.D. Wisc. Jan. 3, 2007), the court granted a JMOL in favor of accused infringer after a jury verdict of willful infringement. The accused infringer had stipulated to infringement, and had defended at trial on the grounds of invalidity and unenforceability. *Id.* Despite the jury verdict, the court found that no reasonable jury could have concluded there was willful infringement because a legal opinion of invalidity had been obtained from outside counsel. *Id.* at *54-62. That opinion was based on art before the PTO. *Id.* at *49.

Instead, the question addressed by the *Central Soya* court was whether the district court's ruling that the above facts in their totality was clearly erroneous under the now-overturned *Underwater Devices* standard for willful infringement:

> "[T]he attorney's advice, based solely on file history prior art, ***does not by itself*** raise an inference of good faith substantial enough to convince us that the trial court's determination of willful infringement was clearly erroneous." *Central Soya*, 723 F.2d at 1577.

In an attempt to make up for its utter lack of evidence, Plaintiffs resort to distorting the law and the facts. For example, Plaintiffs suggest the November 2002 opinion was somehow incomplete because it did not specifically address non-infringement. Such a suggestion runs directly contrary to the Federal Circuit's decision in *Knorr-Bremse Systeme Fuer Nutzfahrzeuge GmbH v. Dana Corp.*, 383 F.3d 1337, 1345 (Fed. Cir. 2004), which made clear that no adverse inferences could be drawn from the failure to obtain an opinion of counsel and rejected prior case law holding that "to avoid liability for willful infringement ... an exculpatory opinion of counsel must address all potential infringement and invalidity defenses." At trial, Plaintiffs improperly suggested to the Jury that the fact that the November 2002 opinion does not address infringement of the '135 patent implies there is no non-infringement defense. [12/4/07 Tr. 3035]. This suggestion has found its way into Plaintiffs' JMOL motion. See p. 2 ("Gore's opinion of counsel… does not even address Gore's infringement….") Those arguments are manifestly improper under the Federal Circuit's decision in *Knorr-Bremse*, 383 F.3d at 1345-46.

It is axiomatic that if no adverse inference can be drawn from the failure to obtain legal advice at all, then certainly no adverse inference can be drawn from the failure to obtain legal advice as to every possible defense. Indeed, in *Knorr-Bremse* the Federal Circuit specifically ***rejected*** prior case law holding that "to avoid liability for willful infringement ... an exculpatory opinion of counsel must address all potential infringement and validity issues." *Id*. at 1345 (citing *Johns Hopkins Univ. v. Cellpro, Inc.*, 152 F.3d 1342, 1364 (Fed. Cir. 1998)).

Whether judged objectively or subjectively, Gore's behavior was reasonable. Gore properly investigated the '135 Patent when it issued in August 2002 and obtained a November 2002 opinion of counsel concluding that the '135 Patent claims are invalid. Gore relied on that opinion in continuing its longstanding business in life-saving medical products. Gore did not act with reckless disregard of the claims of the '135 Patent.

**III. Gore's Substantial Evidence Of Non-Infringement And Invalidity.**

Even assuming *arguendo* that the November 2002 opinion can be disregard (and it cannot), Gore's actions were not objectively reckless in light of the overwhelming evidence of invalidity and non-infringement. As to invalidity, Dr. Wheeler provided testimony establishing Gore's numerous invalidity defenses for anticipation, obviousness, failure to disclose best mode, lack of adequate written description and failure to proper name the true inventors. [11/28/07 Tr. 2120-2269].

Plaintiffs ask the Court to ignore this strong evidence of invalidity, and wrongly argue that a reasonable jury could reach only one verdict based on Plaintiffs' supposed evidence of infringement. As the Federal Circuit made clear in *Seagate*, 497 F.3d at 1371, "to establish willful infringement, a patentee must show by clear and convincing evidence that the infringer acted despite an objectively high likelihood that its actions constituted infringement of a ***valid patent***." It is not enough to argue that the allege infringement has been shown (and it has not as explained below). *Norian Corp. v. Stryker Corp.*, 363 F.3d 1321, 1332 (Fed. Cir. 2004). A finding of willful infringement requires consideration of the validity of the asserted claims (as

well as the unenforceability of the patent). Dr. Wheeler's testimony and the November 2002 opinion speak loudly and clearly to the invalidity of the '135 Patent, and demonstrate the multitude of invalidity defenses.

As to non-infringement, Drs. Aretz and McMillin provided several bases for the jury to find noninfringement of claims 20-27 of the '135 Patent.[6] As the Court knows, claims 20-24 and 27 have been construed to require such ***organized*** tissue ingrowth. [Special Master's Report (Docket No. 314) at ¶55]. Dr. Aretz explained that there is no ***organized*** host tissue ingrowh into Gore's surgical vascular graft and endovascular stent-graft products when implanted in humans or in animals. [11/29/07 Tr. 2374-2430]. Mr. Sininger testified that Dr. Aretz's opinions were reasonable. [12/4/07 Tr. 3036-3037].

