William J. Maledon, No. 003670
Brett L. Dunkelman, No. 006740
Osborn Maledon, P.A.
2929 North Central Avenue
Suite 2100
Phoenix, Arizona 85012-2794
(602) 640-9000
wmaledon@omlaw.com
bdunkelman@omlaw.com

David H. Pfeffer
Arnold I. Rady
James W. Gould
Morgan & Finnegan, LLP
3 World Financial Center
New York, NY  10281-2101
(212) 415-8700
(212) 415-8701

John S. Campbell
W. L. Gore & Associates, Inc.
551 Paper Mill Road
Newark, Delaware  19714

Attorneys for W. L. Gore & Associates, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bard Peripheral Vascular, Inc., and David Goldfarb, M.D., <br><br>　　　　　　　Plaintiffs, <br>　　v. <br>W. L. Gore & Associates, Inc., <br>　　　　　　　Defendant. <br><br>W. L. Gore & Associates, Inc., <br>　　　　　　　Counterclaimant, <br>　　v. <br>Bard Peripheral Vascular, Inc., David Goldfarb, M.D., and C. R. Bard, Inc., <br>　　　　　　　Counterdefendants. | No.: CV-03-0597-PHX-MHM <br><br>**GORE'S OPPOSITION TO PLAINTIFFS' MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING INFRINGEMENT** |

Infringement is an issue upon which Plaintiffs have the burden of proof. *Seal-Flex, Inc. v. Athletic Track & Court Constr.*, 172 F.3d 836, 842 (Fed. Cir. 1999) (patentee must prove accused product contains "every limitation" of asserted claim). It is not enough to assert that various elements are "undisputed," or to allege that Plaintiffs view their evidence as "overwhelming." Rhetoric is not a substitute for evidence.

To be entitled to a judgment as a matter of law ("JMOL"), Plaintiffs must show that the trial record contains evidence that each of the accused products[1] satisfies each limitation of each of the asserted claims, and also that there is an absence of any contrary evidence from Gore. Fed.R.Civ.P. 50(a) (judgment as a matter of law may be granted only if "there is no legally sufficient evidentiary basis for a reasonable jury" to find for the nonmoving party). Plaintiffs' motion makes neither of these required showings.

First, Plaintiffs' motion is entirely missing claim charts or other evidence demonstrating that, for each of the accused products individually and for each of the asserted claims 20-27 individually, there is evidence in the trial record that the various claim limitations are met. That failure of proof alone is grounds to deny Plaintiffs' motion.

Second, although Plaintiffs acknowledge that Gore's experts, Drs. Aretz and McMillin, have provided testimony relevant to non-infringement, they argue such testimony is incorrect or allegedly is outweighed by Plaintiffs' evidence. Such arguments are wholly improper in the JMOL context. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000) (in entertaining a JMOL, "the court must draw all reasonable inferences in favor of the nonmoving party, and it may not make credibility determinations or weigh the evidence."). Moreover, Plaintiffs utterly ignore Dr. Vonesh's testimony regarding non-infringement.

---

[1] Plaintiffs have accused over 178 different products within 23 unique product families of infringing claims 20-27 of the '135 Patent.

-1-

Accordingly, Plaintiffs' motion for JMOL regarding infringement should be denied.

### I. Plaintiffs' Expert Failed To Provide Any Evidence For At Least 29 Accused Products, And Where Data Was Supplied For The Remaining Accused Products, It Cannot Show That Those Products Meet The "Average Distance Between Nodes" Limitations Of Claims 20-27.

Plaintiffs offered testimony from Mr. Calcote regarding the physical properties of the accused products, e.g., average distance between nodes. However, Mr. Calcote's testimony did not address all of the various accused product families and/or all of the specific products within those product families. And in the testing Mr. Calcote did perform, he did not follow the Court's claim construction.

