1

**FENNEMORE CRAIG P.C.**
3003 NORTH CENTRAL AVENUE, SUITE 2600
2
PHOENIX, ARIZONA 85012-2913
PHONE (602) 916-5000
3
ANDREW M. FEDERHAR (#006567)

4

**KIRKLAND & ELLIS LLP**
5
153 EAST 53rd STREET
NEW YORK, NEW YORK 10022
6
STEVEN C. CHERNY

7

**LATHAM & WATKINS LLP**
555 ELEVENTH STREET, N.W.
8
WASHINGTON, DC 20004
MAXIMILIAN A. GRANT
9

10
Attorneys for Plaintiffs/Counterdefendants Bard Peripheral Vascular, Inc. and David Goldfarb, M.D. and Counterdefendant C.R. Bard, Inc.

11

12

13

**UNITED STATES DISTRICT COURT**
**DISTRICT OF ARIZONA**

| | |
|---|---|
| 14 Bard Peripheral Vascular, Inc., and <br> 15 David Goldfarb, M.D., <br><br> 16     Plaintiffs, <br><br> 17     v. <br><br> 18 W.L. Gore & Associates, Inc., <br><br> 19     Defendant. <br> 20 <br> 21 W.L. Gore & Associates, Inc., <br><br> 22     Counterclaimant, <br><br> 23     v. <br><br> 24 Bard Peripheral Vascular, Inc., <br> 25 David Goldfarb, M.D., and <br> C.R. Bard, Inc. <br><br> 26     Counterdefendants. <br> 27 | No. CV-03-0597-PHX-MHM <br><br><br><br><br><br><br><br> **PLAINTIFFS' OPPOSITION TO GORE'S 50(b) MOTION FOR JUDGMENT AS A MATTER OF LAW REGARDING WILLFUL INFRINGEMENT AND RULE 59(a) MOTION FOR NEW TRIAL ON THE ISSUE** <br><br> *(Assigned to the Hon. Mary H. Murguia)* |

28

1

# TABLE OF CONTENTS

2

**Page**

3

4

TABLE OF AUTHORITIES................................................................................ii

5

I.          INTRODUCTION.............................................................................. 1

6

II.        ARGUMENT .................................................................................... 4

7

      A.    Relevant Legal Standards............................................................ 4

8

           1.     Gore's Renewed JMOL Motion Cannot Meet the
                "High Hurdle" Required for Judgment as a Matter of

9
                Law.................................................................................. 4

10

           2.     In the Absence of a Timely Objection, a Motion For a
                New Trial Based on Allegedly Improper Counsel

11
                Argument May be Granted Only if Those Statements
                Created a Miscarriage of Justice and Were Not

12
                Remedied by the Court....................................................... 5

13

      B.    The Court's Jury Instruction Stated the Proper Legal Standard
           For Willfulness ...................................................................... 6

14

15

      C.    There is Substantial Evidence Supporting the Jury's
           Willfulness Verdict ................................................................. 7

16

           1.     The Record Contains Overwhelming Evidence

17
                Supporting the Jury's Finding That Gore's
                Infringement Was Objectively Reckless............................ 7

18

           2.     Separately, the Record Also Contains Overwhelming

19
                 Evidence Supporting the Jury's Finding That Gore's
                Infringement Was in Bad Faith ....................................... 11

20

      D.    Plaintiffs Statements Were Not Objected To, Were Not

21
           Prejudicial, and Are Not Grounds For a New Trial ................................. 15

22

III.       CONCLUSION ................................................................................ 17

23

24

25

26

27

28

# TABLE OF AUTHORITIES

## CASES

*Acumed LLC v. Stryker Corp.*,
   483 F.3d 800 (Fed. Cir. 2007) ................................................................. 12

*America Hoist & Derrick Co. v. Sowa & Sons, Inc.*,
   725 F.2d 1350 (Fed. Cir. 1984) ................................................................ 10

*Bayramoglu v. Estelle*,
   806 F.2d 880 (9th Cir. 1986) ................................................................... 17

*Central Soya Co. v. Geo. A. Hormel & Co.*,
   723 F.2d 1573 (Fed. Cir. 1983) ................................................................ 14

*Comark Communications, Inc. v. Harris Corp.*,
   156 F.3d 1182 (Fed. Cir. 1998) ................................................................ 15

*Costa v. Desert Palace, Inc.*,
   299 F.3d 838 (9th Cir. 2002) ................................................................. 4, 5

*Gardco Manufacturing, Inc. v. Herst Lighting Co.*,
   820 F.2d 1209 (Fed. Cir. 1987) ................................................................ 16

*Golden Blount, Inc. v. Robert H. Peterson Co.*,
   438 F.3d 1354 (Fed. Cir. 2006) ................................................................ 12

*Hemmings v. Tidyman's Inc.*,
   285 F.3d 1174 (9th Cir. 2002) .............................................................. 6, 16

*In re Hughes Microcomputer Products, Inc. Patent Litigation*,
   982 F.2d 1527 (Fed. Cir. 1992) ................................................................ 12

*Jurgens v. CBK, Ltd.*,
   80 F.3d 1566 (Fed. Cir. 1996) .......................................................... 11, 12

*Liquid Dynamics Corp. v. Vaughan Co.*,
   2005 U.S. Dist. LEXIS 6162 (N.D. Ill. Mar. 22, 2005),
   *aff'd*, 449 F.3d 1209 (Fed. Cir. 2006) ..................................................... 14

*McClaran v. Plastic Industries, Inc*,
   97 F.3d 347 (9th Cir. 1996) ....................................................................... 5

*McDonough Power Equip., Inc. v. Greenwood*,
   464 U.S. 548 (1984) .................................................................................. 5

*McGinley v. Franklin Sports, Inc.*,
   262 F.3d 1339 (Fed. Cir. 2001) ................................................................ 10

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

*Mitchell v. Black & Decker (USA), Inc.,*
  6 Fed. Appx. 652 (9th Cir. 2001)............................................................................ 8, 16

*Molski v. M.J. Cable, Inc.,*
  481 F.3d 724 (9th Cir. 2007) ................................................................................... 5

*Pavao v. Pagay,*
  307 F.3d 915 (9th Cir. 2002) ................................................................................... 4

*Read Corp. v. Portec, Inc.,*
  970 F.2d 816 (Fed. Cir. 1992) ................................................................................. 14

