**OSBORN MALEDON**
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone   602.640.9000
Facsimile    602.640.9050

William J. Maledon, No. 003670
Brett L. Dunkelman, No. 006740
Osborn Maledon, P.A.
2929 North Central Avenue
Suite 2100
Phoenix, Arizona 85012-2794
(602) 640-9000
wmaledon@omlaw.com
bdunkelman@omlaw.com

David H. Pfeffer
Harry C. Marcus
Arnold I. Rady
James W. Gould
Morgan & Finnegan, LLP
3 World Financial Center
New York, NY  10281-2101
(212) 415-8700
(212) 415-8701

John S. Campbell
W. L. Gore & Associates, Inc.
551 Paper Mill Road
Newark, Delaware  19714

Attorneys for W. L. Gore & Associates, Inc.

**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF ARIZONA**

| | |
|---|---|
| Bard Peripheral Vascular, Inc., and David Goldfarb, M.D., <br><br> Plaintiffs, <br><br> v. <br><br> W. L. Gore & Associates, Inc., <br><br> Defendant. <br><br><br> W. L. Gore & Associates, Inc., <br><br> Counterclaimant, <br><br> v. <br><br> Bard Peripheral Vascular, Inc., David Goldfarb, M.D., and C. R. Bard, Inc., <br><br> Counterdefendants. | No.: CV-03-0597-PHX-MHM <br><br> **GORE'S REPLY MEMORANDUM IN SUPPORT OF ITS RULE 50(b) MOTION REGARDING WILLFUL INFRINGEMENT AND RULE 59(a) MOTION FOR NEW TRIAL ON THE ISSUE** |



## I.    SUMMARY OF THE ARGUMENT

In 2007, the Federal Circuit made it much more difficult to prove willful infringement.  *Seagate* redefined the standard to require "recklessness" in the face of a "high" risk of infringement, rather than mere negligence.  Tellingly, Plaintiffs have not cited a single case where willful infringement was found under the heightened *Seagate* standard.  The cases cited by Plaintiffs in which willfulness was found were all decided before the *Seagate* decision and, therefore, applied a standard that is not applicable here.

Gore's conduct was far from reckless.  When it learned that the '135 patent issued, it turned to its long-time patent counsel for advice.  Gore received a 130-page, carefully reasoned opinion that the patent was invalid on numerous grounds.  Under current law, that alone should have been sufficient to defeat Plaintiffs' charge of willfulness.[1]

Post-*Seagate* courts have granted JMOL or summary judgment of no willfulness where the defendant obtained a timely opinion of counsel.  *See, e.g.*, *Finisar Corp. v. DirecTV Group, Inc.*, 523 F.3d 1323, 1339 (Fed. Cir. 2008) ("a competent opinion of counsel concluding either that DirecTV did not infringe the '505 patent or that it was invalid would provide a sufficient basis…to proceed without engaging in objectively reckless behavior…."); *Innogenetics, N.V. v. Abbott Labs.*, No. 05-C-0575-C, 2007 U.S. Dist. LEXIS 193 (W.D. Wisc. Jan. 3, 2007), *aff'd*, 512 F.3d 1363 (Fed. Cir. 2008) (same); *Pivonka v. Cent. Garden & Pet Co.*, No. 02-CV-02394-RPM, 2008 U.S. Dist. LEXIS 12022 (D. Colo. Feb. 19, 2008) (summary judgment of no willful infringement where defendant learned of defenses from consultation with patent counsel).

---

[1] Even under the pre-*Seagate* "due care" regime, a competent opinion of counsel was considered a defense to a charge of willfulness. *See, e.g.*, *Westvaco Corp. v. Int'l Paper Co.*, 991 F.2d 735, 743-44 (Fed. Cir. 1993) (willfulness finding reversed); *Graco, Inc. v. Binks Mfg. Co.*, 60 F.3d 785, 792-93 (Fed. Cir. 1995) (same).



OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone    602.640.9000
Facsimile     602.640.9050

Plaintiffs' attempts to tarnish the opinion are meritless. They are wrong in asserting that the opinion is contradicted by Gore's arguments in the Interference. The opinion relied on Matsumoto III for invalidity, whereas Gore's Interference arguments criticized Matsumoto I and II. The opinion also pointed out that Gore's Interference arguments criticizing Matsumoto I no longer had merit because the law had changed. Plaintiffs' attempt to discredit the opinion as "inherently biased" merely because it was rendered by Gore's trial counsel, Morgan & Finnegan, has no basis in the evidence or in the law. *See KW Muth Co. v. Bing-Lear Mfg. Group, L.L.C.*, 219 F.R.D. 554, 557 (E.D. Mich. 2003) ("From a legal and policy view, courts should encourage people to get opinions on the scope and limits [and/or validity] of other companies' patents. Increasing the cost of this relationship by heightening the likelihood that two sets of attorneys will be required if litigation results – and possibly losing the attorney in whom the client has the most confidence – hinders this policy").

Plaintiffs also argue that Gore "copied" and "stole" Dr. Goldfarb's invention in 1974, nearly 30 years before any patent issued. Gore's conduct prior to issuance of the patent cannot support a charge of copying because Dr. Goldfarb's patent rights did not yet exist. *See Curtis Mfg. Co. v. Plasti-Clip Corp.,* 933 F. Supp. 107 (D. N.H. 1995) ("any 'copying' of a product is not relevant unless [the infringer] copied a product it knew to be patented'"); *Am. Original Corp. v. Jenkins Food Corp.,* 774 F. 2d 459, 465-6 (Fed. Cir. 1985) (where defendant began developing accused product before patent issued, "the evidence fails to establish…copying of Marvin's patent").[2]

Plaintiffs themselves recognize that "[t]here were…numerous <u>undisputed</u> uncertainties…: (1) whether Dr. Goldfarb would prevail in the interference; (2) if Dr. Goldfarb prevailed in the interference, whether a patent would issue; (3) if a patent issued, whether its claims would cover Gore's products; and (4) if a patent issued,

---

[2] Plaintiffs' reliance on *Voda v. Cordis Corp.,* 506 F. Supp. 2d. 868, 877 (W.D. Okla. 2007), is misplaced. The jury found willful infringement due to copying four years <u>after</u> issuance of the patent. *Id.* at 882-83. The Federal Circuit recently vacated the willfulness verdict because the jury was not instructed under the higher *Seagate* standard. *See Voda v. Cordis Corp.*, 536 F.3d 1311, 1328 (Fed. Cir. 2008).

2



OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone     602.640.9000
Facsimile      602.640.9050

whether its claims would be upheld as valid." (Doc. No. 894 at 11.)  Given the uncertainties Plaintiffs correctly describe, Gore could not have known there was an objectively high risk that it would infringe a valid patent.

Plaintiffs' assertion of copying is refuted by the Interference decisions, which <u>rejected</u> Dr. Goldfarb's allegation that Mr. Cooper derived (copied) the invention from him, and, most importantly, held that Mr. Cooper conceived the invention <u>before</u> Dr. Goldfarb. (*See* PX116.17).  Dr. Goldfarb admitted that he could not have made the invention without Gore's help. (Goldfarb Trial Tr. 686:5-18).

To deny Gore's motion, the Court must not only determine that the jury correctly disregarded Gore's opinion of counsel, but also that every defense Gore asserted was objectively baseless (i.e., frivolous).  If the Court believes that any one of those defenses was not "the sort of <u>easily-dismissed</u> claim[] that an objectively reckless infringer would be forced to rely upon," it cannot allow the willfulness verdict to stand.  *ResQNet.com, Inc. v. Lansa, Inc.*, 533 F. Supp.2d 397, 420 (S.D.N.Y. 2008).

## II. PLAINTIFFS MISSTATE THE LAW: THEY HAD THE BURDEN TO PROVE WILLFULNESS UNDER *SEAGATE*

Plaintiffs argue that Gore was "[u]nable to point to any evidence on which a jury could have found that Gore's conduct was not objectively reckless… ." (P. Opp. at 7.)  However, Plaintiffs had the burden to present clear and convincing evidence that Gore's conduct <u>was</u> objectively reckless: "[T]o establish willful infringement, <u>a patentee must show by clear and convincing evidence</u> that the infringer acted despite an objectively <u>high</u> likelihood that its actions constituted infringement of a valid patent," and, if that is established, the patentee must show by clear and convincing evidence that the objectively-high risk was known or should have been known to the infringer.  *In re Seagate Tech., L.L.C.*, 497 F.3d 1360, 1370 (Fed. Cir. 2007) (en banc) (emphasis added).  There can be no risk of infringement until a patent is issued.  Thus, Plaintiffs must prove that during the brief seven month period from patent issuance to filing of suit in March 2003, Gore acted despite knowledge of an objectively "high" likelihood of infringing a valid patent.

