IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Bard Peripheral Vascular, Inc., and David Goldfarb, M.D., <br><br> Plaintiffs, <br><br> vs. <br><br> W.L. Gore & Associates, Inc., <br><br> Defendant. <br> _____ <br> W.L. Gore & Associates, Inc., <br><br> Counterclaimant, <br><br> vs. <br><br> Bard Peripheral Vascular, Inc., David Goldfarb, M.D., and C.R. Bard, Inc., <br><br> Counterdefendants. <br> _____ | No. CV-03-597-PHX-MHM <br><br> **AMENDED CLERK'S JUDGMENT** |

Pursuant to the Court's Orders filed July 27, 2010 (Doc. Nos. 1040 and 1039); July 21, 2010 (Doc. No. 1036); July 9, 2010 (Doc. No. 1034); March 31, 2009 (Doc. Nos. 941 and 942); and July 29, 2008 (Doc. Nos. 833, 834, and 835); and the Jury's Verdict, entered on December 11, 2007 (Doc. No. 771), the following Amended Judgment is entered:

1.  This action was tried to a jury with Judge Murguia presiding, and the jury rendered

a verdict, (Doc. No. 771), reflected below:

 a. Plaintiffs David Goldfarb, M.D. ("Goldfarb") and Bard Peripheral Vascular, Inc. ("BPV") (collectively, "Plaintiffs") proved that the subject W.L. Gore & Associates, Inc.'s ("Gore") surgical graft and stent graft products infringe the asserted claims of U.S. Patent No. 6,436,135 (the "'135 Patent");

 b. Plaintiffs proved that Gore's infringement was willful; and,

 c. Gore failed to prove by clear and convincing evidence that the '135 Patent is invalid.

2. The Court denied post-trial motions to set-aside the verdict or for a new trial. (Doc. Nos. 833 and 834.)

3. Gore's claims of inequitable conduct were tried to the Court, and the Court found that Gore did not prove by clear and convincing evidence that Dr. Goldfarb and/or his attorneys committed inequitable conduct during the prosecution of the '135 Patent.

4. For the time period ending June 30, 2007, Plaintiffs are entitled to lost profits damages in the amount of $102,081,578.82 and reasonable royalty damages in the amount of $83,508,292.20, for a total of $185,589,871.02. For the reasons set forth in its Order dated March 31, 2009 (Doc. No. 941), these damages are doubled from $185,589,871.02 to the sum of $371,179,742.04 pursuant to 35 U.S.C. § 284.

5. For the time period beginning July 1, 2007 and ending March 31, 2009, Plaintiffs are entitled to lost profits damages in the amount of $44,556,381.24 and reasonable royalty damages in the amount of $64,440,740, for a total of $108,897,121.24. For the reasons set forth in its Order dated July 9, 2010 (Doc. No. 1034), the Court declines to enhance these damages pursuant to 35 U.S.C. § 284.

6. For the reasons set forth in its Order dated March 31, 2009 (Doc. No. 941), Plaintiffs are entitled to an award of their reasonable attorneys' fees and nontaxable costs in the sum of $19,000,000 pursuant to 35 U.S.C. § 285.

7. For the reasons set forth in its Order dated March 31, 2009 (Doc. No. 942), Plaintiffs are entitled to an award of prejudgment interest on the damages specified in Paragraph

4 above (damages before enhancement) in the sum of $18,558,987.10. Plaintiffs are entitled to an award of prejudgment interest on the attorneys' fees award specified in Paragraph 6 above in the sum of $1,900,000. The Court declines to award prejudgment interest on the damages specified in Paragraph 3 above.

8. Plaintiffs are awarded post-judgment interest pursuant to 28 U.S.C. § 1961.

## **ORDER CONCERNING COMPULSORY LICENSE**

**WHEREAS**, this Court has denied Plaintiff Bard Peripheral Vascular, Inc.'s motion for a permanent injunction prohibiting prospective infringement by W.L. Gore & Associates, Inc. ("Gore") of U.S. Patent No. 6,436,135;

**IT IS HEREBY ORDERED** granting a compulsory license to Bard Peripheral Vascular, Inc. and David Goldfarb, M.D. in the form of 20% on surgical grafts, 15% on stent-grafts, 15% on the PROPATEN® surgical grafts, and 12.5% on VIABAHN® stent-grafts with heparin against W.L. Gore & Associates, Inc.

**IT IS FURTHER ORDERED** that Gore be permitted to practice, and Bard Peripheral Vascular, Inc. ("Bard"), a subsidiary of C.R. Bard, Inc., be compelled to permit Gore to practice, the '135 patent subject to the following terms:

1. **TERM:** Gore's obligation to pay a royalty associated with this ORDER is effective as of April 1, 2009, and expires upon the expiration of the '135 patent, on August 20, 2019, unless earlier terminated as provided herein.

2. **TERMINATION:**
   
   **(a)** The provisions of this ORDER permitting Gore to practice the '135 patent shall terminate if Gore violates this ORDER, including without limitation if Gore violates its obligation to timely pay royalties, and fails to cure any such breach within thirty (30) days after receipt of written notice thereof from Bard or the Court. Upon any such termination, Gore shall no longer be permitted to practice the '135 patent.
   
