FENNEMORE CRAIG P.C.
3003 North Central Avenue, Suite 2600
Phoenix, Arizona  85012-2913
Andrew M. Federhar (#006567)
(602) 916-5301
federhar@fclaw.com

KIRKLAND & ELLIS LLP
153 East 53rd Street
New York, NY 10022-4611
Steven C. Cherny
(212) 446-4965
scherny@kirkland.com

LATHAM & WATKINS LLP
555 Eleventh Street, N.W.
Washington, DC 20004
Maximilian A. Grant
(202) 637-2267
max.grant@lw.com

*Attorneys for Plaintiffs/Counterdefendants Bard Peripheral Vascular,
Inc. and David Goldfarb, M.D. and Counterdefendant C.R. Bard, Inc.*

# UNITED STATES DISTRICT COURT

## DISTRICT OF ARIZONA

| | |
|---|---|
| Bard Peripheral Vascular, Inc., and David Goldfarb, M.D., | No. CV-03-0597-PHX-MHM |
| *Plaintiffs*, | **MOTION FOR DESIGNATION OF JUDGE MURGUIA** |
| v. | |
| W.L. Gore & Associates, Inc., | |
| *Defendant*. | |

Having been affirmed entirely on the issues of infringement and validity, this patent infringement action returns to the District Court on remand from the Court of Appeals for the Federal Circuit solely to "reconsider its denial of JMOL of no willful infringement" in view of the Federal Circuit's clarification for objective willfulness, and, if necessary, to "reconsider its decisions on enhanced damages and attorneys' fees." *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 682 F.3d 1003, 1004 (Fed. Cir.

2012).  Because that narrow inquiry is integrally intertwined with, and dependent on, the credibility determinations, evidence and arguments presented before, during, and after trial, Plaintiffs Bard Peripheral Vascular and C.R. Bard, Inc. ("Bard") seek, pursuant to 28 U.S.C. § 291(b), to have the Judge that presided over the entire litigation prior to appeal, the Honorable Mary H. Murguia, sit by designation on the remand proceedings.  Judge Murguia's designation to preside over the remand proceedings is in the interest of the Court, both parties, justice, and judicial economy.

## BACKGROUND

This action involves the infringement of Bard's U.S. Patent No. 6,436,135 ("the '135 patent"), which issued to Bard in 2003 after a nearly thirty-year interference proceeding at the U.S. Patent Office and two Federal Circuit appeals that ultimately denied Gore's attempt to claim the '135 patent for itself.  While it fought to wrest control of the '135 patent invention away from Bard, Gore openly manufactured and sold hundreds of thousands of vascular grafts and stent grafts covered by the '135 patent invention.  At the conclusion of the interference in 2003, Gore continued its infringement unabated, requiring Bard to bring this lawsuit.  In late 2007, four years later, Judge Murguia presided over a seventeen-day trial, which culminated in a jury verdict finding for Bard on all claims, and rejecting all of Gore's defenses and counterclaims.  Gore appealed to the Federal Circuit.

In February 2012, the Federal Circuit affirmed the judgment in its entirety.  Gore petitioned for rehearing and rehearing *en banc*, which the *en banc* Court granted "for the limited purpose of authorizing the panel to revise the portion of its opinion addressing willfulness."  *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 2012 WL 2149764, at *1 (Fed. Cir., June 14, 2012) (*en banc*).  The panel on rehearing "clarified" the Federal Circuit's legal standard for objective willfulness, holding that the "objective determination of recklessness, even though predicated on underlying mixed questions of law and fact, is best decided by the judge as a question of law subject to *de novo* review."  682 F.3d at 1007-8.  Given that clarified standard, the Federal Circuit vacated and

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1   remanded solely to "reconsider its denial of JMOL of no willful infringement" and the

2   related decisions on enhanced damages and attorneys fees.  *Id.* at 1004, 1008 ("Having

3   clarified the legal standard for *Seagate's* objective willfulness prong, we conclude that

4   remand is appropriate so that the trial court may apply the correct standard to the question

5   of willfulness in the first instance.").  While this case was on appeal before the Federal

6   Circuit, Judge Murguia was confirmed as a Circuit Judge on the U.S. Court of Appeals for

7   the Ninth Circuit.