Plaintiffs argue, however, that Gore's statements to the FDA and the testimony of two Gore employees somehow contradict Dr. Aretz's testimony. That is simply not true. Gore does not dispute that it gets some tissue ingrowth in its products. Dr. Aretz's testimony addressed whether such ingrowth is "organized," within the context of the '135 Patent as interpreted by the Court. It is undisputed that none of Gore's FDA documents use the term "organized" to describe any observed tissue ingrowth. Dr. Anderson's testimony and Plaintiffs' closing argument ask the Jury to ignore or read out the Court's requirement for "***organized***" tissue ingrowth. The FDA statements and Gore employee testimony is not at odds with Gore's noninfringement defense at trial.

Dr. McMillin provides a second, independent basis for a finding of non-infringement, which is not addressed by Plaintiffs. Each of claims 20-27 require that the ePTFE portion of the device have specified values for average distance between nodes, and were construed to require that that what is "typical" in one ePTFE portion must also be "typical" in other ePTFE portions. [Special Master's Report (Docket No.

---

[6] On the eve of trial, Plaintiffs withdrew their assertions that Gore's products infringed claims 1-6, 8-11, 14-19 of the '135 Patent, confirming Gore's view that it does not infringe any of those claims.

314) at ¶59]. Dr. McMillin showed that there are substantial differences in the average distance between nodes of Gore's surgical vascular grafts between the inside ePTFE surface and the outside ePTFE surface. [11/30/07 Tr. 2681-2740; DX3961].[7]

Were the Jury to accept even portions of the testimony of Drs. Aretz, McMillin and Wheeler (and the Court must accept all of it for present purposes), it could reasonably conclude that Gore does not infringe any valid claim of the '135 Patent.[8] This defeats Plaintiffs' willful infringement charge.

## CONCLUSION

The earlier proceedings in the Patent Office do not foreclose Gore from challenging the '135 Patent in court, much to Plaintiffs' dismay. Gore has properly defended itself in response to Plaintiffs' assertion of the '135 Patent with evidence that the '135 patent is invalid, not infringed and unenforceable. Gore cannot be a willful infringer solely for seeking its day in court, as Plaintiffs argue.

Gore's conduct was far from reckless – it was exemplary. Shortly after the '135 Patent issued, Gore sought an opinion of legal counsel to assess whether or not Gore could continue its business in light of that patent's issuance. That opinion concluded that the '135 Patent was not an obstacle because its claims are invalid. Gore reasonably relied on that opinion.

Moreover, there is overwhelming evidence that (1) the asserted claims of the '135 Patent are invalid, (2) Gore's products do not infringe the '135 Patent, and

---

7 Plaintiffs' trial proofs ignored the ePTFE outer reinforcing wrap. [11/8/07 Tr. 763-764; 11/29/07 Tr. 2368]. The trial testimony of Dr. Vonesh showed what happens when the outer reinforcing wrap is removed from the accused products: they burst under physiologic blood pressures and the inner ePTFE base tube leaks blood. [11/28/07 Tr. 2270-2287; 11/29/07 Tr. 2328-73].

8 Moreover, Gore did not copy any product of Plaintiffs covered by the patent. Quite the contrary, Gore has been properly selling surgical vascular grafts, vascular patches and endovascular stent-grafts for nearly three decades prior to issuance of the '135 Patent. Moreover, the evidence shows that Gore provided to Dr. Goldfarb the very graft that he allegedly used to conceive and reduce to practice the "invention" of the '135 Patent. [*See* Gore's JMOL Regarding Invalidity For Improper Inventorship Because Cooper And Goldfarb Are Joint Inventors, pp. 3-4].

(3) the '135 Patent was improperly procured from the PTO through a pattern of false and misleading statements. As such, Gore's conduct was and is eminently reasonable (both objectively reasonable and subjectively reasonable), and Gore respectfully requests that the Court

- deny Plaintiffs' motion for judgment as a matter of law that Gore's infringement of the '135 Patent was willful; and
- grant Gore's earlier motion for judgment as a matter of law regarding the same issue and dismiss Plaintiffs' willful infringement charge.[9]

DATED this 10th day of December, 2007

OSBORN MALEDON, P.A.

s/William J. Maledon
Brett L. Dunkelman
William J. Maledon
2929 North Central Avenue
Phoenix, Arizona 85012-2794

David H. Pfeffer
Arnold I. Rady
James W. Gould
Morgan & Finnegan, L.L.P.
3 World Financial Center
New York, New York 10281-2101

John S. Campbell
W. L. Gore & Associates, Inc.
551 Paper Mill Road
Newark, Delaware 19714

Attorneys for W. L. Gore & Associates, Inc.

---

9 Gore previously moved at the close of Plaintiffs' case-in-chief for judgment as a matter of law on the issue of willfulness. No reasonable jury could find Gore's conduct is objectively reckless from the evidence presented. See Docket No. 651 (incorporated by reference).

**CERTIFICATE OF SERVICE**

I hereby certify that on December 10, 2007, I electronically transmitted the attached document to the Clerk’ s Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

s/Deborah B. Dunn