Plaintiffs' exhibits 1600 and 1601 purport to be "Robert Calcote Testing Results – Summary" and a list of "Gore Product Configurations Tested And Equivalent Configurations," respectively. These are summaries of the products that Mr. Calcote's tested. Omitted from Mr. Calcote's exhibits 1600 and 1601 are at least 29 of the accused products[2] as summarized below:

| **Product Family** | **Specific Products** |
| --- | --- |
| PROPATEN™ | H06xxxx, HT05xxxx, HT06xxxx, HT06yyyxxx, HT07xxxx, HT08xxxx, HT08yyyxxx |
| Stretch GORE-TEX® Vascular Graft | SB14xx, SB16xx, SB18xx, SB20xx, SRT08yyyxxxL, ST03xxx, ST35xxx |
| GORE-TEX® Vascular Graft | V12xxxL, V14xxxL, R04yyyxxx, RT08yyyxxx, RT10yyyxxx |

---

[2]   In footnote 2 of Plaintiffs' motion, they identify "Diastat" as an accused "Standard Vascular Graft." However, DIASTAT® was not previously identified as an accused product in the Pretrial Order, and was not addressed in any of the expert reports submitted on behalf of Plaintiffs. DIASTAT® was not mentioned in Exhibits 1600 and 1601.

| **Product Family** | **Specific Products** |
|---|---|
| GORE-TEX® Cardiovascular Patch | 1702503806, 1702515006, 1705007506, 1705015006, 1710015006, 1802009004, 1803003004, 1803006004, 1905007508, 1910015008 |

For each of these products, there is an absence of any evidence that the limitations of claims 20-27 of the '135 Patent are met. The alleged similarity among accused products, or the alleged absence of rebuttal evidence from Gore, does not relieve Plaintiffs of that burden. See, e.g., *L & W, Inc. v. Shertech, Inc.*, 471 F.3d 1311, 1318 (Fed. Cir. 2006) ("[patentee] cannot simply 'assume' that all of [the accused] products are like the one [its expert] tested and thereby shift to [the accused infringer] the burden to show that is not the case."). It is Gore, not Plaintiffs, that is entitled to JMOL of noninfringement based on that failure of proof, because Mr. Calcote's testimony did not address these products.

Moreover, Gore has already moved for its own JMOL of noninfringement, because Mr. Calcote failed to present any evidence of the "average distance between nodes" limitations of claims 20-27 for the surgical vascular grafts and endovascular stent grafts. Mr. Calcote did not consider all of the ePTFE in the device, and ignored the ePTFE outer reinforcing tape wrap. *See* Gore's Motion for JMOL Regarding Plaintiffs' Failure to Prove that Gore's Accused Products Meet the Typicality Element of Claims 20-27 (Docket No. 734) ("Typicality JMOL Motion") at p. 2 (the entirety of which is incorporated by reference). Because Mr. Calcote failed to test all of the ePTFE portions of these products, his measurements cannot establish that what is typical in one ePTFE portion is typical in another, unmeasured ePTFE portion. Accordingly, Mr. Calcote did not address whether Gore surgical vascular grafts and endovascular stent grafts meet all the limitations of claims 20-27.

## II. Plaintiffs' Experts Failed To Provide Evidence That Gore's Accused Products Meet The "Which Permits Tissue Ingrowth" Limitation Of Claims 20-24, And 27.

Plaintiffs also offered testimony from Drs. Anderson, Becker and Dolmatch regarding the "which permits tissue ingrowth" limitation of claims 20-24 and 27. That evidence, like the evidence of Mr. Calcote, is deficient.

Dr. Anderson testified in Plaintiffs' case in chief about 12 glass histology slides allegedly depicting Gore's accused surgical vascular grafts, but he couldn't identify which of the Gore accused products were depicted. [11/14/07 Tr. 1139:17-21, 1140:16-1141:3]. Then, in Plaintiffs' rebuttal case, Dr. Anderson returned to give opinions regarding his review of certain histology slides maintained by Gore (DX3840) and offered into evidence certain pictures that Dr. Anderson allegedly took of these slides (PX1572A). However, Dr. Anderson failed to tie any of these pictures – not a single one – to any of the accused products, or to set out which products were depicted in the Gore histology slides that he reviewed. [12/4/07 Tr. 3072:3-3076:17]. As a consequence, even if Dr. Anderson's pictures show organized host tissue growth into the pores (and they certainly do not), the record is devoid of a proper nexus between Dr. Anderson's pictures and specific accused products. Infringement must be shown product-by-product.