*Richardson v. Marsh,*
  481 U.S. 200 (1987)................................................................................................ 17

*In re Seagate Technology, LLC,*
  497 F.3d 1360 (Fed. Cir. 2007) ................................................................... 6, 7, 8, 11

*Settlegoode v. Portland Public Schools,*
  371 F.3d 503 (9th Cir. 2004) ............................................................................ 6, 16

*Standard Oil Co. v. Perkins,*
  347 F.2d 379 (9th Cir. 1965) ................................................................................... 5

*Tak Sun Tan v. Runnels,*
  413 F.3d 1101 (9th Cir. 2005) ................................................................................. 7

*Transgo, Inc. v. Ajac Transmission Parts Corp.,*
  768 F.2d 1001 (9th Cir. 1985) ................................................................................. 5

*VNUS Medical Technologies, Inc. v. Diomed Holdings, Inc.,*
  527 F. Supp. 2d 1072 (N.D. Cal. 2007)................................................................... 12

*Voda v. Cordis Corp.,*
  506 F. Supp. 2d 868 (W.D. Okla. 2007)................................................................... 13

1    **I.    INTRODUCTION**

2              Over thirty years ago Gore stole Dr. Goldfarb's invention, filed a patent

3    application claiming that invention as its own, and nominated Peter Cooper as Gore's

4    "inventor."  Gore did so despite a wealth of documentary evidence, much of it from Peter

5    Cooper's and Gore's own files, showing that Dr. Goldfarb was the true inventor of the

6    ePTFE grafts claimed in the Cooper application..  Then, when Dr. Goldfarb sought to

7    patent *his* invention, Gore threw its substantial resources against him and tied his patent

8    up for the next 28 years during which time Gore repeatedly argued that Peter Cooper was

9    the sole inventor and that the claimed ePTFE grafts were novel and nonobvious.  Despite

10   the considerable efforts and the huge resources Gore devoted to improperly attempting to

11   patent Dr. Goldfarb's work, the PTO and the Federal Circuit confirmed, five separate

12   times, that Dr. Goldfarb was the true inventor.

13             The Goldfarb patent finally issued on August 20, 2002, by which time Gore

14   had sold untold billions of dollars worth of Dr. Goldfarb's invention without paying him

15   a cent.  But rather than take the commercially and ethically reasonable course and take a

16   license to the Goldfarb patent when approached by Bard, Gore decided it would continue

17   business as usual and keep practicing Dr. Goldfarb's invention as if the patent never

18   issued.[1] To support its flagrant disregard of Dr. Goldfarb's patent rights Gore performed

19   an abrupt about-face on its positions before the PTO and began to argue that it didn't

20   practice the inventions it sought to patent for decades, and that the patented invention was

21   invalid and no invention at all.  Sophisticated companies such as Gore do not spend

22   decades fighting for ownership of an invention that they do not practice or that is invalid.

23   And so the jury found, determining that Gore's conduct was objectively reckless and that

24   Gore was a willful infringer.  (Doc. No. 771 at 20.)

25

26   _____

     [1]   The evidence showed that Bard had granted Gore an option in 1984 to potentially take a
27   license to the Goldfarb patent at well-below market rates.  By rejecting this below-market
     offer, Gore demonstrated its intention to disregard Dr. Goldfarb's patent, as well as the
28   exclusive rights Dr. Goldfarb had granted Gore's major competitor, Bard.

1    The Court agreed with the jury, finding that "[t]he trial record in this case

2    provides sufficient evidence for the jury to have found willful infringement by clear and

3    convincing evidence … includ[ing] the extensive litigation history before the PTO – all

4    of which found Dr. Goldfarb to be the rightful inventor and patent holder – and that Gore

5    relied on the same references (the Soyer, Volder, and Matsumoto articles) to support its

6    invalidity defense that the PTO previously found not to invalidate Dr. Goldfarb's

7    invention."  (Doc. No. 833 at 4.)  Gore now seeks to overcome the Court's finding that

8    there was sufficient evidence supporting the jury's verdict by arguing that the jury, and

9    the Court, allegedly applied the wrong legal standard and confused the "objective

10   recklessness" standard with the subjective good faith inquiry.  (Doc. No. 842 at 1-2.)

11   Gore's after-the-fact argument cannot stand in the face of the Court's instructions to the

12   jury – which were agreed upon by Gore – that expressly stated that "[t]he state of mind of

13   Gore is not relevant to this [objective] inquiry."  (Doc. No. 769 at 60.)

14   Gore also neglects that the same **_evidence_** may be relevant to both the

15   objective recklessness and subjective good faith inquiries.  Here, there was substantial

16   evidence supporting the jury's finding of objective recklessness including:

17   ➢ The statements in Gore's FDA submission and advertisements that its products
     permit tissue ingrowth;

18   ➢ The testimony of Gore's corporate representatives that its products permit tissue
     ingrowth;

19

20   ➢ The statements in Gore's FDA submissions and its product packaging, as well as
     its own internal batch lot data, showing that its products have an average
     internodal distance within the claimed ranges;

21   ➢ The testimony of Gore's employee/expert witness that its stent grafts all have an
     ePTFE graft with the claimed internodal distance;

22

23   ➢ The extensive prosecution history of the Goldfarb patent in which the PTO
     repeatedly found the patent valid over the prior art now relied on by Gore, and the
     heightened deference due to the PTO's decisions with respect to that prior art;[2]

24

25   [2]  Contrary to Gore's assertion, the Court did not suggest "that Gore should have abandoned its
     invalidity arguments based on events that occurred in the PTO effectively negat[ing] the

26   'objectively unreasonable' legal standard for finding willfull infringement."  (Doc. No. 842
     at 2.)  The Court merely held (correctly) that Gore's reliance on the same prior art repeatedly

27   considered by the PTO was evidence supporting a finding of willful infringement.  That
     evidence is directly relevant to the objective recklessness of Gore's decision to infringe

28

1

2

➢ Gore's repeated arguments to the PTO that the prior art now relied on was not invalidating.

3

In view of this substantial evidence the jury was entitled to conclude that Gore's decision

4

to manufacture its infringing ePTFE grafts after the issuance of the Goldfarb patent was

5

objectively reckless and willful.  It does not detract from the objective recklessness of

Gore's actions that the evidence also suggests that Gore acted with subjective bad faith.