3



OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone   602.640.9000
Facsimile   602.640.9050

Plaintiffs are incorrect that under *Seagate*, "Gore's…trial defenses are not relevant to the objective recklessness inquiry." (P. Opp. 8, n. 9.) The *Seagate* decision holds: "[T]he patentee must also demonstrate that this objectively-defined risk (determined by the record developed in the infringement proceeding) was either known or so obvious that it should have been known to the accused infringer." *Seagate*, 497 F.3d at 1371 (emphasis added).[3] The Federal Circuit in a later unpublished decision stated that "[u]nder [*Seagate*'s] objective standard, both legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took action constituting infringement of a valid patent." *Black & Decker, Inc. v. Robert Bosch Tool Corp.*, 260 Fed. Appx. 284, 291 (2008) (dictum).

Consequently, in response to Gore's JMOL motion, Plaintiffs had to identify clear and convincing evidence showing that every noninfringement, invalidity, and unenforceability defense was objectively baseless, including those that the Court must decide such as obviousness, standing and inequitable conduct (the latter two were not presented to the jury). This, Plaintiffs have failed to do.[4]

### III. PLAINTIFFS LACK CLEAR AND CONVINCING EVIDENCE TO SUPPORT THE JURY'S WILLFULNESS VERDICT

#### A. Plaintiffs Have No "Evidence" To Rebut Gore's Good Faith Reliance On Competent Opinion Of Counsel

In 2002, when Gore learned that the '135 patent had issued, it promptly sought an independent opinion of its long-time patent counsel. The 130-page opinion it received was thorough and competent on its face. It carefully considered the lengthy

---

[3] *See also Kellogg v. Nike Inc.*, No. 08:07CV70, 2008 U.S. Dist. LEXIS 62410, at * 4 (D. Neb. Aug. 14, 2008) ("Legitimate defenses to infringement claims and credible invalidity arguments demonstrate the lack of an objectively high likelihood that a party took actions constituting infringement on a valid patent.")

[4] Plaintiffs assert that Gore's non-infringement arguments relating to "tissue ingrowth" and "internodal distances" show objective recklessness because they are inconsistent with Gore's prior statements. (P. Opp. 9.) There was no inconsistency. *See* Gore Opp. to Plaintiffs' Motion for Enhanced Damages (Doc. No. 884). Moreover, all of Gore's arguments and defenses need to be found objectively baseless before willful infringement can be found.

4



PTO proceedings and changes in the law before advising that the patent claims were invalid in view of the prior art as well as for other reasons.  After it was sued, Gore asserted the invalidity grounds spelled out in the opinion as well as other defenses developed prior to suit, such as unenforceability for inequitable conduct.[5]

Gore's director of medical products testified that Gore relied and continues to rely on that opinion. (Sininger 12/04/2007 Trial Tr. 3008:19-24.)  There is no evidence to the contrary.  Gore's motion should be granted in light of these facts, as shown by the recently affirmed *Innogenetics* decision:

> "'Only if counsel's opinion is found to be incompetent or issued without full knowledge of the facts may a jury discount it in determining a party's good faith.'  It is not enough that an opinion be shown to be wrong… Rather, the opinion needs to be so obviously wrong or incomplete that a reasonable person would have been alerted to its inadequacy."[6]

*Innogenetics*, No. 05-C-0575-C, 2007 U.S. Dist. LEXIS 193, *58-59 (citations omitted).  No reasonable jury could have found that Gore's opinion was "obviously wrong or incomplete."[7]

---

[5] Gore's Answer and Counterclaims pleaded with particularity several inequitable conduct grounds. (Doc. No. 4.)  Gore's inequitable conduct pleading was objectively reasonable.  Dr. Goldfarb's patent counsel, Larry Green, tried to withdraw the Goldfarb patent from issuance because he felt inequitable conduct may have occurred and that further investigation was required. (PX115.4405-4411; DX-3155 at 2-3).