   **(b)** Should all the asserted claims (20-27) of the '135 patent be held

|   |   |   |
|---|---|---|
| 1 | | invalid, not infringed, and/or unenforceable in a final and |
| 2 | | nonappealable judgment in this case, then this ORDER shall be void |
| 3 | | and all payments made by Gore hereunder and escrowed, plus interest |
| 4 | | accrued thereon, shall be returned to Gore. |
| 5 | **(c)** | If there is a final and non-appealable judgment in another case that all |
| 6 | | the asserted claims (20-27) of the '135 patent are held invalid or |
| 7 | | unenforceable, then the Parties' obligations under this ORDER will |
| 8 | | immediately terminate. |

3. **SCOPE OF ORDER:** This ORDER permitting Gore to practice the '135 patent under the terms specified herein is: (i) non-transferable and does not inure to the benefit of any Gore joint venturers, affiliates, successors, or any other legal person beyond Gore; (ii) non-exclusive to Gore in so much as the ORDER does not limit in any way whatsoever Bard's ability to license, sublicense or assign any or all of its rights in the '135 patent, including rights granted under this ORDER; and (iii) limited to permitting Gore to make, use, sell and/or import the following products in the United States:

   **(a)** Standard Grafts (Standard Walled Ringed; Standard Walled Removable Ringed; Thin Walled Ringed; Thin Walled Removable Ringed; Standard Walled; Thin Walled);

   **(b)** Stretch Grafts (Standard Walled Stretch; Standard Walled Large Diameter Stretch; Standard Walled Removable Ringed Stretch; Standard Walled Bifurcated Stretch; Thin Walled Bifurcated Stretch; Standard Walled Ringed Stretch; Standard Walled Ringed Dialysis; Standard Walled Removable Ringed Stretch; Thin Walled Removable Ringed Stretch; Thin Walled Ringed Stretch; Thin Walled Stretch);

   **(c)** PROPATEN® Grafts;

   **(d)** INTERING® Grafts;

   **(e)** INTERING® Stretch Grafts;

- 4 -

|   |       |                                                                                        |
|---|-------|----------------------------------------------------------------------------------------|

1  **(f)** ACUSEAL® Patch;

2  **(g)** Cardiovascular Patchs;

3  **(h)** VIABAHN® Stent-Grafts;

4  **(i)** EXCLUDER® Stent-Grafts;

5  **(j)** TAG® Stent-Grafts;

6  **(k)** VIATORR® Stent-Grafts;

7  **(l)** Gore products not more than colorably different from those onthe market as of December 11, 2007, and falling within any of 3(a) through 3(k) hereof.

10 **(m)** Gore products falling within any of 3(a) through 3(l) that are approved by the FDA for new vascular indications.

This ORDER shall not confer any right to Gore to enforce the '135 patent nor any right to seek to have Bard enforce the' 135 patent. All rights to prosecute, maintain, enforce, license, sublicense or assign the '135 patent are reserved solely and exclusively to Bard.

**4.  ROYALTY PAYMENT**

**(a)** SURGICAL GRAFT PRODUCTS: "Surgical Graft Products" are those products identified in 3(a), (b), (d), (e), (f), (g) and (l), to the extent applicable. The royalty rate on such products is 20% of Gore's net selling price from Gore's sale of Surgical Graft Products.

**(b)** STENT GRAFT PRODUCTS: "Stent Graft Products" are those products identified in 3(i), (j), (k) and (1), to the extent applicable. The royalty rate on such products is 15% of Gore's net selling price from Gore's sale of Stent Graft Products.

**(c)** PROPATEN® Grafts: "PROPATEN® Grafts" are those products identified in 3(c), and (1), to the extent applicable. The royalty rate on such products is 15% of Gore's net selling price from Gore's sale of PROPATEN® Grafts.

**(d)** VIABAHN® Stent-Grafts: "VIABAHN® Stent-Grafts" are those

- 5 -

    products identified in 3(h), and (l), to the extent applicable. The royalty rate on such products that include heparin is 12.5% of Gore's net selling price from Gore's sale of VIABAHN® Stent-Grafts. The royalty rate on such products that do not include heparin is 15% of Gore's net selling price from Gore's sale of VIABAHN® Stent-Grafts.

 **(e)** Gore shall have no obligation to pay any royalties for products identified in Section 3 covered by 35 U.S.C § 271(e)(1).

 **(f)** As used herein, "net selling price" shall be the invoiced selling price (or imputed price, based on the average net selling price for the applicable products for the preceding two fiscal quarters, if non-monetary consideration is provided or services are bundled with such sales) of a product identified in Section 3 sold by or on behalf of Gore to a third party in an arms-length transaction less the following deductions to the extent recognized in accordance with applicable generally accepted accounting principles consistently applied to all Gore products and services: excise and sales taxes, quantity and cash discounts granted and taken by customers and not already reflected in the invoiced selling price, freight and handling charges to the extent included in the invoiced selling price, and allowances for returns due to warranty claims.