8                                      **DISCUSSION**

9          **First**, though the objective willfulness standard clarified by the Federal Circuit in

10   this case is a question of law for the Court, that issue "is predicated on underlying mixed

11   questions of law and fact" and thus necessarily involves close knowledge of the complex

12   factual and legal record developed at trial.  Indeed, the ultimate legal question is whether a

13   "reasonable litigant could reasonably expect" Gore's defenses, including "inventorship,

14   inadequate written description, obviousness, and anticipation," to succeed.  *Id.* at 1008.

15   That inquiry must be "based on the record ultimately made in the infringement

16   proceedings."  *Id.*  Thus, the willfulness determination will require not only a detailed

17   understanding of the numerous defenses that Gore put on during trial, but will hinge on, as

18   the Federal Circuit acknowledged, "the ***trial judge's first-hand knowledge of witnesses,***

19   ***testimony, and issues***" and  "the first-instance decisionmaker's 'feel' for the overall case."

20   *Id.*  Only Judge Murguia can fill that role.

21          Moreover, Judge Murguia, in denying all of Gore's JMOL motions on invalidity,

22   has already made inquiries into the reasonableness of Gore's defenses based on the

23   underlying facts and legal theories, as the objective willfulness standard requires.  *See*

24   *Bard*, 682 F.3d at 1006-7.  For example, in denying JMOL, Judge Murguia found Gore's

25   obviousness defenses were "not a close call."  D.I. 938 at 9 (March 31, 2009).  Judge

26   Murguia explained:

27              Gore has ***no valid evidentiary basis*** for meritoriously arguing
              that Claims 20 through 27 of the Goldfarb patent are, by clear
28              and convincing evidence, obvious. In fact, the overwhelming

weight of the evidence presented at trial can only be understood as supporting a finding of nonobviousness—*to argue otherwise is nothing more than an attempt to swim against a great and unrelenting current*.

*Id.* (emphases added). Likewise, on Gore's numerous JMOL motions for invalidity based on joint inventorship, failure to satisfy the written description requirement, failure to disclose the best mode, anticipation in view of Matsumoto, among others, Judge Murguia denied each, explaining:

> The Court is *intimately familiar with the all of the invalidity defenses* and other issues that Defendant has raised in its renewed motions and *finds little need to revisit each one individually*. Suffice it to say that the Court is firmly convinced that the jury's decisions were supported by substantial evidence.

D.I. 940 at 23 (March 31, 2009) (emphases added). This "intimate[] familiar[ity]" with the case and Gore's defenses is precisely why the Federal Circuit remanded the willfulness inquiry in the first instance.

*Second*, the "record ultimately made in the infringement proceedings" is incredibly dense and complex, and comes on the heels of one of the longest interference proceedings ever before the Patent Office. *Bard Peripheral Vascular, Inc. v. W.L. Gore & Associates, Inc.*, 670 F.3d 1171, 1175-77 (Fed. Cir. 2012) (noting the nearly 30-year interference, the two prior Federal Circuit Appeals, and the seventeen-day trial). Indeed, Judge Murguia considered and rejected ten separate Rule 50(a) motions prior to submission of the case to the jury, and nine renewed motions for JMOL under Rule 50(b) after the verdict. In her final substantive order prior to appeal, Judge Murguia declared this "the most complicated case this Court has presided over." D.I. 1036, Sealed Order (07/21/10) at 1. Recognizing the task before Judge Murguia, the Federal Circuit went out of its way in two separate opinions to "commend the district court for its well-reasoned and well-grounded opinions and its extensive and thoughtful analysis of the case," *Bard*, 670 F.3d at 1193, and to recognize her "exemplary job presiding over this complex case." *Bard*, 682 F.3d at 1008. Thus, even if a different judge were to attempt to fill Judge Murguia's shoes, that judge would not only be deprived of Judge Murguia's "first-hand knowledge of witnesses,

1   testimony, and issues" and her "feel for the overall case," but would also face an

2   enormous task of digesting a dense record built over seventeen days of trial at the

3   conclusion of a four-year-plus litigation, and having a decades-old history.  A review of

4   the briefs and opinions alone, not to mention the trial transcripts, would require an

5   enormous amount of time.  Such a task will be a substantial administrative burden on both

6   a new judge and the Court itself, at a time when this Court is taxed with a burdensome

7   caseload.