Drs. Becker and Dolmatch did not experimentally test even a single accused product. Dr. Becker's testimony was limited to a review of Gore's FDA filings for various products and several Gore advertisemetns. Despite combing through a mountain of paper, Dr. Becker was unable identify even a single instance where Gore told the FDA or stated in an advertisement that it achieved organized host tissue growth into the pores. [See, e.g., 11/9/07 Tr. 930:9-24, 933:3-8, 934:7-11; 935:16-

21; PX 412.22].[3]  Dr. Dolmatch relies on the same FDA files, the testimony of Ms. Boothe and Mr. Emmanual about tissue ingrowth generally, and a research article that he published. [11/15/07 Tr. 1516:9-17].  None of that speaks to the proper issue – whether the tissue ingrowth that may exist is in fact *organized*.  The research article didn't involve a wrapped ePTFE product, such as all of the accused surgical vascular grafts and endovascular stent-grafts, and Dr. Dolmatch couldn't tie that article to any of those accused products. [11/16/07 Tr. 1629:23-1630:18].  Moreover, Dr. Dolmatch candidly admitted that he was not qualified to offer such expert testimony. [11/16/07 Tr. 1620:15-19].

Plaintiffs' experts failed to establish that each of the accused products satisfies the requirement that the ePTFE "must allow host tissue to growth into the pores" as required by claims 20-24 and 27.

### III. Gore Presented Expert Testimony That Establishes The "Average Distance Between Nodes" Limitations Of Claims 20-27 And The "Which Permits Tissue Ingrowth" Limitation Of Claims 20-24 and 27 Are Not Met, Thereby Preventing JMOL for Plaintiffs.

Gore presented the testimony of several expert witnesses in support of non-infringement.  That testimony must be credited and cannot be disbelieved in a JMOL context. *Reeves*, 530 U.S. at 150.  This evidence is a further ground for rejecting Plaintiffs' request for JMOL of infringement.

For example, the testimony of Gore's expert, Dr. McMillin, addressed the "average distance between nodes" limitations of claims 20-27 of the '135 Patent. Dr. McMillin measured the average distance between nodes of the inside surface of the products as sold (lumenal surface of the base tube) and also, unlike Mr. Calcote,

---

[3] Nothing is proved by Dr. Becker's testimony alleging that Gore represented to the FDA that subsequent products functioned in dog testing like the preamendment devices (i.e., grafts sold prior to a change in the medical device regulations in 1976).  There is no evidence to establish the "tissue response" of Gore's preamendment devices, and more particularly, whether these devices achieved "organized" host tissue growth into the pores.  Even if Dr. Becker's testimony is accepted, at best it shows parity of tissue response, but does not show what that tissue response is.

tested the outer surface (the wrap).  These numbers are very different.  [See, e.g., DX3955 (for Gore product V10040L reporting 14 microns on the inner surface and 72 microns on the outer wrap)].  Those measurements show that what is typical in one portion is not typical in other portions. That evidence establishes that the "average distance between nodes" limitations of claims 20-27 are not met.  See Gore's Typicality JMOL Motion at p. 3.  In light of Dr. McMillin's testimony, there is a bona fide dispute as to whether Gore's accused products satisfy the "average distance between nodes" limitations of claims 20-27.[4]

Dr. McMillin's methodology was crafted specifically to address the questions presented by the Court's construction of the '135 Patent claims.  Plaintiffs have not argued that Dr. McMillin's methodology is inconsistent with the Court's claim construction or challenged the accuracy of his measurements or pictures.

Instead, Plaintiffs argue that Gore's quality control testing is performed differently (it only measures the fibril length on the inside surface of the products), and this somehow allows one to ignore Dr. McMillin's testimony.  Plaintiffs also attack Dr. McMillin's data as allegedly being inconsistent with the measurements Gore provided to the FDA (which also are limited to measurements of the inside surface).

These arguments are wrong on the facts.  Solely taking measurements along the inside surface would *not* address whether or not what is typical at the inside surface is typical of other ePTFE portions of the products.  To address that question

---

[4]  Dr. McMillin also took issue with Mr. Calcote's wall thickness and density measurements.  Among the accused Gore surgical vascular grafts tested by Dr. McMillin, 88% had density values outside of the range required by claim 26. [DX3962].  Likewise, Mr. Calcote's wall thickness measurements showed that 26% of the Gore surgical vascular grafts had wall thicknesses outside the range required by claim 25.  A reasonable jury could find that Gore's grafts do not infringe these claims based on such measurements.