6

7

Gore's reliance on the self-serving testimony of Mr. Sininger, who

8

allegedly relied on an opinion of counsel, as irrefutable proof of Gore's subjective good

9

faith is, at this stage of the proceedings, irrelevant.  (Doc. No. 842 at 2.)  Indeed, the

10

determination of good faith is an inherently fact-based inquiry that the jury, after seeing

11

the demeanor and assessing the credibility of Mr. Sininger, was best able to determine in

12

light of all the evidence.  In particular, the jury heard substantial evidence showing that

13

Gore's infringement was objectively reckless ***and*** in bad faith, including (i) the numerous

14

Gore documents acknowledging Dr. Goldfarb as the inventor; (ii) Peter Cooper's

15

testimony about the reasons he stole Dr. Goldfarb's slides; (iii) the boxes of FDA

16

submissions undercutting Gore's alleged noninfringement positions; (iv) Gore's reliance

17

on the incredible and perjurious testimony of D. Dan Detton; and (v) Gore's sudden

18

about-face on decades of declaring the Goldfarb grafts new, novel, innovative and

19

lifesaving and its sudden embrace of the Matsumoto, Volder and Soyer articles as

20

allegedly invalidating even though the PTO had, often at Gore's behest, repeatedly

21

considered and rejected all those papers.  In light of all the evidence, the jury was entitled

22

to conclude that the opinion obtained from Gore's long-standing trial counsel that relied

23

on the same prior art already considered by the PTO but that wholly failed to consider the

24

contradictory evidence in Gore's possession ***was affirmative evidence of Gore's***

25

***recklessness*** and nothing more than a self-serving opinion prepared in anticipation of

26

27

which, notably, Gore has not reconsidered since the verdict was rendered by the jury or final judgment was entered by the Court.

28

litigation rather than evidence of objective care taken to determine that Gore could legally continue selling Dr. Goldfarb's grafts.

Finally, Gore's argument that it is entitled to a new trial based on allegedly misleading statements from Plaintiffs' counsel are meritless. Gore never objected to any of these statements at trial, and its belated attempt to create the illusion of prejudice by raising this issue for the first time in its post-trial briefing, bereft of any contemporaneous objection, cannot meet the high threshold required for a new trial. Regardless, the statements by Plaintiffs' counsel were entirely proper, and any alleged prejudice was cured by the Court's legally correct jury instructions, as stipulated by the parties. Gore's motion for a judgment as a matter of law or for a new trial must be denied in its entirety.[3]

## II.   ARGUMENT

### A.   Relevant Legal Standards

#### 1.   Gore's Renewed JMOL Motion Cannot Meet the "High Hurdle" Required for Judgment as a Matter of Law

A renewed motion for judgment as a matter of law is properly granted "if the evidence, construed in the light most favorable to the nonmoving party, permits only one reasonable conclusion, and that conclusion is contrary to the jury's verdict." *Pavao v. Pagay*, 307 F.3d 915, 918 (9th Cir. 2002). The "jury's verdict must be upheld if it is supported by substantial evidence, which is evidence adequate to support the jury's conclusion, even if it is also possible to draw a contrary conclusion." *Id.* Accordingly, a court "can overturn the jury's verdict and grant such a motion only if there is no legally sufficient basis for a reasonable jury to find for that party on that issue." *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 859 (9th Cir. 2002) (internal citation omitted). If there is "sufficient evidence before the jury on a particular issue, and if the jury instructions on

---

[3] Plaintiffs incorporate by reference the arguments made in their Opposition to Gore's prior Motion for JMOL Regarding Plaintiffs' Claim of Willful Infringement, (Doc. No. 656), and Motion for Judgment as a Matter of Law Regarding Willful Infringement. (Doc. No. 729.)

1  the issue were correct, then the jury's verdict must stand." *Transgo, Inc. v. Ajac*

2  *Transmission Parts Corp.*, 768 F.2d 1001, 1014 (9th Cir. 1985) (citation omitted).

3          In ruling on a motion for judgment as a matter of law, the Court must view

4  all evidence in the light most favorable to the nonmoving party, draw all reasonable

5  inferences in the favor of the non-mover, and disregard all evidence favorable to the

6  moving party that the jury is not required to believe. *Costa*, 299 F.3d at 859.  The court

7  "may not substitute [its] view of the evidence for that of the jury," nor can the court

8  "make credibility determinations nor weigh the evidence." *Id*.  The "high hurdle" of the

9  50(b) standard thus "recognizes that credibility, inferences, and factfinding are the

10  province of the jury, not this court." *Id.*

11          **2.**    **In the Absence of a Timely Objection, a Motion For a New Trial**

12               **Based on Allegedly Improper Counsel Argument May be Granted Only if Those Statements Created a Miscarriage of**

13               **Justice and Were Not Remedied by the Court**

14          The "trial court may grant a new trial *only if*[4] the verdict is contrary to the

15  clear weight of the evidence, is based upon false or perjurious evidence, or to prevent a

16  miscarriage of justice."  *Molski v. M.J. Cable, Inc.*, 481 F.3d 724, 729 (9th Cir. 2007)

17  (citation omitted)   When a motion for a new trial is based on allegedly improper

18  argument by counsel, a court should order a new trial only where it firmly believes that

19  "the jury was influenced by passion and prejudice in reaching its verdict." *Standard Oil*

20  *Co. v. Perkins*, 347 F.2d 379, 388 (9th Cir. 1965).  The court must "exercise judgment …

21  and ignore errors that do not affect the essential fairness of the trial." *McDonough Power*

22  *Equip., Inc. v. Greenwood*, 464 U.S. 548, 553 (1984).   "Improprieties in counsel's

23  arguments to the jury do not constitute reversible error unless they prejudice the

24  defendant *and* that prejudice has not been remedied by the trial judge." *McClaran v.*

25  *Plastic Indus., Inc,* 97 F.3d 347, 359-60 (9th Cir. 1996).

26

27  _____

28  [4]   All emphasis added unless otherwise noted.