[6] Plaintiffs incorrectly cite *VNUS Med. Techns., Inc. v. Diomed Holdings, Inc.*, 527 F. Supp. 2d 1072 (N.D. Cal. 2007), as authority that an opinion of counsel does not preclude willfulness.  The Court denied summary judgment of no willfulness because the accused infringer was only relying on e-mails, one of which was labeled a "preliminary assessment," and neither of which contained a legal analysis.  *Id.* at 1376.

[7] The cases cited by Plaintiffs applied the less demanding pre-*Seagate* standard, and involved important facts not present here.  In *Acumed L.L.C. v. Stryker Corp.*, 483 F.3d 800, 811 (Fed. Cir. 2007), the defendant "ignored" its counsel's opinion and "copied" the patented device.  In *In re Hayes Microcomputer,* 982 F.2d 1527, 1543 (Fed. Cir. 1992), the counsel's opinion failed to specifically analyze the patent claims.  In *Golden Blount Inc. v. Robert H. Peterson Co.*, 438 F.3d 1354 (Fed. Cir. 2006), the defendant did not obtain a timely, competent opinion, since the only "thorough" opinion was not obtained until after suit was filed.



OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone   602.640.9000
Facsimile   602.640.9050

Plaintiffs are off the mark when they argue that the prior art invalidity conclusions in the opinion regarding Matsumoto III (The October 1973 *Surgery* Article) are inconsistent with Gore's arguments in the Interference and with documents in Gore's possession. (P. Opp. 14). First, the opinion pointed out that Gore's prior arguments in the Interference were directed to earlier Matsumoto articles having different disclosures from Matsumoto III on which the opinion relied. (DX-3841 at 79.) Second, the cited documents indicating that Gore could not identify the specific structure of the Matsumoto grafts do not contradict the patent invalidity conclusions reached in the opinion. The opinion addressed the issue raised by these documents in the context of an earlier argument made by Cooper in the Interference. The opinion observed that the Cooper argument was based on a 1962 case, whereas "under current law, that <u>is not</u> the test for whether a reference anticipates under § 102(b)." (*Id.* at 80-81).[8]

Moreover, Plaintiffs have not suggested that the opinion was "obviously wrong or incomplete" when it further advised Gore that the patent is also invalid for failure to comply with 35 U.S.C. § 112 (lack of written description and claim indefiniteness). And, Plaintiffs cannot assert that the opinion was "obviously wrong or incomplete" in advising Gore that it had joint inventorship rights to the patent, since that opinion was based on findings and conclusions in the Interference, binding on Plaintiffs, that Cooper conceived the invention first and that Dr. Goldfarb's successful test of Cooper's supplied graft inured to Cooper's benefit.[9] *See infra*, pp. 10-11.

---

[8] The opinion cited *Advanced Display Systems v. Kent State University*, 212 F.3d 1272,1282 (Fed. Cir. 2000) ("a reference must enable a person of skill in the art to practice <u>the claimed invention</u>.") The opinion further explained that other arguments made in the Interference criticizing the Matsumoto articles were no longer relevant in view of changes in the law, *e.g. Titanium Metals Corp. v. Banner*, 778 F.2d 775 (Fed. Cir. 1985). (DX-3841 at 77-79, 82.)

[9] The opinion advised that Cooper's joint inventorship "would render the patent in its present state invalid under 35 U.S.C. § 102(f)" or "would give Gore, Cooper's assignor, an undivided one-half interest in the patent." (DX-3841 at 15.)