**6.** **PAYMENT TIMING:** Payments by Gore to Bard shall be wired in same day funds quarterly no later than the 30th day following the close of the calendar quarter. For clarity, payment for the first quarter shall be made within 30 days after March 31, payment for the second quarter shall be made within 30 days after June 30, payment for the third quarter shall be made within 30 days after September 30, and payment for the fourth quarter shall be made within 30 days after December 31. Payment for any quarters ending before the entry date of this Order shall be made within 30 days of the entry of this Order. Thereafter,

payments shall be made within 30 days of the end of the subsequent quarters. If the 30th day following the end of the quarter is a Saturday, Sunday or holiday, then the payment is due on the next business day, thereafter.

7. **ESCROW:** Payments made under this ORDER shall be escrowed with this Court until there is a final and non-appealable judgment in this case. During the time when escrowed payments are deposited with the Court, to the extent that the Clerk of the Court is unable to process a wire transfer, Gore shall deposit a cashier's check with the Clerk of the Court on or before the day payment is due.

8. **AUDIT RIGHTS**

    **(a)** Gore is ORDERED to keep complete, true and accurate books of account and records, including but not limited to, unit sales, dollar sales and average selling price for infringing products, for the purpose of determining the royalty amounts payable. Gore shall certify its compliance with the ORDER annually 60 days after the close of its financial year and ensure that the quarterly payments for the preceding financial year are in accordance with the ORDER. Such certification shall be accompanied with any underpayments for the preceding four quarters. If Gore's certification process reveals an underpayment in excess of five percent (5%) of the amount owed, Gore is ORDERED to pay interest on the unpaid royalties at the prime interest rate calculated quarterly, at the same time. An underpayment discovered pursuant to this section will not terminate this ORDER pursuant to Section 2 unless Gore fails to pay the underpayment within 60 days of the end of its financial year.

    **(b)** Bard shall have the right, upon reasonable notice and at its expense, to direct an independent certified accounting firm to inspect and audit the relevant accounting and sales books and records, including but not

|   |   |
|---|---|
| 1 | limited to, the unit sales, dollar revenue and average selling price for |
| 2 | each infringing product. The audit may be made once per year and may |
| 3 | cover any period within the previous four completed fiscal years prior |
| 4 | to the audit, provided that such period has not been previously audited. |
| 5 | The determination of the independent certified accounting firm shall be |
| 6 | final. In the event an audit reveals an underpayment, Gore shall remit |
| 7 | payment of such amount to Bard within thirty (30) days of receiving |
| 8 | written notice of such underpayment from the independent certified |
| 9 | accounting firm. In addition, if any such audit reveals an underpayment |
| 10 | in excess of five percent (5%) of the amount owed for the period |
| 11 | audited, Gore is ORDERED to pay the reasonable fees and expenses |
| 12 | actually incurred relating to the audit as well as interest on the unpaid |
| 13 | royalties at the prime interest rate calculated quarterly, which Gore is |
| 14 | ORDERED to pay to Bard within thirty (30) days of notice from Bard |
| 15 | to Gore. An underpayment discovered pursuant to this Section 8(b) will |
| 16 | not terminate this ORDER pursuant to Section 2 unless Gore fails to |
| 17 | pay the underpayment within thirty (30) days of notice. |

18 If the audit discloses an overpayment, Bard is ORDERED to credit Gore the overpayment
19 amount for future payments. If the overpayment exceeds the royalty amount owed by Gore
20 at the expiration of this ORDER, Bard is ORDERED to refund Gore the amount of
21 overpayment in excess of Gore's owed royalties within thirty (30) days.

22 **9.** **MARKING**: Gore shall mark all products covered by this ORDER in
23 accordance with 35 U.S.C. § 287.
24 **10.** **NOTICE OF NEW PRODUCTS:** Gore shall provide Bard notice no less
25 than 180 days before the first anticipated commercial sale of any new vascular
26 product utilizing ePTFE that it contends constitutes to be a Gore product
27 covered by Section 3(l) or Section 3(m) of this ORDER.
28 **11.** **DISPUTE RESOLUTION:** Bard and Gore shall meet and confer in good

faith in an attempt to resolve all disputes that may arise under the ORDER. The Court specifically retains jurisdiction to enforce, modify, or terminate this ORDER as the equities may require, and to adopt procedures for resolution of any dispute under the ORDER.

**12.** **FORM OF NOTICES:** All notices of any asserted breach or any other asserted dispute under this compulsory license shall be in writing and shall be deemed given when sent by (a) prepaid, registered or certified mail, addressed to the party at the below address, or (b) by private courier service signature for delivery required, addressed to the party at the address below. Each party may change such address from time to time by notice so given.

**To Bard:** C.R. Bard, Inc.

730 Central Avenue

Murray Hill, NJ USA

Attn: General Counsel

(800) 367-2273

**To Gore:** W. L. Gore & Associates, Inc.

551 Paper Mill Road

Newark, Delaware 19711

Attn: General Counsel

August 24, 2010                                    RICHARD H. WEARE
                                                   District Court Executive/Clerk

                                                   s/L. Dixon
                                                   By: Deputy Clerk

- 9 -