8   Notably, the Federal Circuit made the conscious decision to remand to this Court

9   over Judge Newman's objection in her dissent that it was within the Federal Circuit's

10   jurisdiction to dispose of the legal issue itself.  It declined to do so precisely because it

11   lacked that "first-hand knowledge" of the facts and the "feel for the case" that it

12   emphasized as critical to the objective willfulness inquiry.  Thus, the Federal Circuit's

13   remand contemplated that reconsideration of objective willfulness would best be

14   accomplished and fulfilled by the judge who presided over the trial.

15   ## CONCLUSION

16   In light of the limited nature of the remand, and the Federal Circuit's belief that the

17   objective willfulness inquiry should be addressed in the first instance by the judge who

18   presided over trial and has "first-hand knowledge" of the factual record and a "feel for the

19   overall case," this case should be assigned to Circuit Judge Murguia, if she is available to

20   sit by designation, pursuant to 28 U.S.C. § 291(b).  Although such a request may be

21   unusual, it is not uncommon for Circuit Judges to sit by designation on a District Court,

22   particularly where, as here, the Judge has prior experience as a trial judge.[1]  Moreover,

23   under similar circumstances, Judge Jordan of the Third Circuit sat by designation at the

24   ---

[1] For example, in the Ninth Circuit, numerous Circuit Judges have recently sat by designation, including in the District of Arizona.  *See, e.g., Williams v. Woodford*, --- F. Supp. 2d ---, 2012 WL 929666 (E.D. Cal. Mar. 19, 2012) (Kozinski, C.J., by designation); *Center for Biological Diversity v. Provencio*, 2012 WL 966031 (D. Ariz. Jan. 23, 2012) (Tashima, J., by designation); *United States v. Love*, 2012 WL 32416 (S.D. Cal. Jan. 5, 2012) (McKeown, J., by designation); *Rodriguez v. Schwarzenegger*, 2011 WL 4761302 (E.D. Cal. Oct. 7, 2011) (Goodwin, J., by designation); *Payne v. Walker*, 2011 WL 4345868 (E.D. Cal. Sept. 15, 2011) (M. Smith, J., by designation); *Page v. Mayberg*, 2011 WL 3418385 (E.D. Cal. Aug. 3, 2011) (Thomas, J., by designation).

District of Delaware to continue to preside over several actions in which he was previously the trial judge.[2]  Judge Murguia's designation here would, for the reasons set forth above, serve the interests of justice and judicial economy.

Respectfully submitted this 26th day of July, 2012.

FENNEMORE CRAIG P.C.


By:  s/ *Andrew M. Federhar*
        Andrew M. Federhar


KIRKLAND & ELLIS LLP
Steven C. Cherny

LATHAM & WATKINS LLP
Maximilian A. Grant

Attorneys for Bard Peripheral Vascular, Inc., David Goldfarb, M.D.& C. R. Bard, Inc.

---

[2] *See, e.g., Novozymes A/S v. Genencor Int'l, Inc.*, 474 F. Supp. 2d 592 (D. Del. 2007) (Jordan, J., by designation); *Rocep Lusol Holdings Ltd. v. Permatex, Inc.*, 470 F. Supp. 2d 448 (D. Del. 2007) (Jordan, J., by designation).

FENNEMORE CRAIG
PROFESSIONAL CORPORATION
PHOENIX

1

## **CERTIFICATE OF SERVICE**

2

3       I hereby certify that on July 26, 2012, I electronically transmitted the attached document to the Clerk's Office using the CM/ECF filing system for filing and transmittal of a Notice of Electronic Filing to the CM/ECF registrants.

4

5

6                       s/ Bernadine Zeigler

7309832

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28