(as Dr. McMillin did and as Mr. Calcote did not)[5] requires an evaluation of all of the ePTFE portions of the accused products.

Moreover, Dr. Vonesh's unrebutted expert testimony establishes that the outer reinforcing wrap cannot be ignored. Dr. Vonesh shows that, if the ePTFE outer reinforcing wrap is removed from Gore's surgical vascular grafts and endovascular grafts, the remaining ePTFE "base tubes" burst at physiologic pressures and also do not prevent transmural blood flow. [11/29/07 Tr. 2328:22-2332:15, 2333:9-2335:3; DX3449]. This evidence shows that Gore's ePTFE "base tubes" without the ePTFE outer reinforcing wrap are not "artificial vascular prostheses" or "prosthetic vascular grafts" as required by claims 20-27, because they cannot function for that purpose.

A further dispute preventing the grant of JMOL to Plaintiffs relates to the requirement in claims 20-24 and 27 that the ePTFE structure "must allow *organized* host tissue" ingrowth. [Special Master's Report (Docket No. 314) at ¶55 (emphasis added)]. As Plaintiffs know well (and even quoted a statement by Gore's counsel to this effect in their brief), (1) Gore does not dispute that its products get some tissue ingrowth, but (2) Gore does dispute whether that ingrowth is "organized" within the meaning of the '135 Patent. [11/14/07 Tr. 1100:12-15]. The terms "tissue" and "organized host tissue" have different meanings. [11/29/07 Tr. 2380:19-23]. Gore's expert, Dr. Aretz, testified that there is no organized host tissue growth into Gore's surgical vascular graft and endovascular stent-graft products when implanted in humans or in animals. [11/29/07 Tr. 2374:11-2430:13].

Dr. Aretz's testimony is not contrary to Gore's FDA statements. FDA approval for Gore's accused products did not require any specified level or degree of tissue ingrowth. [11/29/07 Tr. 2367:14-18]. Plaintiffs were unable to point to any statement in Gore's FDA files representing that these products achieve "organized"

---

[5] Unlike Dr. McMillin, Mr. Calcote never measured the average distance between nodes of the ePTFE outer wrap for any of the accused products. [11/9/07 Tr. 856:10-18].

tissue ingrowth, but instead pointed to statements that some sort of tissue ingrowth was seen.

Nor is Dr. Aretz's testimony at odds with the testimony of Ms. Boothe or Mr. Emmanual. Both Ms. Boothe and Mr. Emmanual were asked questions about the term "tissue ingrowth," but were not asked about organized host tissue growth into the pores. [See, e.g., 11/9/07 Tr. 981:21-982:20 and 994:23-994:15].

Further, Plaintiffs mischaracterize Dr. Aretz's testimony to argue that his expert opinion somehow is not trustworthy because he has not seen "wave-like progression" of organized host tissue. This argument ignores Dr. Aretz's clear statement that his definition of "organized host tissue" requires "orderly, nonrandom, nonhaphazard" tissue and that "wave-front healing… is not a definition of organized tissue ingrowth." [11/29/07 Tr. 2419:13-16].[6] In any event, Plaintiffs' subjective views of the merit of Dr. Aretz's testimony cannot form the basis for a JMOL. *See Reeves*, 530 U.S. at 150 (must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the nonmovant).

The testimony of Gore's experts creates factual disputes about whether Gore's accused products, in fact, satisfy all of the limitations of claims 20-27 of the '135 Patent. This defeats Plaintiffs' motion for a JMOL on infringement.

### IV. Plaintiffs Failed To Establish A Prima Facie Case of Induced Infringement Regarding Gore's GORE-TEX® Stretch, PROPATEN™ And INTERING® Vascular Grafts.