1    Moreover, where as here the moving party failed to make a timely objection

2    to the allegedly improper argument, a new trial is warranted only if there is a "plain or

3    fundamental error" and it is "necessary to prevent a miscarriage of justice." *Settlegoode*

4    *v. Portland Public Sch.*, 371 F.3d 503, 517 (9th Cir. 2004).  This is a "higher threshold"

5    for the moving party to meet than would be the case if they had made a contemporaneous

6    objection. *Hemmings v. Tidyman's Inc.*, 285 F.3d 1174, 1193 (9th Cir. 2002) ("The

7    federal courts erect a 'high threshold' to claims of improper closing arguments in civil

8    cases raised for the first time after trial.") [5]

9    **B.    The Court's Jury Instruction Stated the Proper Legal Standard For Willfulness**

10    It is undisputed that the Court properly instructed the jury on the two-part

11    test for willful infringement.   (Doc. No. 769 at 60-61.)   This stipulated instruction

12    directed the jury to first determine whether "Gore acted despite an objectively high

13    likelihood that its actions constituted infringement of a valid and enforceable patent," an

14    inquiry to which "[t]he state of mind of Gore is not relevant … ." (*Id.* at 60.)  The jury

15    was then asked to determine whether "Gore actually knew, or that it was so obvious that

16    Gore should have known, that its actions constituted infringement of a valid and

17    enforceable patent."  (*Id.* at 61.)  The Court correctly set forth this two part test in its

18    denial of Gore's prior Rule 50 motion:

19    "To establish willful infringement, a patentee must show by clear and
20    convincing evidence that the infringer acted despite an objectively high
      likelihood that its actions constituted infringement of a valid patent."  In re
21    Seagate Tech., LLC, 497 F.3d 1360, 1368 (Fed. Cir. 2007).  Stated another
      way, "proof of willfulness … requires at least a showing of objective
22    recklessness."  Id.  If this objective standard is satisfied, then the plaintiffs
      must establish the existence of a separate, subjective element – the risk that
23    the defendant's conduct was objectively reckless "was either known or so
      obvious that it would have been known to the accused infringer."  Id.

24

25

---

26    [5] The rationale for this "higher threshold" is clear: it "permits the judge to examine the alleged
      prejudice and to admonish counsel or issue a curative instruction, if warranted. … The
27    second rationale stems from the court's concern that allowing a party to wait to raise the error
      until after the negative verdict encourages that party to sit silent in the fact of claimed error."
28    *Hemmings*, 285 F.3d at 1193 (alteration omitted).

(Doc. No. 833 at 3.)[6]

### C.   There is Substantial Evidence Supporting the Jury's Willfulness Verdict

#### 1.   The Record Contains Overwhelming Evidence Supporting the Jury's Finding That Gore's Infringement Was Objectively Reckless

Unable to point to any evidence on which the jury could have found that Gore's conduct was not objectively reckless – let alone evidence from which the only reasonable conclusion available to the jury was that Gore was not objectively reckless – Gore instead argues that the jury was somehow misled by Plaintiffs into incorrectly injecting Gore's subjective beliefs into the objective recklessness inquiry.  (Doc. No. 842 at 5-6.)  But Gore blithely ignores the fact that that the Court expressly instructed the jury to disregard Gore's state of mind in determining objective recklessness:

> To demonstrate such "reckless disregard," Plaintiffs must satisfy a two-part test.  The first part of the test is objective.  Plaintiffs must persuade you that Gore acted despite an objectively high likelihood that its actions constituted infringement of a valid and enforceable patent.  ***The state of mind of Gore is not relevant to this inquiry.***  You should focus on whether a reasonable person in the position of Gore, after learning of the patent, could reasonably believed that it did not infringe the patent or reasonably believed that the patent was invalid or unenforceable.  If a reasonable person in the position of Gore could not have held such a belief, then you need to consider the second part of the test.[7]

(Doc. No. 769 at 60.)   This instruction was not objected to by Gore, and indeed was submitted to the Court as an "agreed final instruction."  (Doc. No. 717.)   Juries are "presume[d] [to] follow the court's instructions absent extraordinary situations."  *Tak Sun*

---

6   Relying on a misrepresentation of *dicta* from *Seagate*, Gore argues that "Plaintiffs' failure to move for a preliminary injunction evidences substantial questions of infringement validity and enforceability that preclude a finding of willfulness."  (Doc. No. 842 at 3 n. 2.)   The relevant *dicta* in *Seagate* states only that failure to move for a preliminary injunction prevents a patentee from being "allowed to accrue enhanced damages ***based solely on the infringer's post-filing conduct.***"  497 F.3d at 1374.  Here, the jury's willfulness verdict – and Plaintiffs request for enhanced damages arising from that verdict – are based on the extensive evidence of Gore's pre-filing willful infringement.  It is thus not necessary to consider Gore's post-filing willful infringement.

7   All emphasis added unless otherwise noted.

1    *Tan v. Runnels*, 413 F.3d 1101, 1115 (9th Cir. 2005).  Accordingly, Gore's claim that the

2    jury improperly applied the wrong test for willfulness is meritless.[8]

3                Gore cursorily concludes that the jury could not have found objective

4    recklessness based on Gore's alleged "evidence of numerous well-founded defenses, *e.g.*,

5    invalidity for lack of novelty and non-obviousness and unenforceability for repeated acts

6    of inequitable conduct."[9]   (Doc. No. 842 at 1.)   Gore's self-serving, post-verdict,

7    contention that it allegedly presented "substantial" defenses – all of which were

8    unanimously rejected by the jury and the Court – is not a basis to overturn the jury's

9    verdict.   Indeed, the jury heard **all** of Gore's evidence, including (as the Court

10   recognized) "a substantial amount of evidence that related to inequitable conduct." (Doc.

11   No. 835 at 82 n. 9.)  Despite hearing all that evidence and Gore's related argument, the

12   jury nonetheless concluded that a reasonable person in Gore's position **could not** have

13   believed that the Goldfarb patent was not infringed or invalid.[10]    Gore fails to

14   demonstrate how the evidence leads to any other conclusion.