6


OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone    602.640.9000
Facsimile    602.640.9050

Plaintiffs argue that the opinion on joint inventorship failed to address evidence in Gore's possession that Gore repeatedly recognized that Dr. Goldfarb was the sole inventor. (P. Opp. at 15.) No such evidence exists. Plaintiffs cite three Gore documents: PX116.7717, PX116.17939-40 and PX116.17936-38. These documents do not recognize Dr. Goldfarb as the sole inventor of claims 20-27. The documents refer to work well after Dr. Goldfarb's July 1973 conception and reduction to practice of the invention. Only work done prior to July 1973 is relevant to Gore's joint inventorship rights. *See* Gore's Reply Memorandum In Support Of Its Rule 50(b) Motion For Judgment As A Matter Of Law Regarding Invalidity Because Cooper And Goldfarb Are Joint Inventors.

PX116.7717 is dated May 2, 1974. It states that "AHI has, in a well-organized, productive fashion, described with a fair degree of accuracy, the specific structure necessary for a viable vascular graft." Dr. Goldfarb testified that, in July 1973, he did not have a "specific structure for a viable vascular graft and that after the July 1973, he undertook "additional experiments to refine the structure" at AHI. (Goldfarb Trial Tr. 401:9-18). The May 1974 document referred to this later-developed "specific structure."

PX116.17939-40 is dated June 3, 1974. It states, "[a]ny success <u>at this point in time</u> is the direct result of the AHI efforts." (emphasis added). Here again, Plaintiffs took the document out of context. The "success" was in further developing the product (i.e. the work performed subsequent to July 1973), not in inventing it.

Plaintiffs do not explain how PX116.17936-38, also dated June 3,1974, allegedly supports their assertion that Gore or Cooper recognized Dr. Goldfarb as the sole inventor. The document says nothing about the making of an invention in 1973.

Plaintiffs' assertion that the opinion was just a "protective device" (P. Opp. at 13) is baseless. A sham opinion does not contain 130 pages of detailed factual and legal analysis. The jury was misled by Plaintiffs' argument that "the opinion was written by Gore's litigation counsel and sent directly to its trial lawyers…, and thus was not an 'independent' opinion but an inherently biased one." (P. Opp. at 13-14.) It

7



OSBORN
MALEDON
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone    602.640.9000
Facsimile    602.640.9050

was highly improper and prejudicial for Plaintiffs to suggest to the jury that Morgan & Finnegan was "inherently biased" and created a sham opinion in violation of its ethical responsibilities merely because it was later retained as Gore's trial counsel.[10] *See, e.g., Innogenetics*, 2007 U.S. Dist. LEXIS 193, *60-61 (rejecting "aspersions" for selection of same firm to represent it in litigation that rendered pre-litigation opinion because there is no requirement to "seek[] competent legal advice from more than one qualified law firm."); *KW Muth Co.*, 219 F.R.D. at 557 (requiring different counsel for opinions and litigation would result in increased cost, "possibly losing the attorney in whom the client has the most confidence" and hinder policy encouraging clients to obtain opinions from trusted counsel).

Plaintiffs' assertion that the jury's willfulness verdict means it found that Gore did not rely in good faith on the opinion (P. Opp. at 11) is also baseless.[11]  As the Court instructed, the jury could have concluded that Gore was in good faith but "should have known[] that its actions constituted infringement of a valid and enforceable patent." (Trial. Tr. 3396:17-19).  Gore's selection of its long-time patent trial counsel, far from being the bad faith act of a reckless infringer, shows Gore's desire to obtain sound, reliable legal advice.  Plaintiffs' suggestion that Gore should have selected counsel in whom it had not built up years of trust and who had less knowledge and experience with the particular technology at issue is not reasonable.

---

[10] The cases cited by Plaintiffs do not support their "inherent bias" argument.  In *Liquid Dynamics Corp. v. Vaughan Co.,* 449 F.3d 1209 (Fed. Cir. 2006), unlike here, the attorney who authored the opinion testified at trial and was found to lack credibility.  In *Central Soya Co., Inc. v. Geo A. Hormel & Co.*,723 F.2d 1573 (Fed. Cir. 1983), the infringer disregarded its counsel's opinion.

[11] Plaintiffs' cited authority, *Jurgens v. CBK, Ltd.*, 80 F.3d 1566, 1572 (Fed. Cir. 1996), does not support its assertion that a willfulness verdict necessarily means that the jury found lack of good faith.  In *Jurgens,* unlike here, the jury returned a special verdict that the defendant acted in "bad faith" because the opinion it received was "incompetent" and "conclusory."  *Id*. at 1571.