Plaintiffs also are seeking a JMOL on their inducement charge against the GORE-TEX® Stretch, PROPATEN™ and INTERING® vascular grafts. To prevail on such an inducement charge, Plaintiffs must establish, *inter alia*, that there has been direct infringement by a person or entity other than Gore. *Minn. Mining & Mfg. Co. v. Chemque, Inc.*, 303 F.3d 1294, 1304-05 (Fed. Cir. 2002). "Hypothetical instances

---

[6] By contrast, Dr. Anderson admitted that his definition of "organized" embraces even random or haphazard tissue ingrowth. [11/14/07 Tr. 1144:9-12].

of direct infringement are insufficient to establish vicarious liability or indirect infringement." *ACCO Brands, Inc. v. ABA Locks Mfr. Co., Ltd.*, 501 F.3d 1307, 1313 (Fed. Cir. 2007).

For example, in *ACCO Brands*, the patentee offered the following evidence at trial in support of its inducement charge: the accused product itself, a set of instructions for that product, and expert testimony that it was the "natural and intuitive way to employ the device" in accord with its instructions. *Id*. at 1312. Although this evidence was successful before the district court (which denied the accused infringer's JMOL motion on the inducement charge), the Federal Circuit reversed because there was a lack of evidence of actual direct infringement:

> The record further shows that [the patentee] failed to point to specific instances of direct infringement. The sole witness at trial who testified to having used the lock in an infringing manner was [patentee's] expert, Dr. Dornfeld. However, the record contains no evidence of actual users having operated the lock in an infringing manner. [Patentee] proffered no witness testimony of actual Belkin key lock users, or surveys of Belkin's customers, that would indicate that a user, aside from the expert retained for this particular litigation, directly infringed the '989 patent.

*Id*. at 1313. Because the record lacked substantial evidence of direct infringement, it was error to deny the accused infringer's JMOL on the inducement charge. *Id*. at 1314.

With respect to Gore's GORE-TEX® Stretch and INTERING® Stretch vascular grafts, the facts here are very similar to those of *ACCO Brands*. Plaintiffs' motion relies on the instructions for use of those products, which purportedly instruct the surgeon to "pull the graft taut." [PX374]. Mr. Calcote allegedly measured these products in a taut state to show their average distance between nodes, wall thickness, etc., in a stretched state. However, Plaintiffs have not proven even a single instance of actual direct infringement, but instead rely only on hypothetical instances of direct infringement. There is, for example, no testimony from a surgeon saying that she has used the stretch grafts in accordance with Gore's instructions. Under *ACCO Brands*,

-9-

absent such evidence, Plaintiffs cannot establish inducement as a matter of law. *Id*. at 1313.

For Gore's PROPATEN™ vascular grafts, Plaintiffs don't even bother to point to any instructions for use, or to any evidence of how these products are actually used by surgeons. Nor did Mr. Calcote bother to measure any of the PROPATEN™ vascular grafts. There is a complete failure of proof on the inducement charge related to those products. *See* Gore's Motion for JMOL Regarding Plaintiffs' Claim that PROPATEN Infringes the '135 Patent (Docket No. 737).

## **CONCLUSION**

Notwithstanding Plaintiffs' view of the relative weight of the evidence, there clearly are several disputes regarding the sufficiency of their infringement "proofs" of that each of the accused products, in fact, meets the limitations of claims 20-27 of the '135 Patent. Whether it is the absence of evidence offered by Plaintiffs (i.e., failure to make a prima facie case), or the contrary evidence of Gore's experts which establish factual disputes, a JMOL of infringement in favor of Plaintiffs cannot be granted. Plaintiffs' motion should be denied.

DATED this 10th day of December, 2007

                          OSBORN MALEDON, P.A.

                          s/William J. Maledon
                          Brett L. Dunkelman
                          William J. Maledon
                          2929 North Central Avenue
                          Phoenix, Arizona 85012-2794

                          David H. Pfeffer
                          Arnold I. Rady
                          James W. Gould
                          Morgan & Finnegan, L.L.P.
                          3 World Financial Center
                          New York, New York 10281-2101

John S. Campbell
W. L. Gore & Associates, Inc.
551 Paper Mill Road
Newark, Delaware  19714

Attorneys for W. L. Gore & Associates, Inc.

**CERTIFICATE OF SERVICE**

    I hereby certify that on December 10, 2007, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

                                                                                            s/Susanne Wedemeyer

1851382