15               The jury's verdict of objective recklessness is supported by a mountain of

16   evidence, including the fact that Gore vigorously fought for ownership of Dr. Goldfarb's

17

---

18   [8]   Had Gore believed that any of Plaintiffs' arguments were contrary to the Courts' instructions
          it should have raised an objection at that time.  *Mitchell v. Black & Decker (USA), Inc.*, 6
19        Fed. Appx. 652, 653 (9th Cir. 2001) (party's "[f]ailure to object to any of these statements
          before the case went to the jury … waived his objections to them … .")
20
     [9]   Gore repeatedly argues that the objective recklessness inquiry must be based on all of Gore's
21        defenses, including those developed after being sued. (Doc. No. 842 at 11.)  This is now the
          **third** time that Gore has misrepresented the objective recklessness inquiry.  (*see* Doc. No.
22        561 at 2-5; Doc. No. 644 at 2.)  As the *en banc* Federal Circuit held in *Seagate*, a "willfulness
          claim asserted in the original complaint must necessarily be grounded **exclusively** in the
23        accused infringer's pre-filing conduct" and thus **"willfulness will depend on an infringer's
          prelitigation conduct."** 497 F.3d at 1374.  Consistent with this, the agreed upon willfulness
24        instruction informed the jury that "Plaintiffs must persuade you that it is highly probable that
          **prior to the filing date of the complaint**, Gore acted with reckless disregard for the claims of
25        the '135 patent."  (Doc. No. 769 at 60.)  Therefore, as the jury was correctly instructed,
          Gore's *post-hoc* trial defenses are not relevant to the objective recklessness inquiry.
26   [10]  There is no evidence that Gore's inequitable conduct defenses played any role in its pre-
          litigation conduct.  Indeed, Gore's opinion of counsel does not discuss this defense other than
27        to note that a separate opinion would be prepared.  (DX3841.)  That opinion was never
          produced.   Accordingly, because willfulness is based on the infringer's pre-litigation
28        conduct, Gore's inequitable conduct defense is irrelevant to the willfulness inquiry.

invention for 18 years in the interference, including two Federal Circuit appeals, only to claim after it (repeatedly) lost that it did not practice the very invention it so tenaciously fought to control.  In particular, Gore argued that it did not practice the Goldfarb patent because the accused products did not "permit[] tissue ingrowth" or "meet the average internodal distance" limitation of the claims.  Gore's position, however, was belied by the extensive evidence from Gore's own mouth showing that the accused products fell squarely with the asserted claims, including:

> The repeated statements in Gore's advertising materials – which federal law demands be truthful and accurate (11/09/07 Tr. at 958:14-960:13) – that Gore's vascular grafts permit tissue ingrowth.  (PX21; PX22; PX136; PX345.)

> The repeated statements in Gore's FDA submissions – which are likewise required to be truthful and accurate under federal law (11/09/07 Tr. at 964:15-965:17) – supported by voluminous scientific data showing that all of Gore's products have a structure that permits tissue ingrowth.  (PX112.26; PX137.8-15;  PX195.34,  82;  PX412.45;  PX413.37-39;  414.22,  33;  PX418.9-16; PX419.19; PX435.111-114; PX475.66; PX1363.1820, 3128; PX1547.2144, 2152, 7742; PX1548.4805, 7064.)

> The testimony of Gore's corporate representatives – confirmed by Gore's own expert Dr. Wheeler (11/28/07 Tr. at 2216:19-2218:9, 2220:7-20) – that Gore's vascular grafts permitted ingrowth of "organized host tissue" in the form of collagen and fibroblasts.  (11/09/07 Tr. at 981:15-984:18, 993:3-995:5.)

> The voluminous submissions to the FDA in which Gore repeatedly represented that the accused products have "average" internodal distances well within the claimed ranges.  (PX 137.22; PX112.25; PX195.34; PX412.10-11; PX413.36; PX418.23-24;  PX428.93;  PX430.68;  PX475.27;  PX476.27;  PX480.31; PX1363.2064-67; PX1382.170-72; PX1547.4877-80; PX1550.395-415.)

> Gore's internal batch lot test data and its product packing which report the fibril length, or internodal distance, of the accused products as being within the claimed range.  (PX16; PX23; PX40; PX55.)

> The testimony of Gore's employee/expert witness, Dr. Vonesh, admitting that each of the accused stent-grafts "*includes as a part of its PTFE structure an element that would meet that description* [i.e., an average internodal distance in the range of 15 to 30 microns.]" (11/29/07 Tr. at 2348:14-24.)

Tellingly, the only evidence that Gore offered to rebut this voluminous evidence was the testimony of Dr. Aretz, who offered an opinion based on a definition of "organized host tissue" that he had never seen in his 30-years of experience (11/29/07 Tr. at 2413:9-2415:6, 2418:10-2421:6, 2424:22-2426:7), as well as the testimony and measurements of Dr. McMillan, who "ignored" and failed to use the techniques recognized by Gore, the FDA and the relevant industry standards as appropriate for

1    measuring internodal distances.     (11/30/07 Tr. at 2722:25-2725:3, 2727:22-2729:6,

2    2733:9-24.)  Dr. McMillan also failed to provide any testimony or evidence regarding the

3    infringing stent grafts and, instead, testified that he billed Gore over $175,000 for three

4    expert reports on the stent grafts that Gore's counsel removed at the last minute.[11]

5    (11/30/07 Tr. at 2715:15-2719:24.)  In view of this mountain of evidence, the jury was

6    entitled to conclude that Gore's infringement was objectively reckless.

7              The jury further heard substantial evidence demonstrating that Gore's

8    invalidity defenses were objectively reckless.  Indeed, listed on the face of the Goldfarb

9    patent are all three of the prior art references relied on by Gore (the Soyer, Volder and

10   Matsumoto articles), demonstrating that each reference was expressly considered and

11   rejected (over and over) as invalidating prior art by the PTO.[12]  (PX1; *see also* 11/07/07

12   Tr. at 498:14-500:19, 502:8-503:2; 11/08/07 Tr. at 693:15-698:9, 654:20-655:7.)  Given

13   the "added burden of overcoming the deference that is due to a qualified government

14   agency presumed to have done its job … whose duty it is to issue only valid patents," the

15   jury was free to find Gore's conduct objectively reckless on this basis alone.  *Am. Hoist*

16   *& Derrick Co. v. Sowa & Sons, Inc.*, 725 F.2d 1350, 1359 (Fed. Cir. 1984); *accord*

17   *McGinley v. Franklin Sports, Inc.*, 262 F.3d 1339, 1353 (Fed. Cir. 2001) (reversing

18   JMOL on obviousness when allegedly invalidating references were before the PTO).  In

19   addition, the jury also heard that the invalidity defenses being advanced by Gore were

20   directly contrary to, and inconsistent with, the positions Gore took before the PTO,

21   including:

22        ➢  Gore's arguments to the PTO that the Volder article was "irrelevant" to the
           claimed invention, (PX117.2114), and does not disclose a device for "replacing

23

---

24   [11]  Gore tried to explain its actions by asserting that Dr. McMillan's measurements were not
         needed in view of Dr. Vonesh's testimony.  Yet Dr. Vonesh admitted that he was not able to

25   rebut any of the evidence provided by Mr. Calcote on the internodal distance of the
         infringing stent grafts.  (11/29/07 Tr. at 2346:5-2347:14.)