**OSBORN MALEDON**
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone    602.640.9000
Facsimile    602.640.9050

B.  **Plaintiffs' Assertions of Copying Are Legally Erroneous And Factually Baseless**

Plaintiffs argue that the "jury further heard how Gore deliberately copied Dr. Goldfarb's invention" (P. Opp. 13)[12] and that "[t]he ['135] patent finally issued on August 20, 2002, by which time Gore had sold untold billions of dollars worth of Dr. Goldfarb's invention without paying him a cent." (P. Opp. at 1; *see* Trial Tr. 241:9-12). Plaintiffs' "evidence" is legally irrelevant because the alleged "copying" occurred before the '135 patent issued at a time when Gore reasonably believed it had the rights to any patent that might issue. *See Curtis*, 933 F. Supp. 107; *Am. Original*, 774 F.2d at 465-66. Moreover, there was no copying because Dr. Goldfarb did not have a commercial graft product to copy. "[C]opying requires the replication of a specific product." *Iron Grip Barbell Co. v. York Barbell Co.*, 392 F.3d 1317, 1325 (Fed. Cir. 2004).

Plaintiffs assert that Gore's FDA filings, which state that its grafts are "'substantially equivalent' to Bard/IMPRA's grafts," somehow admitted copying from Dr. Goldfarb. (P. Opp. 13). These documents cannot establish copying as a basis for willfulness. They were written years prior to the 2002 grant of the '135 patent.[13] And, no inference of copying can be drawn from the complete statement, which Plaintiffs misleadingly cropped: "The applicant graft is substantially equivalent to predicate GORE-TEX Vascular Graft and vascular grafts manufactured by Bard/IMPRA and by Atrium Medical Corporation." In any case, general FDA statements of equivalency cannot be used to support a finding of infringement, let alone willful infringement. *Cardiovention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d

---

[12] Plaintiffs go so far as to accuse Gore of larceny when they assert that "Peter Cooper stole Dr. Goldfarb's slides." (P. Opp. at 13). It is undisputed that Mr. Cooper received permission from the Director of AHI, Dr. Goldfarb's employer, to obtain the slides. (Goldfarb Tr. 642:19-23, 646:2-7). Further, that event occurred in November 1974, nine months after Cooper filed his patent application describing his invention.

[13] PX412.37 was submitted to the FDA in 1980 (*see* PX412.2); PX414.12 was submitted in 1999 (*see* PX414.4); PX475.24 was submitted in 1999 (*see* PX475.2); PX476.12 was submitted in 1999 (*see* PX476.2); and PX1570.1-2 was submitted in 1999.

9



**OSBORN MALEDON**
A PROFESSIONAL ASSOCIATION
ATTORNEYS AT LAW

The Phoenix Plaza
21st Floor
2929 North Central Avenue
Phoenix, Arizona 85012-2794

P.O. Box 36379
Phoenix, Arizona 85067-6379

Telephone      602.640.9000
Facsimile       602.640.9050

830, 840 (D. Minn. 2007) ("Courts have repeatedly refused to allow FDA 510(k) notification of substantial equivalence as admission of infringement in patent cases."); *see The Johns Hopkins Univ. v. Datascope Corp.*, 2008 WL 4447094 at n.3 (Fed. Cir. Oct. 2, 2008) ("FDA equivalence is irrelevant to patent law because it involves fundamentatlly different inquiries.").

Moreover, the Interference decisions directly refute Plaintiffs' representation that Gore "stole" or "copied" the invention from Dr. Goldfarb and "nominated" Peter Cooper as Gore's inventor (P. Opp. 1). The decisions establish that: (a) Gore developed ePTFE vascular grafts before Dr. Goldfarb; (b) Cooper introduced Dr. Goldfarb to ePTFE tubes for use as vascular grafts and provided him with his preferred tube that served as Dr. Goldfarb's proof of invention; (c) Gore filed the Cooper patent application more than 6-months before Dr. Goldfarb filed his; (d) the Interference that "tied up" Dr. Goldfarb's patent application was declared because Dr. Goldfarb copied a claim from Cooper's application; and (e) the PTO and Federal Circuit determined Cooper conceived the invention before Dr. Goldfarb, rejecting Dr. Goldfarb's assertion that Cooper derived the invention from him. Specifically, the Federal Circuit made the following findings and conclusions:

- "Research into the use of expanded PTFE as a vascular graft began in 1972, when Gore, in conjunction with several surgeons, conducted a series of experiments…." *Cooper v. Goldfarb*, 154 F.3d 1321, 1324 (Fed. Cir. 1998) ("*Cooper I*"). Dr. Goldfarb did not participate until he was "contacted by…a Gore employee" in 1973 to inquire "whether AHI would be willing to test expanded PTFE vascular grafts." *Id*. at 1325.

- "Over the next several months, Cooper periodically sent Goldfarb a variety of expanded PTFE tubes to use in his research." *Id*. One of the ePTFE grafts provided by Cooper bearing the designation "2-73 RF" is the basis for Goldfarb's claim to inventorship. *Id*. at 1325-26.

- Gore filed the Cooper patent application on April 2, 1974, more than 6 months before Dr. Goldfarb filed his patent application on October 24, 1974. *Id.* at 1325.

- After his application had been pending 10 years, Dr. Goldfarb copied claim 15 from the Cooper application so that an interference could be declared between his application and Gore's application. (Doc. No. 3329 at 2-3.)

10



- The PTO and Federal Circuit held that Mr. Cooper conceived the invention before Dr. Goldfarb. *Cooper v. Goldfarb*, 240 F.3d 1378, 1380-1384 (Fed. Cir. 2001) ("*Cooper II*") ("Cooper had conceived the invention by the time Goldfarb evaluated the 2-73 RF graft.")

- The PTO rejected Dr. Goldfarb's assertion that he disclosed the invention to Mr. Cooper at a February 8, 1973 meeting. (PX116.7308; DX3310 at p. 17) ("we conclude that Goldfarb has not established conception or derivation by a preponderance of the evidence as of February 8, 1973.")[14]

- Gore lost the Interference only "[b]ecause Cooper had not alleged that he had been diligent in reducing the invention to practice." *Cooper II*, 240 F.3d at 1380.

- The PTO Board's findings and conclusions provided a clear basis for Gore to reasonably believe it had joint inventorship rights:[15] "Cooper certainly intended that Goldfarb use the [material] for vascular grafts, and to that extent Goldfarb's experiments could be said to have been performed at Cooper's request….[W]e hold that Goldfarb's recognition that the 2-73 RF graft…was suitable for use as a vascular implant inures to Cooper's benefit." *Cooper II*, 240 F.3d at 1385.

## IV. CONCLUSION

For the foregoing reasons, the Court should grant Gore's motion for judgment as a matter of law that Gore did not willfully infringe the '135 patent. Alternatively, the Court should order a new trial.

---

[14] Plaintiffs misleadingly assert that Gore included in the Cooper application "a verbatim copy of a memo describing Dr. Goldfarb's research." (P. Opp. at 13). The memo was a Gore memo reporting the work of many doctors, not just Dr. Goldfarb's, (DX-3045, PX117.6-18) The Gore memo and Detton testimony were in the Interference record when it was determined that Mr. Cooper did not derive the invention from Dr. Goldfarb and was first to conceive.

[15] The PTO Board of Interferences did not have jurisdiction to determine if Cooper was a joint inventor. *See* PX116.7312: Board Decision, Oct. 18, 1995 at p. 21.

11

DATED this 6th day of October, 2008.

OSBORN MALEDON, P.A.

s/William J. Maledon
Brett L. Dunkelman
William J. Maledon
2929 North Central Avenue
Phoenix, Arizona  85012-2794

David H. Pfeffer
Harry C. Marcus
Arnold I. Rady
James W. Gould
Morgan & Finnegan, L.L.P.
3 World Financial Center
New York, New York  10281-2101

John S. Campbell
W. L. Gore & Associates, Inc.
551 Paper Mill Road
Newark, Delaware  19714

Attorneys for W. L. Gore & Associates, Inc.

**CERTIFICATE OF SERVICE**

I hereby certify that on October 6, 2008, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF System for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

s/Susanne Wedemeyer

2296832