26   [12]  As the Court also found, Gore's written description defense was similarly previously
         expressly considered and rejected by the PTO.  (Doc. No. 833 at 6 ("Gore appears to ignore

27   the fact that these same issues [i.e., whether wall thickness was critical] were rejected by the
         Patent Office."))

28

body parts by expanded porous PTFE having fibrils exceeding a critical minimum of 5 microns in length." (PX117.90);

➤ Gore's arguments to the PTO that the use of the term "pore size" in the Volder article is not synonymous with fibril length. (PX116.3890, PX117.2134);

➤ Gore's arguments to the PTO that the Matsumoto article was not enabling. (PX116.3825-26, 3827, 3828-29; PX117.155);

➤ Gore's arguments to the PTO that the other doctors working with its ePTFE tubes – including Drs. Volder and Norton – did not provide any inventive contribution to the claimed ePTFE grafts. (PX116.6971; PX117.2111)

In view of Gore's repeated arguments to the PTO that the invention was novel in light of the prior art, the jury was entitled to conclude that it was objectively reckless for Gore to argue that this same prior art is now somehow invalidating.[13]   The jury's verdict is thus supported by the clear weight evidence and cannot be overturned.

### 2.   Separately, the Record Also Contains Overwhelming Evidence Supporting the Jury's Finding That Gore's Infringement Was in Bad Faith

Gore seeks to insulate itself from its objectively reckless conduct by arguing that Mr. Sininger's testimony is "more than sufficient" to establish "Gore's subjective good faith … by its reliance upon the unchallenged opinion from qualified, outside counsel on numerous bases for the invalidity of the '135 patent." (Doc. No. 842 at 2.)   But the jury, not Gore, gets to assess the weight and value of Mr. Sininger's testimony.   The jury was expressly asked to consider "[w]hether Gore relied on a legal opinion that was well-supported and believable and that advised Gore (1) that the products did not infringe Plaintiffs' patent or (2) that the patent was invalid." (Doc. No. 769 at 61.)   This was accordingly a ***question of fact*** for the jury, and the jury's verdict necessarily reflects the fact that it "reject[ed Gore's] contention that it relied in good faith on the opinion of counsel." *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996).

Indeed, "an infringer's reliance on favorable advice of counsel … is not dispositive of the willfulness inquiry." *Seagate*, 497 F.3d at 1369.   Rather:

---

[13]   Contrary to Gore's arguments, evidence of Gore's inconsistent positions does not go solely to the question of its subjective good faith, but is also relevant to the objective inquiry of whether "a reasonable person ***in the position of Gore*** could not have held such a belief [*i.e.*, that the patent  was invalid]." (Doc. No. 769 at 60.)

> [W]here one continues his infringing activity, and fails to investigate and determine, in good faith, that he possesses reasonable defenses to an accusation of patent infringement, the infringement is in bad faith. ***Such conduct occurs when an infringer merely copies a patented invention, or where he obtains incompetent, conclusory opinions of counsel only to use as a shield against a later charge of infringement, rather than in a good faith attempt to avoid infringing another's patent.***

*Jurgens*, 80 F.3d at 1571.  The existence of an opinion of counsel, therefore, is merely one factor and the jury is "free to disbelieve or weigh lightly evidence tending to show [an infringer's] reliance on the opinion letter and to place that evidence within the overall factual context of the case." *Acumed LLC v. Stryker Corp.*, 483 F.3d 800, 811 (Fed. Cir. 2007) (affirming judgment of willful infringement despite opinion letter).  Accordingly, a jury may find willful infringement where they find that a favorable opinion was merely a "protective device [rather] than a genuine effort to determine before infringing whether the patent was invalid." *In re Hughes Microcomputer Prods., Inc. Patent Litig.*, 982 F.2d 1527, 1544 (Fed. Cir. 1992).

Mr. Sininger's testimony on behalf of his employer cannot overcome the jury's verdict for mere "assertions that [the accused infringer] subjectively did not believe it was infringing are insufficient to rebut the inference of reckless conduct." *Golden Blount, Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354, 1370 (Fed. Cir. 2006); *accord VNUS Med. Techs., Inc. v. Diomed Holdings, Inc.*, 527 F. Supp. 2d 1072, 1075 (N.D. Cal. 2007) (rejecting "asserted reliance on the opinions of its counsel that such activities would not infringe" as sufficient to preclude willfulness)  Nor can Mr. Sininger's interested testimony automatically overcome the overwhelming evidence supporting the jury's finding that Gore's conduct was objectively reckless.

In the first place, the jury heard that Gore spent over two decades and untold millions of dollars in legal fees fighting for ownership of Dr. Goldfarb's invention – an invention that it argued was valid when it thought that it would wear Dr. Goldfarb down.  Yet at trial, Gore reversed its decades-long position, arguing that it was not practicing the invention, and that the invention was invalid.  In view of Gore's extensive conduct to the contrary before the PTO and the Federal Circuit, the jury was entitled to

1   (and did) conclude that Gore's position was not credible and "[in]consistent with the
2   standards of commerce for its industry."  (Doc. No. 769 at 61).

3           The jury further heard how Gore deliberately copied Dr. Goldfarb's
4   invention, including that (i) Dr. Goldfarb disclosed the "Goldfarb structure" to Gore
5   (11/06/07 Tr. at 377:5-83:20; 11/07/07 Tr. at 398:15-400:11; PX115.1062-67; PX115o);
6   (ii) after learning of the Goldfarb structure Gore secretly filed a patent application
7   containing a ***verbatim*** copy of a memo describing Dr. Goldfarb's research (11/07/07 Tr.
8   at 408:3-09:4, 430:12-25; PX115.925-30; PX115n; PX117.6-18); (iii) after filing its
9   patent application, Gore's selected "inventor", Peter Cooper, stole Dr. Goldfarb's slides
10  to learn what his purported invention was (PX116.115123-25; 11/07/077 Tr. at 424:2-
11  425:18; 11/08/07 Tr. at 691:8-92:2); and (iv) Gore obtained approval to market ***all*** of its
12  infringing products by representing to the FDA that its products are "substantially
13  equivalent" to Bard/IMPRA's grafts, and citing Dr. Goldfarb's publications as support.
14  (PX412.37 (citing Goldfarb publication); PX414.12; PX475.24; PX476.12; PX1570.1-2.)
15  The only reasonable conclusion available to the jury in view of this evidence was that
16  Gore "intentionally copied at least one of Plaintiffs' products covered by the patent" and
17  was a bad faith infringer.  (Doc. No. 769 at 61.)  And that is precisely what the jury
18  found. *See, e.g.*, *Voda v. Cordis Corp.*, 506 F. Supp. 2d 868, 877 (W.D. Okla. 2007)
19  ("[A] finding of conscious copying is inherent in the jury's finding of willfulness.")

20          Moreover,   contrary   to   Gore's   assertion   that   the   opinion   was
21  "unchallenged", it was repeatedly refuted by Gore's own pre-litigation statements in the
22  interference and otherwise.  There was also a wealth of evidence before the jury on which
23  it could conclude that the opinion was merely a "protective device" obtained in bad
24  faith.[14]  For example, the jury heard that the opinion was written by Gore's litigation

---

[14]   Gore falsely asserts that Plaintiffs' improperly cross-examined Mr. Sininger regarding Gore's
lack of an opinion on inequitable conduct.  (*see* Doc. No. 842 at 2 n. 1, 8.)  Mr. Sininger,
however, was never cross-examined regarding the lack of an inequitable conduct opinion.
(*see* 12/04/07 Tr. at 3034:11-3036:8.)

counsel and sent directly to its trial lawyers, (12/04/07 Tr. at 3022:20-3025:15; DX3841), and thus was not an "independent" opinion but an inherently biased one. *See, e.g., Liquid Dynamics Corp. v. Vaughan Co.*, 2005 U.S. Dist. LEXIS 6162, at *7 (N.D. Ill. Mar. 22, 2005), *aff'd*, 449 F.3d 1209 (Fed. Cir. 2006) (upholding willfulness verdict where, *inter alia*, opinion was given by trial counsel and jury could reasonably infer bias.)  The jury also heard, as the Court already found (*see* Doc. No. 833 at 4), that the opinion relied on the same prior art considered (over and over) by the PTO in the extensive prosecution of the Goldfarb patent. (12/04/07 Tr. at 3031:21-3032:2.)   Accordingly, the jury could readily conclude on this basis alone that the opinion was insufficient to establish good faith.[15]  *Central Soya Co. v. Geo. A. Hormel & Co.*, 723 F.2d 1573, 1577 (Fed. Cir. 1983) ("[A]ttorney's advice, based solely on file history prior art, ***does not by itself*** raise an inference of good faith … ." (emphasis in original))

The jury further heard a mountain of evidence showing that opinion was directly contrary to the positions that Gore took in the interference and was contradicted by numerous documents in Gore's own possession.  For example, in asserting that the Goldfarb patent was anticipated by the Matsumoto article the opinion ignores the substantial contradictory evidence in Gore's hands, including:

> ➢ Gore's own admissions that, despite supplying the ePTFE tubing used by Dr. Matsumoto, Gore could not determine the structure of the grafts disclosed in the Matsumoto article.  (*See, e.g.*, DX3205 ("Japanese paper [the Matsumoto article] claims 100% success on femoral arteries in dogs: ***but we do not know what tubes we used.  So we start again.***"); *see also* PX117.1718 (testimony of Gore employee, Richard Mendenhall, that "[nobody] was very able to reproduce that."); PX1183;

> ➢ Gore's knowledge that the other doctors working with its ePTFE tubing also could not determine the structure of the grafts disclosed in the Matsumoto article.  (*See, e.g.*, PX116.13174 ("[u]sing what is presumably identical material [as Matsumoto] …. ***all of the grafts have occluded within 4*** weeks … ."); PX116uu.13192 ("I am certain [Matsumoto's] work is accurate and

---

[15] Contrary to Gore's assertions, the opinion ***did not*** track Gore's invalidity defenses at trial. (12/04/07 Tr. at 3032:3-3033:11.)  This was a further basis on which the jury could conclude that the opinion was not a good faith effort to determine the validity of the Goldfarb patent.  *Read Corp. v. Portec, Inc.*, 970 F.2d 816, 829 n.9 (Fed. Cir. 1992) ("A good test that the advice given is genuine and not merely self-serving is whether the asserted defenses are backed up with viable proof during trial which raises substantial questions … .")

honest – ***but we must be using something different or doing something wrong***."); *see also* PX117b.155, 158; PX11613188; PX116tt.13189; 11/27/07 Tr. at 1958:2-1961:3; 12/04/07 Tr. 3063:15-3065:7.)

➢ Gore's repeated arguments to the PTO that the Matsumoto article was not anticipatory because it was not enabled. (*See, e.g.*, PX116.3827 ("***One looking at Matsumoto I is left to guess at the physical properties of the grafts responsible for producing success.***"; *see also* PX116.3825-26; PX116.3828-29; PX116o.4177; PX117c.3798.)

Similarly, in asserting that Dr. Goldfarb and Peter Cooper were joint inventors, the opinion fails to address the evidence in Gore's possession showing that Gore (including Cooper) repeatedly recognized that Dr. Goldfarb was the sole inventor. (*See*, *e.g.*, PX116.7717 ("AHI has, in a well organized, productive fashion, described with a fair degree of accuracy, the specific structure necessary for a viable vascular graft."); *see also* PX116.17939-40 ("Any success at this point in time is the direct result of the AHI efforts."); PX116.17936-38.) Tellingly, the jury heard that Gore made ***no attempt*** to determine whether the arguments contained in the opinion were inconsistent with the positions Gore had taken throughout the interference or the *ex parte* prosecution of the Cooper application. (12/04/07 Tr. at 3029:2-3030:19.) The failure of the opinion to address the contradictory evidence in Gore's own possession is highly probative of recklessness *and* bad faith. *Comark Commc'ns, Inc. v. Harris Corp.*, 156 F.3d 1182, 1191 (Fed. Cir. 1998) ("In order to provide such a prophylactic defense, however, counsel's opinion must be premised on the best information known to the defendant. Otherwise, the opinion is likely to be inaccurate and will be ineffective to indicate the defendant's good faith intent.")

In short, the jury had substantial evidence before on which it could conclude that Gore was a bad faith infringer, and that the opinion was merely a "protective device" rather than a good faith attempt to avoid infringement.

**D.    Plaintiffs Statements Were Not Objected To, Were Not Prejudicial, and Are Not Grounds For a New Trial**

As a last gasp attempt to avoid the consequences of its decades-long bad faith misappropriation of Dr. Goldfarb's invention, Gore asks for a new trial due to allegedly improper questioning and argument regarding "(1) the lack of an opinion of

counsel addressing infringement and (2) the alleged failure to obtain an updated opinion on validity after the Court's claim construction order issue."[16] (Doc. No. 842 at 9.)  But ***Gore never objected*** to either of these lines of inquiry at trial.  It is too late for Gore to now argue that these statements were somehow allegedly prejudicial.  *Mitchell*, 6 Fed. Appx. at 653.  Moreover, Gore's motion omits any attempt to meet the "high threshold" necessary for grant of a new trial where no contemporaneous objection was made. *Settlegoode*, 371 F.3d at 503; *Hemmings*, 285 F.3d at 1193.  This is because Gore cannot demonstrate that Plaintiffs' statements were improper or prejudiced the jury.

    *First*, neither line of inquiry was improper.  The failure of Gore to obtain a non-infringement opinion is directly relevant to showing that Gore did not believe that its products fell outside of the scope of the Goldfarb patent and that a decision to infringe was reckless.[17]  The failure of Gore to seek an updated opinion of counsel is likewise directly relevant to assessing the competence of the opinion and whether Gore could continue to rely on it.  Further, there can be no prejudice where, as here, the jury was properly instructed that it "must follow the law as I give it to you whether you agree with it or not" and was further expressly instructed on the law as follows:

> ➤ "***Arguments and statements by lawyers are not evidence***.  The lawyers are not witnesses.  What they have said in their opening statements, will say in their closing arguments, and at other times is intended to help you interpret the evidence, but it is no evidence.  If the facts as you remember them differ

---

[16] Gore also suggests that it is entitled to a new trial because the jury was "precluded from properly considering the ample evidence of inequitable conduct as part of its objective recklessness determination" and thus the jury's "willfulness verdict is of no legal effect." (Doc. No. 842 at 10, n. 7.)  But an inequitable conduct "defense is equitable in nature and does not give rise to the right of trial by jury."  (Doc. No. 604 at 2. (citing *Gardco Mfg., Inc. v. Herst Lighting Co.*, 820 F.2d 1209 (Fed. Cir. 1987).)  Nevertheless, Gore was still permitted to present much of this evidence to the jury, and "[d]espite hearing much of Gore's inequitable conduct evidence, the Jury returned a verdict for Plaintiffs on every count and every claim."  (Doc. No. 835 at 82 n. 9.)  Regardless, the Court may take this evidence into account in determining whether to enhance the damages as a result of Gore's willfull infringement.

[17] Although an opinion need not address both infringement and validity, the failure of the opinion to address infringement is part of "all of the facts surrounding the alleged infringement" that the jury was instructed to consider.  (Doc. No. 769 at 61.)  This is especially true when the invalidity arguments in the opinion are so objectively weak as to cast doubt upon a decision not to obtain objective analysis of noninfringement.

1   from the way the lawyers have stated them, your memory of them controls."
    (Doc. No. 769 at 4);

2
    ➢   "**_Questions and objections by lawyers are not evidence_**.  Attorneys have a
3       duty to their clients to object when they believe a question is improper under
        the rules of evidence.  You should not be influenced by the objection or by
4       the court's ruling on it."  (*Id.*)

5   (Doc. No. 769 at 1, 4.)   As there can be no dispute that the Court's instructions on

6   willfulness were correct, the jury must be presumed to have correctly applied the law to

7   the facts as found by the jury, and not based on the allegedly improper attorney argument.

8   *Richardson v. Marsh*, 481 U.S. 200, 206 (1987) ("[T]he almost invariable assumption of

9   the law [is that] jurors follow their instructions.")   Accordingly, any potential prejudice

10  (there was none) was necessarily cured by the Court's instructions and there can be no

11  basis to Gore's request for a new trial.  *Bayramoglu v. Estelle*, 806 F.2d 880, 888 (9th

12  Cir. 1986) ("A timely instruction from the judge usually cures the prejudicial impact of

13  evidence unless it is highly prejudicial or the instruction is clearly inadequate." (citation

14  omitted).)

15  **III.    CONCLUSION**

16          WHEREFORE Bard respectfully requests that the Court (i) deny Gore's

17  motion for judgment as a matter of law on Plaintiffs' willful infringement, (ii) deny

18  Gore's request in the alternative for a new trial, and (iii) grant any other relief the Court

19  deems just.

20

21

22

23

24

25

26

27

28

1

2  September 10, 2008

3                                         Bard Peripheral Vascular, Inc.,
David Goldfarb, M.D.

4                                         & C. R. Bard, Inc.
By their attorneys,

5

6                    By: _____/s/ Andrew M. Federhar_____

7                                        **FENNEMORE CRAIG P.C.**
ANDREW M. FEDERHAR

8                                         3003 North Central Avenue, Suite 2600
Phoenix, Arizona  85012-2913

9                                         Phone (602) 916-5000

10                                     **LATHAM & WATKINS, LLP**
STEVEN C. CHERNY

11                                    885 Third Avenue
New York, NY 10022

12                                     Phone (212) 906-1200

13                                    MAXIMILIAN A. GRANT
555 Eleventh Street, N.W.

14                                    Washington, DC 20004
Phone (202) 637-2200

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## CERTIFICATE OF SERVICE

I hereby certify that on September 10, 2008, I electronically transmitted the attached document to the Clerk' s Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.


 s/ Katrina Thomas
Secretary for Andrew M. Federhar